UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                        :

STEPHEN HILL, *et al.*,           :

                Plaintiffs,       :

     -against-             :   No. 14-cv-09744 (JSR)

UBS AG, *et al.*,             :

                Defendants.   :

-------------------------------------------------------x
                        :

SPV OSUS LTD.,           :

                Plaintiff,       :

     -against-             :   No. 15-cv-00619 (JSR)

UBS AG, *et al.*,             :

                Defendants.   :

-------------------------------------------------------x

# UBS DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000

*Attorneys for Defendants UBS AG, UBS
(Luxembourg) S.A., UBS Fund Services
(Luxembourg) S.A., and UBS Third Party
Management Company S.A.*

Dated: February 27, 2015

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND......................................... 3

ARGUMENT ..................................................................................................... 4

I.   THE SECURITIES LITIGATION UNIFORM STANDARDS ACT
     PRECLUDES ALL CLAIMS AGAINST THE UBS DEFENDANTS ........................... 4

     A.   Each Action Is a "Covered Class Action" ....................................... 6

     B.   The Complaints Allege Only State Common Law Claims................................... 9

     C.   The Complaints Allege Material Misrepresentations and Omissions of
          Material Facts.................................................................................. 9

     D.   The Alleged Misrepresentations Were in Connection with the Purchase or
          Sale of Covered Securities ........................................................... 11

II.  THE UBS DEFENDANTS ARE NOT SUBJECT TO PERSONAL
     JURISDICTION IN THIS COURT................................................................. 14

     A.   Applicable Legal Standards ......................................................... 14

     B.   The UBS Defendants Are Not Subject to General Jurisdiction in This
          Court ............................................................................................. 17

     C.   The UBS Defendants Are Not Subject to Specific Personal Jurisdiction in
          this Court....................................................................................... 20

III. THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST ANY OF THE
     UBS DEFENDANTS............................................................................... 25

     A.   Applicable Legal Standards ......................................................... 25

     B.   Plaintiffs Have Not Sufficiently Pled Their Aiding and Abetting Claims........... 26

          1.   Plaintiffs Fail to Plead Actual Knowledge................................. 27

          2.   Plaintiffs Fail to Plead Substantial Assistance......................... 36

          3.   Plaintiffs Fail to Plead Individual Fraud Claims....................... 40

     C.   *Hill* Fails to Sufficiently Plead Unjust Enrichment ............................. 42

IV.  ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE
     STATUTES OF LIMITATIONS................................................................... 44

     A.   The New York Limitations Period for All of Plaintiffs' Claims Expired
          Before the Complaints Were Filed ............................................... 44

          1.   The Six-Year Statutes of Limitations for Aiding and Abetting
               Fraud, Aiding and Abetting Breach of Fiduciary Duty, and
               Knowing Participation in a Breach of Trust Bar These Claims................ 45

**TABLE OF CONTENTS** *(continued)*

Page

2. The Aiding and Abetting Conversion, Aiding and Abetting Embezzlement, and Unjust Enrichment Claims Are Subject to Three-Year Limitations Periods ............................................................... 47

B. New York's Borrowing Statute Bars Two Individual *Hill* Plaintiffs' Claims ...................................................................................................... 49

V. CONCLUSION ............................................................................................. 51

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
   09-cv-8862 (GBD), 2013 WL 1286170, at \*12 (S.D.N.Y. Mar. 28, 2013)............................ 24

*Access Point Med., LLC v. Mandell*,
   106 A.D.3d 40, 44-45, 963 N.Y.S.2d 44, 47 (1st Dep't 2013)................................. 46

*Albion Alliance Mezzanine Fund, L.P. v. State St. Bank & Trust Co.*,
   8 Misc. 3d 264, 273, 797 N.Y.S.2d 699, 707 (Sup. Ct. N.Y. County 2003), *aff'd*, 2
   A.D.3d 162, 767 N.Y.S.2d 619 (1st Dep't 2003) ...................................................... 33

*AM Trust v. UBS AG*,
   14-cv-4125 (PJH), 2015 WL 395465, at \*6 (N.D. Cal. Jan. 29, 2015) .................................... 19

*Am. Int'l Life Assur. Co. of New York v. Kandros*,
   254 A.D.2d 34, 34, 678 N.Y.S.2d 20, 21 (1st Dep't 1998) ...................................... 44

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
   171 Cal. Rptr. 3d 548, 570 (Cal. Ct. App.), *modified by*, 2014 Cal. App. LEXIS 460
   (Cal. Ct. App. May 27, 2014) ................................................................................ 49

*Amorosa v. Ernst & Young LLP*,
   672 F. Supp. 2d 493, 517-18 (S.D.N.Y. 2009), *aff'd sub nom. Amorosa v. AOL Time
   Warner Inc.*, 409 F. App'x 412 (2d Cir. Feb. 2, 2011) ......................................... 7, 8

*Armstrong v. McAlpin*,
   699 F.2d 79, 92 (2d Cir. 1983) ............................................................................. 40

*Asahi Metal Indus. Co. v. Superior Court of California*,
   480 U.S. 102, 109 (1987)....................................................................................... 16, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009)....................................................................................... 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87, 98-99 (2d Cir. 2007) ........................................................................ 25, 40

*AUSA Life Ins. Co. v. Ernst & Young*,
   206 F.3d 202, 215 (2d Cir. 2000) ......................................................................... 37

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120, 124 (2d Cir. 2002) ......................................................................... 16

*Baptichon v. Nev. State Bank*,
   304 F. Supp. 2d 451, 459-60 (E.D.N.Y. Feb. 9, 2004).......................................... 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007)....................................................................................... 25

*Berman v. Morgan Keegan & Co.*,
   10-cv-5866 (PKC), 2011 WL 1002683, at \*10 (S.D.N.Y. Mar. 14, 2011) ............................ 28

**TABLE OF AUTHORITIES** *(continued)*

Page

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass,*
    754 F.2d 57, 61-63 (2d Cir. 1985) ................................................................. 37, 39

*Carmona v. Spanish Broad. Sys., Inc.,*
    08-cv-4475 (LAK), 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009)............................... 43

*Chadbourne & Parke LLP v. Troice,*
    134 S. Ct. 1058, 1066 (2014)......................................................................... 12, 13

*Chan v. Mui,*
    No. 92-cv-8258 (MBM), 1993 WL 427114, at *4-5 (S.D.N.Y. Oct. 20, 1993)................ 47, 48

*Chemtex, LLC v. St. Anthony Enters., Inc.,*
    490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ........................................................... 31

*Chew v. Dietrich,*
    143 F.3d 24, 29 (2d Cir. 1998) ......................................................................... 24

*Cohain D.D.S. v. Klimley,*
    08-cv-5047 (PGG), 09-cv-4527 (PGG), 2011 WL 3896095, at *4 (S.D.N.Y. Aug. 31,
    2011)...................................................................................................... 42

*Cromer Fin. Ltd. v. Berger,*
    137 F. Supp. 2d 452, 470-72 (S.D.N.Y. 2001) ................................................... 37, 39

*Cutco Indus., Inc. v. Naughton,*
    806 F.2d 361, 365 (2d Cir. 1986) ...................................................................... 20

*Czech Beer Imps., Inc. v. C. Haven Imps., LLC,*
    04-cv-2270 (RCC), 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005) ............................ 43

*Daimler AG v. Bauman,*
    134 S. Ct. 746, 754, 760-61, 761 n.19 (2014) ......................................... 17, 18, 19

*Daly v. Pearl Spirits, Inc.,*
    438 F. App'x 644, 645 (9th Cir. June 21, 2011)..................................................... 50

*Davis v. Cornerstone Tel. Co.,*
    61 A.D.3d 1315, 1316-17, 878 N.Y.S.2d 800, 802 (3d Dep't 2009)................................ 47

*DeBlasio v. Merrill Lynch & Co.,*
    07-cv-318 (RJS), 2009 WL 2242605, at *9, 40 (S.D.N.Y. July 27, 2009)........................ 43, 44

*DirecTV Latin Am., LLC v. Park 610, LLC,*
    691 F. Supp. 2d 405, 420 (S.D.N.Y. 2009) ........................................................... 22

*DiStefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81, 84 (2d Cir. 2001) ......................................................................... 14

*Edwards & Hanly v. Wells Fargo Securities Clearance,*
    602 F.2d 478, 484-85 (2d Cir. 1979) ............................................................... 38, 39

*Elendow Fund, LLC v. Rye Inv. Mgmt.,*
    588 F. App'x 27, 28 (2d Cir. Dec. 16, 2014)......................................................... 29

**TABLE OF AUTHORITIES** *(continued)*

Page

*FDIC v. Dintino*,
  84 Cal. Rptr. 3d 38, 50 (Cal. Ct. App. 2008)...................................................... 50

*First Union Nat'l Bank v. A.G. Edwards & Sons*,
  Index No. 601243/98, slip op. at 6-7 (Sup. Ct. N.Y. Cty. Jan. 5, 1999), *aff'd*, 262
  A.D.2d 106, 691 N.Y.S.2d 491 (1st Dep't 1999) ...................................................... 44

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
  479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) ........................................................... 27

*Fuller v. First Franklin Fin. Corp.*,
  163 Cal. Rptr. 3d 44, 50 (Cal. Ct. App. 2013), *modified on denial of reh'g by*, 2013
  Cal. App. LEXIS 500 (Cal. Ct. App. June 24, 2013) ............................................... 50

*Georgia Malone & Co. v. Rieder*,
  86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 497 (1st Dep't 2011) ................................ 43

*Global Fin. Corp. v. Triarc Corp.*,
  93 N.Y.2d 525, 528-29 715 N.E.2d 482, 484-85 693 N.Y.S.2d 479, 481-82 (1999).............. 49

*Golden Pac. Bancorp v. FDIC*,
  273 F.3d 509, 518-19 (2d Cir. 2001) .................................................................. 46

*Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,
  11-cv-420 (RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012) ..................................... 14

*Gucci Am., Inc. v. Bank of China*,
  768 F.3d 122, 135 (2d Cir. 2014) ........................................................... 17, 18, 19

*Hearst Corp. v. Goldberger*,
  96-cv-3620 (PKL) (AJP), 1997 WL 97097, at *12 (S.D.N.Y. Feb. 26, 1997)...................... 23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408, 414 n.8 (1984)............................................................................. 17

*Hoffenberg v. Hoffman & Pollok*,
  288 F. Supp. 2d 527, 535 (S.D.N.Y. 2003) ........................................................... 46

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  12 N.Y.3d 132, 139, 907 N.E.2d 268, 272, 879 N.Y.S.2d 355, 359 (2009)............................. 45

*In re Agape Litig.*,
  681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) ........................................................... 40

*In re Agape Litig.*,
  773 F. Supp. 2d 298, 308, 310 (E.D.N.Y. 2011), *aff'd sub nom. Weshnak v. Bank of
  Am., N.A.*, 451 F. App'x 61 (2d Cir. Jan. 26, 2012) ........................................... 27, 33

*In re Austin Capital Mgmt., Ltd. ERISA Litig.*,
  09-md-2075, 2012 WL 6644623, at *4 (S.D.N.Y. Dec. 21, 2012).......................................... 29

*In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*,
  09-md-2058 (PKC), 12-cv-5210 (PKC), 2013 WL 6504801, at *1, 4-7 (S.D.N.Y. Dec.
  11, 2013) ................................................................................................. 8

## TABLE OF AUTHORITIES *(continued)*

Page

*In re Bear Stearns Co., Inc. Secs., Derivative, & ERISA Litig.*,
995 F. Supp. 2d 291, 310, 312 (S.D.N.Y. 2014) ...................................... 41, 45

*In re Bernard L. Madoff Inv. Sec. LLC.*,
721 F.3d 54 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2895 (2014) ........................................... 1

*In re Celotex Corp.*,
124 F.3d 619, 629-30 (4th Cir. 1997) ........................................ 16

*In re Citigroup Inc. Secs. Litig.*,
987 F. Supp. 2d 377, 385-88 (S.D.N.Y. 2013) ................................. 8

*In re Herald* ("*Herald I*"),
730 F.3d 112, 118-19 (2d Cir. 2013), *petitions for cert. filed*, 83 U.S.L.W. 3563 (U.S.
Dec. 17, 2014) (Nos. 14-730 & 14-736)...................................... 4, 5, 6, 10, 12

*In re Herald* ("*Herald II*"),
753 F.3d 110, 113 (2d Cir. 2014), *petitions for cert. filed*, 83 U.S.L.W. 3563 (U.S.
Dec. 17, 2014) (Nos. 14-730 & 14-736)........................................ 12, 13

*In re Lehman Bros. Secs. & ERISA Litig.*,
09-md-2017 (LAK), 2012 WL 6603321, at *1-3 (S.D.N.Y. Dec. 17, 2012) ........................... 8

*In re Merkin*,
817 F. Supp. 2d 346, 359 (S.D.N.Y. 2011) .............................. 6

*In re Pfizer Inc. Secs. Litig.*,
584 F. Supp. 2d 621, 644 (S.D.N.Y. 2008) ........................... 41

*In re Rausman*,
50 A.D.3d 909, 910, 855 N.Y.S.2d 263, 264 (2d Dep't 2008).............................. 47

*In re Refco Inc. Sec. Litig.*,
07-mdl-1902 (JSR), 08-cv-3065 (JSR), 08-cv-3086 (JSR), 2012 WL 3126834, at *1
(S.D.N.Y. July 30, 2012), *aff'd sub nom. Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014)
............................................................................... 26, 33, 35

*In re Refco Inc. Sec. Litig.*,
826 F. Supp. 2d 478, 517 (S.D.N.Y. 2011) .............................. 36

*In re Refco Sec. Litig.*,
859 F. Supp. 2d 644, 649 (S.D.N.Y. 2012) ............................... 7

*In re Tremont Secs. Law, State Law & Ins. Litig.*,
703 F. Supp. 2d 362, 368, 370-72 (S.D.N.Y. 2010) ....................... 30, 31

*In re WorldCom, Inc. Secs. Litig.*,
308 F. Supp. 2d 236, 245-47 (S.D.N.Y. 2004) ..................... 8

*Ingrami v. Rovner*,
45 A.D.3d 806, 808, 847 N.Y.S.2d 132, 134 (2d Dep't 2007)............................. 48

*Instituto de Prevision Militar v. Merrill Lynch*,
546 F.3d 1340, 1347-51 (11th Cir. 2008)...................... 10, 13

**TABLE OF AUTHORITIES** *(continued)*

Page

*Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*,
   326 U.S. 310, 316, 318 (1945) ........................................................... 17

*J.P. Morgan Chase Bank v. Winnick*,
   406 F. Supp. 2d 247, 253 n.4 (S.D.N.Y. 2005) .................................... 28

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181, 185-86 (2d Cir. 1998) ................................................... 15

*Jet Star Enters., Ltd. v. Soros*,
   05-cv-6585 (HB), 2006 WL 2270375, at *5 (S.D.N.Y. Aug. 9, 2006) .................. 43

*Johnson v. Ward*,
   4 N.Y.3d 516, 519, 829 N.E.2d 1201, 1202, 797 N.Y.S.2d 33, 34 (2005) ............... 20

*Kaufman v. Cohen*,
   307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003) ............................ 27

*Kernan v. Kurz-Hastings, Inc.*,
   175 F.3d 236, 241 (2d Cir. 1999) ........................................................ 20

*King Cnty. v. IKB Deutsche Industriebank AG*,
   708 F. Supp. 2d 334, 338 (S.D.N.Y. 2010) ...................................... 40

*King Cnty. v. IKB Deutsche Industriebank AG*,
   769 F. Supp. 2d 309, 313, 315, 316 n.28 (S.D.N.Y. 2011) ................................ 14, 15

*Kolbeck v. LIT Am. Inc.*,
   939 F. Supp. 240, 245 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 2001) ............... 25, 27

*Kottler v. Deutsche Bank AG*,
   607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009) ........................................... 45

*Kronos, Inc. v. AVX Corp.*,
   81 N.Y.2d 90, 94, 612 N.E.2d 289, 292, 595 N.Y.S.2d 931, 934 (1993) .................. 44

*Krys v. Pigott*,
   749 F.3d 117, 127-28, 131-33 (2d Cir. 2014) ......................................... 27, 32, 35, 38

*Lander v. Hartford Life & Annuity Ins. Co.*,
   251 F.3d 101, 108 (2d Cir. 2001) ...................................................... 5

*LaSala v. UBS AG*,
   510 F. Supp. 2d 213, 240, 254 (S.D.N.Y. 2007) ..................................... 4, 10

*Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*,
   139 F. App'x 140, 143 (11th Cir. May 20, 2005) ...................................... 23

*Leibowitz v. Cornell Univ.*,
   584 F.3d 487, 509 (2d Cir. 2009) .................................................... 43

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273, 292-93 (2d Cir. 2006) .............................................. 27, 32

**TABLE OF AUTHORITIES** *(continued)*

<u>Page</u>

*Licci v. Lebanese Can. Bank, SAL,*
  20 N.Y.3d 327, 339, 984 N.E.2d 893, 900, 960 N.Y.S.2d 695, 702 (2012)............................ 23

*M. Shanken Commc'ns, Inc. v. Variant Events, LLC,*
  10-cv-4747 (CM), 2010 WL 4159476, at *3 (S.D.N.Y. Oct. 7, 2010)................................... 14

*Mandarin Trading Ltd. v. Wildenstein,*
  16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110, 919 N.Y.S.2d 465, 471 (2011)....................... 42

*Maranga v. Vira,*
  386 F. Supp. 2d 299, 309 (S.D.N.Y. 2005) ........................................................................... 23

*Marchak v. JPMorgan Chase & Co.,*
  11-cv-5839 (MKB), 2015 WL 500486, at *7 (E.D.N.Y. Feb. 6, 2015) .................................... 7

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.,*
  693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) ........................................................................... 26

*Matana v. Merkin,*
  989 F. Supp. 2d 313, 328-29 (S.D.N.Y. 2013) ..................................................................... 29

*Matter of Barabash,*
  31 N.Y.2d 76, 80, 286 N.E.2d 268, 270, 334 N.Y.S.2d 890, 893 (1972)............................... 46

*Mazzaro de Abreu v. Bank of Am. Corp.,*
  525 F. Supp. 2d 381, 390-91 (S.D.N.Y. 2007) ................................................................. 33, 39

*McDaniel v. Bear Stearns & Co.,*
  196 F. Supp. 2d 343, 359 (S.D.N.Y. 2002) ........................................................................... 37

*McGowan v. Smith,*
  52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981)............................ 20

*McKee Elec. Co. v. Rauland-Borg Corp.,*
  20 N.Y.2d 377, 382, N.E.2d 604, 607, 229 N.Y.S.2d 34, 37-38 (1967) ................................. 22

*Melnick v. Adelson-Melnick,*
  346 F. Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004) ................................................................... 14

*Meridian Horizon Fund, LP v. KPMG (Cayman),*
  487 F. App'x 636, 641 (2d Cir. July 10, 2012)...................................................................... 34

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.,*
  747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010), *aff'd,* 487 F. App'x 636 (2d Cir. July 10,
  2012) ................................................................................................................................. 30

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia,*
  23 F. Supp. 2d 439, 452 (S.D.N.Y. 1998) ............................................................................ 46

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
  547 U.S. 71, 81-82, 86 (2006) ........................................................................................... 4, 5

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560, 568 (2d Cir. 1996) ......................................................................................... 17

# TABLE OF AUTHORITIES *(continued)*

Page

*Meyer v. Bd. of Regents of Univ. of Oklahoma*,
  13-cv-3128 (CM), 2014 WL 2039654, at *4 (S.D.N.Y. May 14, 2014) ................................. 19

*Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ireland) Ltd.*,
  10-cv-8660 (PAC), 2011 WL 4916407, at *3-4 (S.D.N.Y. Oct. 17, 2011)........................ 45, 47

*Miller v. Schweickart*,
  413 F. Supp. 1062, 1067-68 (S.D.N.Y. 1976) ........................................................ 40

*MLSMK Invs. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137, 144-45 (S.D.N.Y. 2010), *aff'd in part*, 431 F. App'x 17 (2d Cir.
  June 6, 2011), *aff'd*, 651 F.3d 268 (2d Cir. 2011) ................................................... 30

*Mohebbi v. Khazen*,
  13-cv-03044 (BLF), 2014 WL 2861146, at *16 (N.D. Cal. June 23, 2014)........................... 50

*Montalvo v. J.P. Morgan Chase & Co.*,
  25 Misc. 3d 1244(A), 906 N.Y.S.2d 781 (Table), 2009 WL 4893939, at *6 (Sup. Ct.
  Kings County Dec. 18, 2009) ......................................................................... 42

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
  10-cv-1777 (ADS) (AKT), 2011 WL 381612, at *3 (E.D.N.Y. Feb. 2, 2011)........................ 15

*Newman v. Family Mgmt. Corp.*,
  748 F. Supp. 2d 299, 310 (S.D.N.Y. 2010), *aff'd*, 530 F. App'x 21 (2d Cir. July 16,
  2013) ............................................................................................ 30

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
  98-cv-4960 (MBM), 1999 WL 558141, at *1-2, 7-8 (S.D.N.Y. July 30, 1999)...................... 31

*Norex Petroleum Ltd. v. Blavatnik*,
  23 N.Y.3d 665, 673, 16 N.E.3d 561, 567, 992 N.Y.S.2d 503, 509 (2014)............................. 49

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
  652 F. Supp. 2d 495, 502 (S.D.N.Y. 2009) ........................................................... 28

*Ponte v. Universal City Dev. Partners, Ltd.*,
  07-cv-2360 (KMK) (LMS), 2008 WL 169358, at *8, 10 (S.D.N.Y. Jan. 15, 2008) ......... 16, 24

*Prichard v. 164 Ludlow Corp.*,
  14 Misc. 3d 1202(A), 831 N.Y.S.2d 362 (Table), 2006 WL 3626306, at *9-10 (Sup.
  Ct. N.Y. County 2006), *aff'd*, 49 A.D.3d 408, 854 N.Y.S.2d 53 (1st Dep't 2008) ................ 48

*Prickett v. N.Y. Life Ins. Co.*,
  896 F. Supp. 2d 236, 246-47 (S.D.N.Y. 2012) ........................................................ 29

*Proctor v. Vishay Intertech. Inc.*,
  584 F.3d 1208, 1222-23 (9th Cir. 2009) ............................................................. 10

*Quinn v. Teti*,
  234 F.3d 1262, 2000 WL 1616806, at *3 (2d Cir. Oct. 27, 2000)........................................ 46

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
  317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) ........................................................... 43

**TABLE OF AUTHORITIES** *(continued)*

Page

*Redtail Leasing, Inc. v. Bellezza,*
95-cv-5191 (JFK), 1997 WL 603496, at *7 (S.D.N.Y. Sept. 30, 1997)................................ 41

*Reich v. Lopez,*
13-cv-5307 (JPO), 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014) .............................. 19

*River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc.,*
287 F. Supp. 2d 1213, 1220 (S.D. Cal. 2003)........................................................... 49

*Rizer v. Breen,*
No. 601676/05, 2007 WL 7598165 (Sup. Ct. N.Y. County Feb. 1, 2007)............................. 46

*Romano v. Kazacos,*
609 F.3d 512, 518, 520 n.3, 523 (2d Cir. 2010) ......................................................... 5, 6, 11

*Rosner v. Bank of China,*
06-cv-13562, 2008 WL 5416380, at *4-6, 14 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F.
App'x 637 (2d Cir. Oct. 21, 2009)............................................................... 27, 31, 37, 39

*Rosner v. Bank of China,*
349 F. App'x 637, 639 (2d Cir. Oct. 21, 2009) .............................................................. 28, 31

*Rosner v. Bank of China,*
528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) ................................................................... 40

*Rush v. Savchuck,*
444 U.S. 320, 331-32 (1980) ..................................................................................... 15

*Ryan v. Hunton & Williams,*
99-cv-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000)................................ 33

*S & K Sales Co. v. Nike, Inc.,*
816 F.2d 843, 847-48 (2d Cir. 1987) ........................................................................... 26

*Saltz v. First Frontier, LP,*
782 F. Supp. 2d 61, 69, 76-77 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. June
12, 2012)............................................................................................................... 29

*SEC v. Cohmad Secs. Corp.,*
09-cv-5680 (LLS), 2010 WL 363844, at *5 (S.D.N.Y. Feb. 2, 2010)................................... 30

*SEC v. Zandford,*
535 U.S. 813, 819 (2002)........................................................................................... 13

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),*
403 F.3d 43, 49-50 (2d Cir. 2005) ............................................................................... 26

*SIPC v. BDO Seidman, LLP,*
222 F.3d 63, 73 (2d Cir. 2000) ................................................................................... 41

*Sonera Holding B.V. v. Cukurova Holding A.S,*
750 F.3d 221, 224 n.2 (2d Cir. 2014) .......................................................................... 19

**TABLE OF AUTHORITIES** *(continued)*

Page

*Sotheby's, Inc. v. Minor*, 08-cv-7694 (BSJ) (HBP), 2009 WL 3444887, at *7 (S.D.N.Y.
    Oct. 26, 2009) ............................................................................................................... 42

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204, 215-16, 868 N.E.2d 1012, 1018, 831 N.Y.S.2d 760, 766  (2007) .................. 43

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144, 172 (E.D.N.Y. 2010) ............................................................ 46

*State of N.Y. v. Seventh Regiment Fund, Inc.*,
    98 N.Y.2d 249, 259, 774 N.E.2d 702, 710, 46 N.Y.S.2d 637, 645 (2002)............................. 48

*Stephenson v. Citco Grp. Ltd.*,
    700 F. Supp. 2d 599, 624 (S.D.N.Y. 2010), *aff'd sub nom. Stephenson v.
    PricewaterhouseCoopers, LLP*, 482 F. App'x 618 (2d Cir. May 18, 2012) ........................... 30

*Stuart v. Am. Cyanamid Co.*,
    158 F.3d 622, 626 (2d Cir. 1998) ............................................................................. 49

*Sun 'n Sand, Inc. v. United Cal. Bank*,
    582 P.2d 920, 941 (Cal. 1978)................................................................................. 50

*Tamam v. Fransabank SAL*,
    677 F. Supp. 2d 720, 729-32 (S.D.N.Y. 2010) ...................................................... 23

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    No. 13-cv-6062 (WHP), 2014 WL 4058070, at *12 (S.D.N.Y. Aug. 14, 2014)..................... 48

*Watson v. Consol. Edison of N.Y.*,
    594 F. Supp. 2d 399, 411 (S.D.N.Y. 2009) ............................................................ 42

*Whitney* v. *Citibank, N.A.*,
    782 F.2d 1106, 1115 (2d Cir. 1986) ........................................................................ 26

*Yale M. Fishman 1998 Ins. Trust v. Gen. Am. Life Ins. Co.*,
    11-cv-1284, 2013 WL 842642, at *6 (S.D.N.Y. Mar. 7, 2013)............................................ 13

**Statutes**

15 U.S.C. § 77p(b) ............................................................................................................ 5

15 U.S.C. § 77r(b)............................................................................................................ 11

15 U.S.C. § 77z-1............................................................................................................ 4

15 U.S.C. § 78bb(f)(1) ..................................................................................................... 10

15 U.S.C. § 78bb(f)(1)(A)................................................................................................. 5

15 U.S.C. § 78bb(f)(5)(B)................................................................................................. 6

15 U.S.C. § 78bb(f)(5)(B)(i)(I).......................................................................................... 7

15 U.S.C. § 78bb(f)(5)(E)................................................................................................ 11

15 U.S.C. § 78u-4 ........................................................................................................... 4

**TABLE OF AUTHORITIES** *(continued)*

Page

28 U.S.C. § 1452 ............................................................................................................... 3, 15

Cal. Civ. Proc. Code § 338(d) ........................................................................................... 49, 50

N.Y. C.P.L.R. 213(8) ........................................................................................................ 45

N.Y. C.P.L.R. 214(3) ........................................................................................................ 47

N.Y. Penal Law § 155.05 .................................................................................................. 42

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) ....... 4

Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, §§ 2(2), (5),
   112 Stat. 3227 (1998) .................................................................................................... 5

**Other Authorities**

H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.) ............................................................. 4

SEC OIG Report, August 30, 2009, at 335-37, *available at*
   http://www.sec.gov/news/studies/2009/oig-509.pdf .................................................... 32

**Rules**

Fed. R. Bankr. P. 7004(f) .................................................................................................. 16

Fed. R. Civ. P. 9(b) ........................................................................ 1, 2, 25-28, 30-31, 36, 40-42, 44

Fed. R. Civ. P. 12(b)(2) .................................................................................................. 1, 14

Fed. R. Civ. P. 12(b)(5) .................................................................................................. 16

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 2, 25

Defendants UBS AG, UBS (Luxembourg) S.A. ("UBSL"), UBS Fund Services (Luxembourg) S.A. ("UBS FSL"), and UBS Third Party Management Company S.A. ("UBS TPM") (collectively, "UBS" or the "UBS Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Class Action Complaint ("*Hill*" or the "*Hill* Complaint") in *Hill v. UBS AG*, No. 14-cv-09744 (JSR) (the "*Hill* Action"), and the Complaint ("*OSUS*" or the "*OSUS* Complaint" and, together with the *Hill* Complaint, the "Complaints") in *SPV OSUS Ltd. v. UBS AG*, No. 15-cv-00619 (JSR) (the "*OSUS* Action" and, together with the *Hill* Action, the "Actions") pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and Rules 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs in these Actions claim to be customers (or the assignee of a customer) of Bernard L. Madoff Investment Securities LLC ("BLMIS") who lost money investing through BLMIS in the now-infamous Ponzi scheme orchestrated by BLMIS and its principal, Bernard L. Madoff ("Madoff"). Parroting allegations first made more than three years earlier by Irving H. Picard, as trustee for the consolidated liquidation of BLMIS and the estate of Madoff (the "Trustee"),[1] Plaintiffs seek to hold UBS responsible for their losses, contending that UBS aided and abetted Madoff's Ponzi scheme and that UBS was unjustly enriched.

Although free of the standing problems that doomed the Trustee's claims, *see In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2895 (2014), Plaintiffs' claims here suffer from myriad substantive problems that require dismissal of both Complaints.

---

[1] *See* Amended Complaint, *Picard v. UBS AG*, No. 11-cv-4212 (S.D.N.Y. Aug. 17, 2011), ECF No. 23.

*First*, all of Plaintiffs' claims are barred by SLUSA, because Plaintiffs bring state law claims seeking damages for more than fifty people based on allegations of fraud in connection with the purchase of covered securities.

*Second*, Plaintiffs fail to make out a *prima facie* case of personal jurisdiction over the UBS Defendants, each of which is a Swiss or Luxembourg company that is alleged to have performed services on behalf of foreign investment funds.  The limited number of New York or United States contacts alleged by Plaintiffs—almost entirely limited to one of the UBS Defendants, to the exclusion of the other three—are insufficiently connected to Plaintiffs' claims so as to support the assertion of jurisdiction under New York law and the Due Process Clause.

*Third*, Plaintiffs fail to plead their claims with the requisite particularity required by Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Plaintiffs come nowhere close to pleading that UBS had "actual knowledge" of Madoff's Ponzi scheme, or that any conduct by UBS proximately caused Plaintiffs' alleged injuries.  Plaintiffs also fail to plead what misstatements Madoff allegedly made to them, when they were made, and that Plaintiffs relied on any such misstatements.  They therefore fail to plead sufficiently the underlying fraud that UBS is alleged to have aided and abetted.

*Finally*, all of the conduct alleged by Plaintiffs occurred more than six years before they filed their Complaints.  Thus, under even the most generous limitations periods applicable to their claims, all of Plaintiffs' claims are time-barred.

For these and other reasons explained below, the Complaints should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

The *Hill* Plaintiffs filed the *Hill* Complaint in this Court on December 10, 2014—a day shy of the six-year anniversary of Madoff's arrest.  *See* Ex. 1.[2]  Plaintiff SPV OSUS Ltd. ("OSUS") filed a substantially identical complaint in the Southern District of New York on the same day.  *See* Ex. 2.  The next day, OSUS filed the *OSUS* Complaint, virtually identical to the one filed in the federal forum, in the Supreme Court of New York, County of New York. *Compare* Ex. 2 *with* Ex. 4.  OSUS then filed a Notice of Voluntary Dismissal in the federal action.  *See* Ex. 3.  On January 28, 2014, Defendant UBS AG removed *OSUS* to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1452. *OSUS* was then assigned to this Court as related to the *Hill* Action, pursuant to Rule 13 of this District's Rules for the Division of Business Among District Judges.  *See SPV OSUS Ltd. v. UBS AG, et al.*, No. 15-cv-00619 (JSR), ECF Entry Feb. 3, 2015.

*Hill* asserts six state law causes of action against the UBS Defendants, each premised on allegations that UBS enabled Madoff's Ponzi scheme by providing services to one or both of two foreign investment funds that invested money through BLMIS, Luxalpha SICAV ("Luxalpha") and Groupement Financier Ltd. ("Groupement Financier")—the former a Luxembourg entity and latter a British Virgin Islands ("BVI") entity.  *Hill* ¶ 8; *OSUS* ¶ 3.  The claims asserted are (1) aiding and abetting fraud; (2) knowing participation in a breach of trust; (3) unjust enrichment; (4) aiding and abetting embezzlement; (5) aiding and abetting breach of fiduciary duty; and (6) aiding and abetting conversion.  *Hill* ¶¶ 102-70.  *OSUS* asserts four of the same causes of action against UBS, along with 11 other corporate or individual defendants: (1) aiding

---

[2]  All references to "Ex. __" are to the exhibits attached to the Declaration of Marshall R. King, dated February 27, 2015.

and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting

conversion; and (4) knowing participation in a breach of trust.  *OSUS* ¶¶ 225-64.

UBS now moves to dismiss all of these claims.  At a joint Rule 26 conference, this Court

coordinated the instant motion to dismiss to address both Complaints and set the same briefing

schedule for the two sets of Plaintiffs.  *See* Ex. 5.

## ARGUMENT

### I.

### THE SECURITIES LITIGATION UNIFORM STANDARDS ACT PRECLUDES ALL CLAIMS AGAINST THE UBS DEFENDANTS

SLUSA was enacted by Congress to preclude the exact type of claims alleged by

Plaintiffs here.[3]  In 1995, Congress identified the class action device in private securities

litigation as being used to injure "the entire U.S. economy," H.R. Rep. No. 104-369, at 31,

(1995) (Conf. Rep.), and sought to curb such abuses by passing the Private Securities Litigation

Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified at 15 U.S.C. §§ 77z-1 &

78u-4) ("PSLRA" or "Reform Act").  The PSLRA imposed heightened pleading requirements

for federal securities claims, mandatory sanctions for frivolous litigation, and a stay of discovery

pending resolution of any motion to dismiss.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v.

Dabit*, 547 U.S. 71, 81-82 (2006).  "The PSLRA failed, however, to grapple fully with the

ingenuity of the plaintiffs' bar," *In re Herald* ("*Herald I*"), 730 F.3d 112, 118 (2d Cir. 2013)

(Rakoff, J.), *petitions for cert. filed*, 83 U.S.L.W. 3563 (U.S. Dec. 17, 2014) (Nos. 14-730 & 14-

736), as some plaintiffs began filing cases in state courts under state law in order to avoid the

---

[3]   SLUSA preclusion is a "threshold" issue that may be decided without first addressing the
      issue of personal jurisdiction.  *See LaSala v. UBS AG*, 510 F. Supp. 2d 213, 254 (S.D.N.Y.
      2007) ("SLUSA is a preemption defense and, as such, one of a number of preliminary
      grounds for dismissal, among which a judge has discretion to choose when deciding whether
      to dismiss a case.").

PSLRA's heightened standards.  *Dabit*, 547 U.S. at 82.  Congress sought to close this loophole by enacting SLUSA, Pub. L. No. 105-353, §§ 2(2), (5), 112 Stat. 3227 (1998), which "ma[de] federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001) (citation omitted).

SLUSA provides that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A); *see also* 15 U.S.C. § 77p(b). SLUSA thus precludes a plaintiff's claims where the action (1) is a "covered class action" (2) based on state statutory or common law that (3) alleges a "misrepresentation or omission of a material fact" (4) "in connection with the purchase or sale of a covered security."  *See Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010).

"In furtherance of Congress's purpose to negate the artful pleading by which certain plaintiffs evaded the dictates of the PSLRA—and more generally in furtherance of Congress's desire to have class actions affecting the national securities markets be more completely governed by federal securities laws—SLUSA is broadly worded."  *Herald I*, 730 F.3d at 118 (internal citation omitted).  "Congress envisioned a broad construction" of SLUSA.  *Dabit*, 547 U.S. at 86.  "A narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose, viz., 'to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives' of the 1995 Act." *Id.* at 86 (quoting SLUSA, Pub. L. No. 105-353 § 2(5), 112 Stat. 3227).  SLUSA mandates that attention be given "'to both the pleadings and the realities underlying the claims,'" as "plaintiffs

cannot avoid SLUSA 'merely by consciously omitting references to securities or to the federal securities law.'" *Herald I*, 730 F.3d at 119 (quoting *Romano*, 609 F.3d at 523). "Any claim may trigger SLUSA preemption if the basis of that claim sounds in fraud or relies on alleged misstatements or omissions." *In re Merkin*, 817 F. Supp. 2d 346, 359 (S.D.N.Y. 2011) (citation omitted).

All causes of action in both the *Hill* and *OSUS* Actions meet the requirements for SLUSA preclusion. Accordingly, both Complaints must be dismissed.

### A.   Each Action Is a "Covered Class Action"

SLUSA defines a "covered class action" as:

(i) any single lawsuit in which—

> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
> …

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

> (I) damages are sought on behalf of more than 50 persons; and
>
> (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B).

Plainly, the *Hill* Action is a "covered class action" because it purports to be brought "on behalf of a proposed nationwide class consisting of all persons or entities who, directly, had capital invested with BLMIS." *Hill* ¶ 96. Plaintiffs contend that "there are several hundred, if not thousands, of members in the proposed Class," *id.* ¶ 97, and that "[c]ommon questions of law

and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members."  *Id.* ¶ 100.[4]

Similarly, the *OSUS* Action—which asserts the same causes of action as *Hill* based on identical factual allegations, which this Court has accepted as "related" to *Hill*, and which is proceeding together with *Hill* by virtue of a joint Rule 26 conference and a common briefing schedule, *see* Ex. 5, including this single brief directed at both Complaints—qualifies as a "covered class action" under part (ii) of the definition.  The *OSUS* and *Hill* Actions together constitute a "group of lawsuits" involving common questions of law and fact, in which damages are sought on behalf of more than 50 persons, and that are "proceed[ing] as a single action for any purpose."

As this Court has recognized, "'[f]or *any* purpose' is about as broad a provision as Congress could draft."  *In re Refco Sec. Litig.*, 859 F. Supp. 2d 644, 649 (S.D.N.Y. 2012) (Rakoff, J.) ("*Refco I*").  "To interpret this language as covering only lawsuits that are formally 'joined or consolidated' would be to render the statute's description of the latter category of covered actions—lawsuits that 'otherwise proceed as a single action for any purpose'—entirely redundant.  Such an interpretation would run counter to the canons of statutory construction, which require courts to give effect, if possible, to every clause and word of a statute."  *Amorosa v. Ernst & Young LLP*, 672 F. Supp. 2d 493, 517 (S.D.N.Y. 2009) (internal quotation marks and citation omitted), *aff'd sub nom. Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412 (2d Cir.

---

[4]   Although it is quite unlikely that Plaintiffs in the *Hill* Action could ever satisfy the class certification requirements of Rule 23 because individualized issues of reliance would predominate, SLUSA instructs that, for purposes of preclusion, the predominance of common questions must be evaluated without reference to reliance.  *See Marchak v. JPMorgan Chase & Co.*, 11-cv-5839 (MKB), 2015 WL 500486, at *7 (E.D.N.Y. Feb. 6, 2015) ("[T]he plain language of [SLUSA] … requires that the predominance requirement be determined '*without reference* to issues of individualized reliance ….'" (quoting 15 U.S.C. § 78bb(f)(5)(B)(i)(I)) (emphasis in original)).

Feb. 2, 2011).  "Accordingly … an action need not have been formally joined or consolidated

with other actions in order to be a 'covered class action' and subject to SLUSA's preemption

provision."  *Id.*

As a result, courts in this district have repeatedly held that individual lawsuits filed by

fewer than 50 plaintiffs qualify as "covered class actions" when they have been treated as

"related" to, or have been transferred to, a multi-district litigation that seeks damages on behalf

of more than 50 persons.  *See, e.g.*, *In re Citigroup Inc. Secs. Litig.*, 987 F. Supp. 2d 377, 385-88

(S.D.N.Y. 2013) (Stein, J.) (SLUSA precludes state law claims filed in state court by a single

plaintiff, removed based on federal question jurisdiction, and then transferred to MDL); *In re*

*Bank of Am. Corp. Secs., Derivative & ERISA Litig.*, 09-md-2058 (PKC), 12-cv-5210 (PKC),

2013 WL 6504801, at *1, 4-7 (S.D.N.Y. Dec. 11, 2013) (Castel, J.) (SLUSA precludes state law

claims filed in state court by 3 plaintiffs, removed based on diversity jurisdiction, and then

transferred to MDL); *In re Lehman Bros. Secs. & ERISA Litig.*, 09-md-2017 (LAK), 2012 WL

6603321, at *1-3 (S.D.N.Y. Dec. 17, 2012) (Kaplan, J.) (SLUSA precludes state law claims

brought by a single plaintiff in federal court and then transferred to MDL); *In re WorldCom, Inc.*

*Secs. Litig.*, 308 F. Supp. 2d 236, 245-47 (S.D.N.Y. 2004) (Cote, J.) (SLUSA precludes 10

lawsuits each brought by fewer than 50 plaintiffs removed based on "related to" bankruptcy

jurisdiction and then transferred to MDL).  Preclusion applies even when the plaintiff "did not

purposefully direct his lawsuit to this Court" and is not "represented by the same counsel as other

plaintiffs."  *Citigroup*, 987 F. Supp. 2d at 388.  As Judge McMahon noted in *Amorosa*, the mere

assignment of a case to a single judge as "related" to another case ensures that "it would

necessarily be handled in coordination with" the original case, and "is enough to make [the]

action a 'covered class action' as that term is used in SLUSA."  672 F. Supp. 2d at 517-18.

Even at this early stage, the *OSUS* Action is proceeding, in several respects, as a single action with the *Hill* Action.  The Plaintiff in *OSUS* acquiesced in this Court's acceptance of *OSUS* as a related case, and in the holding of a joint Rule 26 conference.[5]  Briefing on this motion to dismiss is proceeding on a common schedule.  If the two Actions were somehow to survive this motion, they would almost certainly be coordinated for discovery, and perhaps tried together, given the complete identity of their factual allegations and legal claims.  And, because the Actions collectively seek damages on behalf of hundreds or thousands of persons, the "covered class action" prong of SLUSA is met as to each Action.

**B.      The Complaints Allege Only State Common Law Claims**

Plaintiffs assert only state common law claims.  *See Hill* ¶¶ 102-70; *OSUS* ¶¶ 225-301.

**C.      The Complaints Allege Material Misrepresentations and Omissions of Material Facts**

The Complaint in each Action alleges, albeit without particularity, a multitude of misrepresentations or omissions of material fact, which lie at the heart of all of Plaintiffs' claims.  Indeed, in characterizing their Actions, Plaintiffs themselves repeatedly emphasize that their claims center on "the largest financial fraud in history," *Hill* ¶ 2, "Madoff's massive fraud," *OSUS* ¶ 1, and UBS's alleged role in assisting Madoff's fraud.  Plaintiffs describe Madoff's false representations about his investment strategy and his issuance of falsified account statements, and that the truth was that Madoff never made such investments and, instead, used customers' deposits to pay other customers' redemptions and enrich himself.  *See Hill* ¶¶ 21-27; *OSUS* ¶¶ 31-47.  Each of the causes of action asserted against UBS prominently features allegations of

_____

[5]  *See* Ex. 5, at 3 ("THE COURT:  With your permission, this will be a joint Rule 26 conference.  [OSUS'S COUNSEL]:  Absolutely, your Honor.").

Madoff's "fraud" and "false statements." *Hill* ¶¶ 103-05, 108-11, 121, 23, 127-29, 139-40, 153-54, 167-68; *OSUS* ¶¶ 226-30, 235-37, 247, 260.

While neither Madoff nor BLMIS is a defendant in this action, the plain language of SLUSA makes clear that "the misrepresentation or omission at issue need not in all instances *be made by defendant* for SLUSA to preempt the claim," *LaSala*, 510 F. Supp. 2d at 240, as the statute covers all cases "alleging … a misrepresentation or omission of a material fact." 15 U.S.C. § 78bb(f)(1). As in *Herald I*, the aiding and abetting claims against UBS here "are integrally tied to the underlying fraud committed by Madoff," as "[t]he complaints, fairly read, charge that [the UBS Defendants] knew of the fraud, failed to disclose the fraud, and helped the fraud succeed—in essence, that [the UBS Defendants] were complicit in Madoff's fraud." 730 F.3d at 119. These allegations, as the Second Circuit held, "are more than sufficient to satisfy SLUSA's requirement." *Id.*; *see also Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1222-23 (9th Cir. 2009) (applying SLUSA to aiding and abetting claim); *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1348-49 (11th Cir. 2008) (SLUSA precluded action alleging that defendant "aided and abetted" a fraud by "fail[ing] to stop the fraudulent misrepresentations" of a third party).

Furthermore, the Complaints plead that UBS itself engaged in deceptive conduct, including that UBS:

- "enabled and perpetuated the Madoff fraud by effectively selling the UBS brand and reputation to Luxalpha and Groupement Financier in order to provide those funds with the appearance of legitimacy," *Hill* ¶ 66; *OSUS* ¶ 114;

- "provided a façade of legitimacy" for funds in the custody and control of BLMIS by serving as the sponsor or promoter of feeder funds and advertising its role, *Hill* ¶ 55; *OSUS* ¶ 103;

- concealed Madoff's and BLMIS's involvement with Luxalpha from investors and regulators, *see, e.g.*, *Hill* ¶¶ 9, 18, 53-55, 71, 122; *OSUS* ¶¶ 4, 261;

- assumed key roles for feeder funds before delegating its roles to Madoff and BLMIS without informing investors, *see, e.g.*, *Hill* ¶¶ 8, 10, 18, 58, 59, 64, 65, 67, 76-84; *OSUS* ¶¶ 3, 17, 19, 106-07, 112;

- entered into undisclosed indemnity agreements which "served to perpetuate the fiction that UBS[L] and Luxalpha's UBS-based directors were responsible for Luxalpha, when in reality [UBS was] simply selling their name and reputation to Luxalpha," *Hill* ¶ 75; *accord OSUS* ¶ 123; and

- acted as a "'figure head' for third parties with regard to sponsorship of" the feeder funds, *see, e.g.*, *Hill* ¶¶ 73, 93; *OSUS* ¶¶ 118, 121, 166.

Accordingly, the misrepresentation or omission element of SLUSA is satisfied.

**D.     The Alleged Misrepresentations Were in Connection with the Purchase or Sale of Covered Securities**

Finally, all of Plaintiffs' claims originate from misrepresentations made in connection with the purchase or sale of covered securities. A "covered security" is a security that meets the standards of the Securities Act of 1933. 15 U.S.C. § 78bb(f)(5)(E). "Under § 18(b) of the Securities Act of 1933, a covered security is one that is 'listed, or authorized for listing, on [the national exchanges]' or that is 'issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.'" *Romano*, 609 F.3d at 520 n.3 (quoting 15 U.S.C. § 77r(b)).

Plaintiffs here are customers of BLMIS, or the assignee of a customer.  They provided funds to BLMIS to be invested on their behalf using a "Split Strike Conversion" strategy, whereby Madoff purported to invest customers' funds into common stocks within the S&P 100 Index, "a collection of the 100 largest publicly traded companies."  *Hill* ¶¶ 5, 22; *accord OSUS* ¶¶ 2, 33.  As part of the fraud, BLMIS customers "received fabricated monthly or quarterly statements showing *that securities were held in, or had been traded through, their accounts*."  *Hill* ¶ 23 (emphasis added); *accord OSUS* ¶ 37.  The securities at issue in this action, which were purportedly purchased and sold on Plaintiffs' behalf by BLMIS, are securities that were listed on the national exchanges and are "indisputably covered securities."  *Herald I*, 730 F.3d at 118.

"[T]he fact that Madoff Securities may not have actually executed their pretended securities trades does not take this case outside the ambit of SLUSA."  *Herald I*, 730 F.3d at 118; *see also In re Herald* ("*Herald II*"), 753 F.3d 110, 113 (2d Cir. 2014) (precluding claims by investors who "tried to take … an ownership position in the statutorily relevant securities"), *petitions for cert. filed*, 83 U.S.L.W. 3563 (U.S. Dec. 17, 2014) (Nos. 14-730 & 14-736).  As the Supreme Court has held, SLUSA preclusion applies to plaintiffs "*who tried to take* … an ownership interest in financial instruments that fall within the relevant statutory definition," as such victims fall within the bounds of the "in connection with the purchase or sale" requirement of the statute.  *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014) (emphasis removed and added);[6] *see also Herald II*, 753 F.3d at 113 (same).  Plaintiffs here had capital invested with BLMIS, which then purported to purchase and sell covered securities for Plaintiffs'

---

[6]  *Troice* held that plaintiffs who invested in Allen Stanford's scheme to induce victims to purchase certificates of deposit of the Stanford Investment Bank were not precluded from bringing state law claims by SLUSA as those certificates of deposit were not "covered securities."  The plaintiffs there were not seeking to purchase, either directly or indirectly, a covered security.  *See Troice*, 134 S. Ct. at 1062.  This stands in contrast to Plaintiffs here, who were direct customers of BLMIS and sought to purchase publicly-listed securities.

accounts.  *Hill* ¶¶ 15-16, 96; *OSUS* ¶ 12.  "That Madoff Securities (a Ponzi scheme) fraudulently failed to follow through on its promise to place the investments in covered securities does not in any respect remove this case from the ambit of SLUSA."  *Herald II*, 753 F.3d at 113; *see also SEC v. Zandford*, 535 U.S. 813, 819 (2002) (the "purchase or sale" requirement under § 10(b) of the Securities Exchange Act of 1934 is to be "construed not technically and restrictively, but flexibly") (internal quotation marks and citation omitted); *Instituto de Prevision Militar*, 546 F.3d at 1347-51 (misrepresentation by defendant that it was going to invest plaintiff's pension funds but instead embezzled them was made in connection with the purchase or sale of securities); *Yale M. Fishman 1998 Ins. Trust v. Gen. Am. Life Ins. Co.*, 11-cv-1284, 2013 WL 842642, at *6 (S.D.N.Y. Mar. 7, 2013) (SLUSA bars claims against Madoff feeder funds "whether or not securities were ever actually purchased and regardless of whether plaintiffs were induced to invest by the promise that securities would be purchased").

    This case presents none of the factual nuances of *Troice* or *Herald II*, in which the Supreme Court and the Second Circuit had to grapple with whether the plaintiffs' direct investments in non-covered financial instruments were sufficiently connected to indirect investments in covered securities so as to make SLUSA preclusion applicable.  Here, Plaintiffs *are customers of BLMIS* (or their assignee) *who directly invested with Madoff, and who tried to take a direct ownership interest in covered securities.  See Hill* ¶¶ 15-16; *OSUS* ¶¶ 12-13. Unlike investors in feeder funds, there are no layers of separation between the misrepresentations or omissions alleged and the purported "purchase or sale of a covered security" in this case: Plaintiffs invested their money with BLMIS in order to purchase and sell nationally-listed securities.  Thus, the misrepresentations and omissions underlying Plaintiffs' claims were in connection with the purchase or sale of covered securities.

*      *      *

For these reasons, the Actions fall within the ambit of SLUSA, and all of Plaintiffs'

causes of action are precluded.

## II.
## THE UBS DEFENDANTS ARE NOT SUBJECT TO
## PERSONAL JURISDICTION IN THIS COURT

### A.      Applicable Legal Standards

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction,

the plaintiff bears the burden of establishing that the court has jurisdiction" over each defendant.

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (internal quotation marks

omitted); *accord King Cnty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 313

(S.D.N.Y. 2011).  Although ambiguities in the pleadings should be construed in the light most

favorable to the plaintiff, "resolving all doubts in the plaintiff's favor is not the same as blindly

crediting all allegations regardless of their factual support." *Melnick v. Adelson-Melnick*, 346 F.

Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004).  In addition, in reviewing a Rule 12(b)(2) motion, "a

court may consider documents beyond the pleadings in determining whether personal

jurisdiction exists." *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, 11-cv-

420 (RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012).

"[C]onclusory non-fact-specific jurisdictional allegations," such as those asserted by

Plaintiffs here, "will not establish personal jurisdiction." *King Cnty.*, 769 F. Supp. 2d at 316

n.28; *accord, e.g.*, *M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, 10-cv-4747 (CM), 2010

WL 4159476, at *3 (S.D.N.Y. Oct. 7, 2010).  The Complaints here are classic examples of

conclusory jurisdictional pleading—most strikingly, as against UBS FSL and UBS TPM.  They

contain virtually no *specific factual* allegations that, if true, would support the exercise of

jurisdiction over the UBS Defendants.  For example, Plaintiffs allege—without further

14

elaboration or particularization—that "[a]ll of the UBS Defendants" (a) "have maintained minimum contacts with New York in connection with the claims alleged in this complaint"; (b) "have undertak[en] significant commercial activities in New York"; (c) "derived significant revenue from New York"; and (d) "have committed tortious acts both within and outside of New York, causing injury in New York." *Hill* ¶ 13; *OSUS* ¶ 15.  Plaintiffs make these conclusory jurisdictional allegations without pleading underlying facts that would tend to support these conclusions.  Such generalized jurisdictional allegations that lack specificity and utilize vague hedging language are patently insufficient to establish jurisdiction, or even to justify jurisdictional discovery.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998). Plaintiffs cannot "simply stat[e] the standard" for establishing personal jurisdiction and then expect the court "to find, without any corroborating facts, that [Defendants] *by definition* ha[ve] the required contacts with [the forum]."  *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, 10-cv-1777 (ADS) (AKT), 2011 WL 381612, at *3 (E.D.N.Y. Feb. 2, 2011).  Plaintiffs' conclusory jurisdictional allegations must therefore be disregarded.

Similarly, almost all of the factual allegations in the Complaints reference the "UBS Defendants" in the aggregate, in an apparent attempt to combine the contacts of all of the UBS Defendants into one pot.  Such generalized jurisdictional allegations against the defendants as a collective are also insufficient to establish jurisdiction.  *See, e.g.*, *Rush v. Savchuck*, 444 U.S. 320, 331-32 (1980) (rejecting "attempt[] to attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts," because "[t]he requirements of *International Shoe* ... must be met as to each defendant over whom a ... court exercises jurisdiction."); *King Cnty.*, 769 F. Supp. 2d at 315 ("[E]ach individual

15

defendant must be shown to have personally engaged in relevant and intentional transactions in [the forum] to warrant the exercise of personal jurisdiction.").

Because *OSUS* was removed pursuant to 28 U.S.C. § 1452, this Court has personal jurisdiction over each of the UBS Defendants in that Action only to the extent allowed under the Constitution of the United States.  *See* Fed. R. Bankr. P. 7004(f); *In re Celotex Corp.*, 124 F.3d 619, 629-30 (4th Cir. 1997).[7]  In the *Hill* Action, in addition to meeting the requirements of the Due Process Clause, this Court, sitting in diversity, "may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

Under either standard, the Actions must be dismissed unless Plaintiffs can establish a *prima facie* case that each of the UBS Defendants has minimum contacts with the forum such that each "defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum … thus invoking the benefits and protections of its laws."  *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987); *see also Bank Brussels Lambert*, 305 F.3d at 124 ("If there is a statutory basis for jurisdiction [under the CPLR], the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment."); *Ponte v. Universal City Dev. Partners, Ltd.*, 07-cv-2360 (KMK) (LMS), 2008 WL 169358, at *8 (S.D.N.Y. Jan. 15, 2008) (explaining that CPLR 302(a)(3) "is a means of exercising specific jurisdiction," and "specific jurisdiction over a given defendant is unconstitutional if the plaintiffs' claim does not arise out of

---

[7]  The UBS Defendants have not been served with the summons and complaint in the *OSUS* Action, nor have they waived service.  Because Plaintiffs' time to effectuate service has not yet expired, a motion pursuant to Rule 12(b)(5) for insufficient service of process is not yet ripe, but the UBS Defendants expressly reserve their right to so move once the defense becomes available.

or relate to the defendant's contacts with the forum").  The Court must also dismiss the

Complaints unless the "assertion of personal jurisdiction comports with 'traditional notions of

fair play and substantial justice'—that is, [it must be] reasonable under the circumstances of the

particular case."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)

(quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310,

316 (1945)).

**B.      The UBS Defendants Are Not Subject to General Jurisdiction in This Court**

Unlike specific jurisdiction, which encompasses cases in which the suit "aris[es] out of or

[is] related to the corporation's activities within the State," *Daimler AG v. Bauman*, 134 S. Ct.

746, 754 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414

n.8 (1984)), general jurisdiction arises in "instances in which the continuous corporate operations

within a state [are] so substantial and of such a nature as to justify suit … on causes of action

arising from dealings entirely distinct from those activities." *Id.* (quoting *Int'l Shoe*, 326 U.S. at

318).  The Supreme Court's recent decision in *Daimler* significantly narrowed the circumstances

in which a court may assert general jurisdiction over a foreign corporation.  In *Daimler*, the

Court held that the test for general jurisdiction over a foreign corporation is "whether that

corporation's affiliations with the State are so continuous and systematic as to render it

essentially at home in the forum State," and that for a corporation, "the place of incorporation

and principal place of business are paradigm bases for general jurisdiction."  134 S. Ct. at 760-61

(internal alterations and citations omitted); *see also Gucci Am., Inc. v. Bank of China*, 768 F.3d

122, 135 (2d Cir. 2014) ("Aside from 'an exceptional case,' the [Supreme] Court explained, a

corporation is at home (and thus subject to general jurisdiction, consistent with due process) only

in a state that is the company's formal place of incorporation or its principal place of business.").

The Court expressly held that to look beyond the place of incorporation and principal place of

business and allow for the exercise of general jurisdiction in "every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" would be "unacceptably grasping." *Daimler*, 134 S. Ct. at 761 (internal quotation marks and citation omitted).

Based on these principles, this Court does not have general personal jurisdiction over any of the UBS Defendants because none of them is "at home" in New York or the United States. UBS AG's place of incorporation and principal place of business are in Switzerland.  Connors Decl. ¶ 2.  Like the defendant in *Daimler*, UBS AG lacks connections with New York or the United States that are so continuous and systematic that would render the state and the United States a "home" for the company.  UBS AG therefore is not subject to jurisdiction here for claims unrelated to its contacts with the forum.

Although Plaintiffs seem to rely on UBS AG's offices in New York as the basis for asserting personal jurisdiction over UBS AG, *see Hill* ¶ 17; *OSUS* ¶ 16, that fact does not make this an "exceptional case" that would warrant setting aside *Daimler*'s stringent general rule.[8]  In similar circumstances, the Second Circuit has applied *Daimler* and rejected the exercise of general jurisdiction over a foreign bank, despite its regular presence in New York.  *See Gucci Am., Inc.*, 768 F.3d at 135.  In deciding whether the Bank of China, a global company with four branches in the United States including in New York, was subject to general jurisdiction under *Daimler*, the Second Circuit held:

> [T]he district court may not properly exercise general personal jurisdiction over the Bank. Just like the defendant in *Daimler*, the … Bank here has branch offices in the forum, but is incorporated and headquartered elsewhere.  Further, this is clearly not "an exceptional case" where the Bank's contacts are "so continuous and systematic as to render [it] essentially at home in the forum."

---

[8]  UBS AG has branches in four states in addition to New York.  Connors Decl. ¶ 3.

*Id.* at 135 (quoting *Daimler*, 134 S. Ct. at 761 & n.19).  Likewise, a federal court in California recently ruled that "UBS AG is not subject to general jurisdiction in this District (or anywhere in the United States) because it is incorporated in Switzerland and its principal place of business is in Switzerland."  *AM Trust v. UBS AG*, 14-cv-4125 (PJH), 2015 WL 395465, at *6 (N.D. Cal. Jan. 29, 2015).

Nor are UBSL, UBS FSL, or UBS TPM subject to general jurisdiction in New York or the United States.  UBSL, UBS FSL, and UBS TPM are all incorporated in Luxembourg and have their principal places of business in Luxembourg.  Baumert Decl. ¶ 2; Boulat Decl. ¶ 2; Porter Decl. ¶ 2.  These defendants have no physical presence in the United States, and they do not directly or purposefully solicit, market, or otherwise seek out business from New York or the United States (even assuming that such contacts are relevant to the question of general jurisdiction).[9]  Baumert Decl. ¶ 3; Boulat Decl. ¶ 3; Porter Decl. ¶ 3.  In short, Plaintiffs have not (and cannot) set forth any allegations that would indicate that UBSL, UBS FSL, or UBS TPM is "at home" in New York or the United States, and they are therefore not subject to this Court's general jurisdiction.

In light of *Daimler*, *Gucci*, and *AM Trust*, none of the UBS Defendants is subject to general personal jurisdiction in this Court.  The simple fact is that they are "at home" not in New York or the United States, but in Luxembourg or Switzerland, the location of their principal places of business and places of incorporation.

---

[9]   As a result of *Daimler*, the once-applicable test for "doing business" in New York under CPLR 301 may no longer be sufficient to establish general jurisdiction.  *See, e.g.*, *Sonera Holding B.V. v. Cukurova Holding A.S*, 750 F.3d 221, 224 n.2 (2d Cir. 2014); *Reich v. Lopez*, 13-cv-5307 (JPO), 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014); *Meyer v. Bd. of Regents of Univ. of Oklahoma*, 13-cv-3128 (CM), 2014 WL 2039654, at *4 (S.D.N.Y. May 14, 2014).  Nevertheless, UBSL, UBS FSL, and UBS TPM would not be subject to general jurisdiction even under the prior, more lenient standard.

**C.     The UBS Defendants Are Not Subject to Specific Personal Jurisdiction in this Court**

The alleged contacts of the UBS Defendants do not support specific jurisdiction under

either the New York long-arm statute or the Due Process Clause.  As to each defendant, the

Complaints fail to allege facts showing that the defendant purposefully availed itself of the

privilege of conducting business in the forum, and that any contacts alleged have a substantial

relationship or causal connection to Plaintiffs' injuries.[10]

The principal basis for jurisdiction over the UBS Defendants alleged by Plaintiffs appears

to be that they provided services to Luxalpha or Groupement Financier, two foreign funds that,

in turn, invested their money through BLMIS.  But with very few exceptions, other than

---

[10]   The *Hill* Complaint, which must satisfy New York's long-arm statute in addition to
constitutional due process, is notably vague about which subsection of CPLR 302 is
purportedly met as to each UBS Defendant.  *See Hill* ¶ 13.  Presumably, *Hill* relies on CPLR
302(a)(1), which provides for specific jurisdiction over a nondomiciliary defendant "if two
conditions are met: first, the nondomiciliary must 'transact business' within the state; second,
the claim against the nondomiciliary must arise out of that business activity."  *Cutco Indus.,
Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (citing *McGowan v. Smith*, 52 N.Y.2d
268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981)).  "A nondomiciliary
'transacts business' under CPLR 302(a)(1) when [it] purposefully avails [it]self of the
privilege of conducting activities within New York, thus invoking the benefits and
protections of its laws."  *Id.* (internal alterations and quotations omitted).  The "arising out
of" requirement is met where there is an "articulable nexus between the business transacted
[within the State] and the cause of action sued upon."  *McGowan*, 52 N.Y.2d at 272, 419
N.E.2d at 323, 437 N.Y.S.2d at 645.  Such a "nexus" exists only if there is a "substantial
relationship … between a defendant's transactions in New York and a plaintiff's cause of
action...."  *Johnson v. Ward*, 4 N.Y.3d 516, 519, 829 N.E.2d 1201, 1202, 797 N.Y.S.2d 33,
34 (2005) (citation omitted).

Alternatively, to invoke specific jurisdiction under CPLR 302(a)(3), Plaintiffs must show:
"(1) a tortious act committed outside New York; (2) resultant injury within New York; and
(3) the defendant either (i) does or solicits business or engages in any other course of conduct
or derives substantial revenue from activities, in New York, or (ii) expects or reasonably
should expect that its tortious act will have consequences in New York, *and* derives
substantial revenue from interstate or international commerce."  *Baptichon v. Nev. State
Bank*, 304 F. Supp. 2d 451, 459-60 (E.D.N.Y. Feb. 9, 2004).  To satisfy the "reasonable
expectation" requirement of 302(a)(3)(ii), foreseeability alone is insufficient, and "purposeful
availment of the benefits of the laws of New York such that the defendant may reasonably
anticipate being haled into New York court is required."  *Kernan v. Kurz-Hastings, Inc.*, 175
F.3d 236, 241 (2d Cir. 1999) (quotation and citation omitted).

identifying the position that each UBS Defendant occupied with respect to the two funds, the Complaints say almost nothing about what any of the UBS Defendants *did*, or how their conduct connects with New York or the United States or gives rise to Plaintiffs' claims.

- As to UBS FSL and UBS TPM, two Luxembourg-based entities, the Complaints allege the positions in which they served ("administrator" and "manager," respectively) and the functions that they thereby supposedly were "responsible for." *Hill* ¶¶ 63-64; *OSUS* ¶¶ 111-12. The only alleged conduct by either entity, however, is that UBS FSL calculated the net asset value for the two funds. *Hill* ¶¶ 8, 63, 88, 94; *OSUS* ¶¶ 3, 111, 147, 168.

- Similarly, Plaintiffs assert that UBS AG (an entity headquartered in Switzerland) was the "sponsor" or "promoter" of Luxalpha, which allegedly made it "essentially responsible" for the creation of the fund, although they do not elaborate further. *Hill* ¶¶ 53-54; *OSUS* ¶¶ 101-02. Instead, Plaintiffs describe diligence allegedly conducted by UBS AG on other potential BLMIS-related projects *that did not materialize* and the communication of "concerns" by UBS AG employees to UBSL. *See, e.g.*, *Hill* ¶¶ 30-41, 47-48; *OSUS* ¶¶ 79-89, 95-96.

- Unlike the other UBS Defendants, for whom Plaintiffs have alleged no contacts that touch New York at all, the Complaints identify the positions UBSL held with respect to Luxalpha and Groupement Financier, *see Hill* ¶¶ 56-62; *OSUS* ¶¶ 104-10, and go on to identify certain activities allegedly engaged in by UBSL in connection with its provision of services to Luxalpha: Plaintiffs cite certain contracts UBSL allegedly executed with BLMIS and others, *see Hill* ¶¶ 18, 77-78, 80-81; *OSUS* ¶¶ 126-27, 129-

30, unspecified correspondence between UBSL employees and BLMIS, *Hill* ¶ 60;

*OSUS* ¶ 108, and an account used to process redemptions for Luxalpha.  *Id*.

Ultimately, all of Plaintiffs' allegations relate to services provided overseas by Luxembourg and Swiss entities to Luxembourg and BVI funds that invested their money through BLMIS.  The Complaints do not allege that any of the services provided by UBS FSL, UBS TPM, or UBS AG were performed in New York or the United States.  Merely providing services outside the United States to investment funds that invested money inside the United States does not show that the UBS Defendants purposefully availed *themselves* of the privilege of conducting business in New York or the United States.

Even as to UBSL, for which Plaintiffs cite a handful of forum-related contacts, the Complaints fail to allege a basis for personal jurisdiction.  A finding of specific jurisdiction requires that "the defendant purposefully avails *itself* of the privilege of conducting activities within the forum...."  *Asahi*, 480 U.S. at 109 (internal quotation omitted) (emphasis added); *accord McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, N.E.2d 604, 607, 229 N.Y.S.2d 34, 37-38 (1967).  The services provided here by UBSL were all done *as a representative of Luxalpha*.  For example, the Sub-Custodian Agreement and the Customer Agreement were executed by UBSL *on behalf of* and *for the exclusive benefit* of Luxalpha, rather than in UBSL's own interest.  *See* Baumert Decl. ¶ 4.  UBSL was not purposefully availing itself of the privilege of engaging in investment activity in the United States in executing those agreements.  Thus, neither UBSL nor, *a fortiori*, the other UBS Defendants—who are not alleged to have had any direct contact with the United States—should be subjected to jurisdiction on that basis.  *See, e.g.*, *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2009) ("When contacts with New York have been found sufficient to support personal

jurisdiction, a defendant *on his own initiative* projected himself into New York to engage in a sustained and substantial transaction of business." (internal quotation and alterations omitted; emphasis added)).

Similarly, the few other activities identified by the Complaints do not suffice to establish jurisdiction. Any "due diligence" conducted by UBS AG in relation to BLMIS—which is not alleged to have taken place in the United States, or to have been related to Luxalpha and Groupement Financier (rather than to unconsummated projects)—is not a basis for specific jurisdiction. *See Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 143 (11th Cir. May 20, 2005) (unpublished opinion) (finding that certain due diligence inquiries were insufficient to provide a basis for personal jurisdiction); *Maranga v. Vira*, 386 F. Supp. 2d 299, 309 (S.D.N.Y. 2005) ("Plaintiffs' assertion regarding the use of New York banking institutions by Defendants in undertaking due diligence is also not sufficient to establish transaction of business in New York by Defendants."). Communications by UBSL "from outside New York to people in New York are not sufficient to establish personal jurisdiction under C.P.L.R. 302(a)(1) or the due process clause." *Hearst Corp. v. Goldberger*, 96-cv-3620 (PKL) (AJP), 1997 WL 97097, at *12 (S.D.N.Y. Feb. 26, 1997) (citations omitted). And the Stamford, Connecticut bank account used by UBSL for redemptions by Luxalpha is of no jurisdictional relevance, both because Plaintiffs' claims do not arise from Luxalpha's redemptions, *see, e.g.*, *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 730-32 (S.D.N.Y. 2010), and because that account is not "at the very root of the action," *see id.* at 729 (internal quotation omitted). Nor do Plaintiffs allege "repeated use" of the account amounting to a "course of dealing" in New York. *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 900, 960 N.Y.S.2d 695, 702 (2012).

Additionally, none of the contacts alleged by Plaintiffs establishes specific jurisdiction because they are not sufficiently related to Plaintiffs' claims.  Essentially, Plaintiffs claim that the UBS Defendants' involvement with Luxalpha and Groupement Financier created a "façade of legitimacy" for BLMIS and allowed the funneling of additional money to Madoff.  These claims do not "arise out of" any of the contacts alleged in the Complaints.  Because UBSL has only limited contacts with the forum—and the others have no relevant contacts at all—Plaintiffs must show that their "injury was proximately caused by those contacts."  *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (citation omitted); *see also Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 09-cv-8862 (GBD), 2013 WL 1286170, at *12 (S.D.N.Y. Mar. 28, 2013) (same); *Ponte*, 2008 WL 169358, at *10 ("[I]f a defendant has scant contacts with the forum, a court may demand a proximate relation between the defendant's contacts and the plaintiff's injury.").

Putting aside the fact that the Complaints do not even specify what Plaintiffs' injuries were, the Complaints are completely devoid of any allegations showing how any of the UBS Defendants proximately caused Plaintiffs' injuries.  Plaintiffs' injuries were caused by the Ponzi scheme perpetrated by Madoff.  Plaintiffs do not allege that they relied upon UBS's involvement with Luxalpha and Groupement Financier when deciding to invest in BLMIS.  They also do not allege that they were injured when Luxalpha invested in BLMIS, or that they lost money they invested with BLMIS *because* UBS failed to uncover Madoff's fraud.[11]  *See generally* Section III(B)(2), *infra* (discussing failure to plead proximate causation).

Furthermore, even by a looser standard of causation, Plaintiffs' injuries were not caused by the specific contacts alleged in the Complaints.  The only conduct from which Plaintiffs'

---

[11]  Even if alleged, the UBS Defendants' failure to blow the whistle on Madoff's fraud could not have proximately caused Plaintiffs' injuries because, had UBS done so at an earlier time, the Ponzi scheme would have collapsed and Plaintiffs would still have lost all of their money.

claims arise occurred overseas: the transactions between Luxalpha and/or Groupement Financier and the UBS Defendants that established UBS's involvement with those entities.  Plaintiffs' claims do not arise from UBSL's correspondence or contracts entered into with BLMIS, in connection with the administration of Luxalpha, or a bank account in Connecticut used to collect Luxalpha's redemptions from BLMIS.  These contacts are far too removed from Plaintiffs' injuries to establish personal jurisdiction under either the New York long-arm statute or the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution.

### III.
### THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST ANY OF THE UBS DEFENDANTS

**A.  Applicable Legal Standards**

Even assuming Plaintiffs could proceed past SLUSA and the jurisdictional defects, all of their causes of action must be dismissed for failure to state a claim.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The allegations cannot be "merely consistent with" a defendant's liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, a complaint's non-conclusory factual allegations must "state a claim to relief that is plausible on its face" by creating a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quotation marks and citation omitted).

In addition, if "the underlying primary violations are based on fraud, the allegations … must meet the particularity requirements of Fed. R. Civ. P. 9(b)."  *Kolbeck v. LIT Am. Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996) (citation omitted), *aff'd*, 152 F.3d 918 (2d Cir. 2001).  All of Plaintiffs' claims here are grounded in fraud: each of the causes of action asserted against UBS depends on the allegation that Madoff committed "fraud" or made "false statements," which

UBS supposedly aided and abetted, or from which UBS was allegedly unjustly enriched.  *Hill* ¶¶ 103-05, 108-11, 121, 123, 127-29, 139, 140, 153-54, 167-68; *OSUS* ¶¶ 226-30, 235-37, 247, 260.  This fraud implicates the heightened pleading burdens of Rule 9(b), yet Plaintiffs fail to plead any of their claims with sufficient particularity.

**B.**     **Plaintiffs Have Not Sufficiently Pled Their Aiding and Abetting Claims**

Counts One, Two, Four, Five and Six in *Hill* and Counts One through Four in *OSUS* all articulate different versions of the same claim—that UBS aided and abetted Madoff's Ponzi scheme.

To allege an aiding and abetting claim, Plaintiffs must adequately plead "[1] the existence of a primary violation, [2] actual knowledge of the violation on the part of the aider and abettor, and [3] substantial assistance."  *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) (internal quotation marks and citations omitted); *see also In re Refco Inc. Sec. Litig.*, 07-mdl-1902 (JSR), 08-cv-3065 (JSR), 08-cv-3086 (JSR), 2012 WL 3126834, at *1 (S.D.N.Y. July 30, 2012) (Rakoff, J.) ("*Refco II*"), *aff'd sub nom. Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014).[12]  The heightened pleading requirements of Rule 9(b) apply equally

---

[12]  Plaintiffs' claims for "knowing participation in a breach of trust" are the same as their claims for aiding and abetting breach of fiduciary duty.  *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 49-50 (2d Cir. 2005) (equating claim for aiding and abetting breach of fiduciary duty with claim for knowing participation in breach of trust); *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986) (describing a "knowing participation" claim as "analogous" to claim for "aiding and abetting a securities fraud").  The elements for both claims are the same.  *Compare S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987) ("(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach"), *with Marketxt*, 693 F. Supp. 2d at 393 ("[A] plaintiff must adequately allege three elements in order to make out a claim for aiding and abetting tortious conduct: [1] the existence of a primary violation, [2] actual knowledge of the violation on the part of the aider and abettor, and [3] substantial assistance.").  As such, Plaintiffs' claims for knowing participation in a breach of trust must be dismissed if the Court rejects their claims for aiding and abetting breach of fiduciary duty.

to aiding and abetting fraud claims and other aiding and abetting claims that sound in fraud. *Rosner v. Bank of China*, 06-cv-13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008) ("*Rosner I*") ("The Second Circuit has applied the heightened pleading requirements of Rule 9(b) to claims for aiding and abetting fraud."), *aff'd*, 349 F. App'x 637 (2d Cir. Oct. 21, 2009) ("*Rosner II*"); *Kolbeck*, 939 F. Supp. at 245.

These standards are fatal to the Complaints, as neither adequately pleads actual knowledge or substantial assistance by UBS.  Moreover, Plaintiffs have failed even to plead *Madoff's underlying fraud* with the requisite particularity—having failed to allege any details of the misrepresentations allegedly made to them or that they reasonably relied to their detriment on such misrepresentations.

### 1.      Plaintiffs Fail to Plead Actual Knowledge

"[A]ctual knowledge is required to impose liability on an aider and abettor under New York law."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (internal quotation marks and citation omitted); *see also In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011), *aff'd sub nom. Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61 (2d Cir. Jan. 26, 2012). "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one."  *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  "Ordinarily, evidence of recklessness, conscious avoidance, or willful blindness as to whether the primary actor is engaged in fraud is not sufficient to satisfy the knowledge element of an aiding and abetting claim."  *In re Agape*, 773 F. Supp. 2d at 308 (internal quotation marks, alteration and citation omitted).  Likewise, "[c]onstructive knowledge" is "legally insufficient to impose aiding and abetting liability."  *Kaufman v. Cohen,* 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003) (citation omitted); *accord, e.g.*, *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014); *Berman*

*v. Morgan Keegan & Co.*, 10-cv-5866 (PKC), 2011 WL 1002683, at *10 (S.D.N.Y. Mar. 14,

2011).  And with the pleading standards of Rule 9(b), conclusory statements of actual knowledge

are insufficient to support an aiding and abetting claim under New York law.  *Rosner II*, 349 F.

App'x at 639 (finding that conclusory statements without facts supporting an inference of actual

knowledge of the fraud were insufficient for an aiding and abetting claim).[13]

        Other than conclusory allegations of actual knowledge, which do not satisfy Rule 9(b)'s

exacting standards, Plaintiffs attempt to establish this element by alleging UBS's awareness of

"red flags" concerning BLMIS and, relatedly, expressions of caution or concern by UBS

employees about investing with BLMIS.  Case law makes clear that such allegations are patently

insufficient to establish actual knowledge.

        a.      **Plaintiffs' Allegations Concerning "Red Flags" Do Not Show Actual
                Knowledge of Fraud**

        The Complaints make various allegations relating to several rounds of due diligence

allegedly performed by UBS on BLMIS in connection with potentially investing in or offering

several BLMIS-related products.  *E.g.*, *Hill* ¶¶ 35, 43, 46; *OSUS* ¶¶ 84, 91, 94.  But none of the

pleadings allege with any particularity that UBS actually learned of Madoff's fraud through this

due diligence.

        Instead, the Complaints allege that the due diligence raised several "red flags," *see, e.g.*,

*Hill* ¶ 35; *OSUS* ¶ 84, and that UBS became or should have become aware of Madoff's Ponzi

scheme from these warning signs.  *See Hill* ¶¶ 3, 6, 35, 40, 44, 46, 51; *OSUS* ¶¶ 1-2, 84, 87, 92,

---

[13]   Actual knowledge is "'not identical to the scienter required for the underlying fraud.'"
       *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 652 F.
       Supp. 2d 495, 502 (S.D.N.Y. 2009) (quoting *J.P. Morgan Chase Bank v. Winnick*, 406 F.
       Supp. 2d 247, 253 n.4 (S.D.N.Y. 2005)).  Scienter can be satisfied by showing "facts that
       constitute strong circumstantial evidence of … recklessness," a standard lower than "actual
       knowledge."  *Id.* (internal quotation marks and citation omitted).

94, 98.  These alleged "red flags" include a lack of transparency, Madoff's unwillingness to meet

with UBS, the volume of trades being reported by BLMIS, the uncanny "consistency" of

Madoff's returns, the lack of industry-standard management and performance fees, unusual

trading activities, Madoff's use of a small, unknown auditor, Madoff's failure to identify

counterparties, abnormal trade confirmations, the use of backdated recommendations, and

reporting of stock trades outside of the known price ranges.  *Hill* ¶¶ 5, 6, 34-35, 46-47, 108;

*OSUS* ¶¶ 2, 83-84, 94-95, 228.  However, time and time again courts in this Circuit have rejected

attempts by plaintiffs to rely on these same red flags in Madoff-related cases as indicative of

actual knowledge or even the lesser standard of scienter.  *See, e.g.*, *Elendow Fund, LLC v. Rye*

*Inv. Mgmt.*, 588 F. App'x 27, 28 (2d Cir. Dec. 16, 2014) (summary order) (affirming dismissal

where plaintiff failed to plead sufficient red flags to show an inference of awareness of fraud);

*Matana v. Merkin*, 989 F. Supp. 2d 313, 328-29 (S.D.N.Y. 2013) (collecting cases finding "red

flag" allegations inadequate for fraud claims); *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236,

246-47 (S.D.N.Y. 2012) (dismissing common law fraud claims predicated in part on "red flags"

where plaintiff failed to "allege facts plausibly suggesting that defendants were aware of these

red flags, or that if they were aware, they then translated those red flags into a suspicion of

fraud"); *In re Austin Capital Mgmt., Ltd. ERISA Litig.*, 09-md-2075, 2012 WL 6644623, at *4

(S.D.N.Y. Dec. 21, 2012) ("[A]llegations that [defendant] merely failed to adequately perform

due diligence on Madoff, or that it failed to take heed of 'red flags' will not be sufficient to plead

a cause of action for securities fraud, even if plaintiffs are able to establish that [defendant's]

representations applied to Madoff."); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 69, 76-77

(S.D.N.Y. 2010) (dismissing common law fraud claims against auditors of Madoff feeder fund

where plaintiff alleged such "red flags" as the "uncanny consistency" of investment returns and

Madoff's use of a small, unknown audit firm), *aff'd*, 485 F. App'x 461 (2d Cir. June 12, 2012);

*Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 310 (S.D.N.Y. 2010), *aff'd*, 530 F. App'x

21 (2d Cir. July 16, 2013); *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F.

Supp. 2d 406, 413 (S.D.N.Y. 2010) (rejecting red flag theory as insufficient to support strong

inference of scienter), *aff'd*, 487 F. App'x 636 (2d Cir. July 10, 2012); *MLSMK Invs. Co. v. JP

Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144-45 (S.D.N.Y. 2010) (failure to set forth non-

conclusory facts of knowledge requires dismissal of aiding and abetting claim), *aff'd in part*, 431

F. App'x 17 (2d Cir. June 6, 2011), *aff'd*, 651 F.3d 268 (2d Cir. 2011); *In re Tremont Secs. Law,

State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 368, 371-72 (S.D.N.Y. 2010) (dismissing securities

fraud and common law fraud claims against auditors of Madoff feeder fund and rejecting "red

flags" such as the inability to duplicate Madoff's returns, Madoff's lack of transparency, and the

magnitude of alleged fraud); *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 624 (S.D.N.Y.

2010) (allegations that auditor had knowledge that Madoff was both broker and custodian of

certain accounts was insufficient to satisfy Rule 9(b)'s requirement of particularity), *aff'd sub

nom. Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618 (2d Cir. May 18, 2012)

(summary order); *SEC v. Cohmad Secs. Corp.*, 09-cv-5680 (LLS), 2010 WL 363844, at *5

(S.D.N.Y. Feb. 2, 2010) ("In light of Madoff's established reputation as a successful and

respected investment adviser, the high returns he produced were not generally perceived (even

by professionals) as a badge of fraud.").

 Plaintiffs fail to make any non-conclusory allegations showing that these red flags ever

led UBS to acquire actual knowledge of Madoff's scheme.  Indeed, Plaintiffs fail to plead with

particularity that UBS was even *aware* of many of the so-called red flags, alleging only

conclusorily that it knew that BLMIS's purported trade volumes were implausibly high, account

statements sometimes showed trades "outside of the daily price range," reported trades did not cause displacements or liquidity disruptions in the market, and trade confirmations did not conform with industry standards. *Hill* ¶¶ 6, 120; *OSUS* ¶ 246. The allegations amount to only a suggestion that UBS "should have known" of Madoff's fraud, a level of pleading that plainly falls short of alleging actual knowledge. *See Rosner II*, 349 F. App'x at 639 ("Even if [defendant] had reason to suspect that [a fraudster] was laundering money, this does not mean that [defendant] had actual knowledge of the fraudulent scheme."); *see also In re Tremont*, 703 F. Supp. 2d at 370-71 (dismissing claim against auditors of a Madoff feeder fund as merely alleging that the auditors had access to information by which they could have discovered the fraud). This Court should similarly reject Plaintiffs' attempt to plead actual knowledge by reference to "red flags." *See Rosner I*, 2008 WL 5416380, at *6 ("New York courts overwhelmingly recognize that a plaintiff does not satisfy Rule 9(b) by alleging a bank's actual knowledge of a fraud based on allegations of the bank's suspicions or ignorance of obvious 'red flags' or warning signs indicating the fraud's existence."); *Chemtex, LLC v. St. Anthony Enters., Inc.,* 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("New York courts have routinely held that when a defendant is under no independent duty, even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'"); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 98-cv-4960 (MBM), 1999 WL 558141, at *1-2, 7-8 (S.D.N.Y. July 30, 1999) (bank's knowing or reckless disregard of several red flags of fraud did not amount to bank having actual knowledge of the fraudulent scheme).[14]

---

[14]   Plaintiffs also rely on a 2006 SEC document inquiry to plead that UBS was "alerted" to significant concerns with Madoff's purported trading activity. *Hill* ¶ 52; *OSUS* ¶ 99. The SEC's document request was sent to a U.S. subsidiary of UBS, a separate legal entity from the defendants sued here. The Complaints do not allege that the U.S. affiliate ever notified the European affiliates of the SEC request. Moreover, the SEC ultimately decided to not

### b.   UBS's Avoidance of Madoff and Related Investments Is Not Sufficient to Show Actual Knowledge

Instead of alleging particularized facts showing actual knowledge, Plaintiffs focus on UBS's caution in investing with Madoff and out-of-context email excerpts from UBS employees. However, the allegations show, at most, that UBS "did not receive the required levels of comfort" to invest with Madoff funds, not any actual awareness of Madoff's wrongdoing. *Hill* ¶ 33; *OSUS* ¶ 82.

First, the Complaints point to several instances where UBS avoided distributing or investing in Madoff funds in 2001, 2002, and between September 2007 and December 2008. *Hill* ¶¶ 31-32, 34-35; *OSUS* ¶¶ 80-81, 83-84. But other than mere conjecture, Plaintiffs provide no connection between UBS's reluctance and any knowledge of the Ponzi scheme. *See Krys*, 749 F.3d at 132-33 ("[C]oncerns about the propriety" of transactions, which led defendant "to decline to participate in more than two … are inadequate to create an inference that [defendant] had knowledge of actual wrongdoing…. [A] company's refusal to enter into proffered 'transactions on the basis that they were potential vehicles for fraud' is not a 'factual basis for the assertion that [company] officials actually knew that the fraud was, in fact, occurring.'") (internal alteration omitted) (quoting *Lerner*, 459 F.3d at 293).

Second, the statements made by UBS employees taken in context only show the discussion of rumors and generalized concerns regarding Madoff, mostly concerning his lack of

---

seek verification of Madoff's trade with the European UBS counterparties. *See* SEC OIG Report, August 30, 2009, at 335-37, *available at* http://www.sec.gov/news/studies/2009/oig-509.pdf. Accordingly, this allegation fails to make the link between a purported red flag and actual knowledge, even assuming that the mere receipt of a document inquiry would constitute actual knowledge of the Ponzi scheme – which it plainly would not.

transparency, not actual knowledge or a strong inference of knowledge of the Ponzi scheme.[15]

Nonetheless, "[v]ague suspicions are far removed from reckless disregard, let alone actual

knowledge." *Refco II*, 2012 WL 3126834, at *3; *see also In re Agape*, 773 F. Supp. 2d at 310,

318; *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 390 (S.D.N.Y. 2007) (while

patterns of bank transfers and withdrawals and low account balances were suggestive of fraud,

such behavior "at most would indicate only constructive knowledge of a fraudulent scheme, and

are insufficient to support an allegation that [a bank] had actual knowledge of an underlying

fraud"); *Ryan v. Hunton & Williams*, 99-cv-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept.

20, 2000) (bank's "suspicions" of fraud based on account activity and analysis by the bank's in-

house fraud investigators did "not raise an inference of actual knowledge"); *Albion Alliance*

*Mezzanine Fund, L.P. v. State St. Bank & Trust Co.*, 8 Misc. 3d 264, 273, 797 N.Y.S.2d 699, 707

(Sup. Ct. N.Y. County 2003) ("highly suspicious" inaccuracies in account information were not

actual knowledge of fraud as "such suspicions cannot be equated with actual knowledge"), *aff'd*,

2 A.D.3d 162, 767 N.Y.S.2d 619 (1st Dep't 2003).

---

[15]  *See, e.g.*, *Hill* ¶¶ 34 ("[T]he fund seems to do very well, but *there are voices in the industry* warning because generating such consistent returns with such a strategy is more or less impossible…. [N]o one in their firm has properly explained their strategy to match the return profile to us, so we avoid stuff like that." (emphasis added)), 40 ("*Everything is probably fine*, but there are a number of things that are odd or different than the norm…. *Could be ok*, but there is more risk due to the lack of transparency on this one than in many other funds. Some folks think [M]adoff could be one of the most successful schemes ever, I think it would be hard to do anything on them without more transparency than they have historically been willing to provide." (emphasis added)), 46 ("[I]f Madoff were to run the strategy totally independently from his [broker/dealer business], it would be impossible to generate the returns that he has produced since 1990…. [T]he simple fact that *an investor has to start considering how the fund and the [broker/dealer] benefit one another* is a non-starter in our mind." (emphasis added)), 47 ("UBS view would steer on the negative side given the great need for transparency…. *not because of anything against the strategy or Madoff himself*, but because of the size, the lack of transparency, [and] the lack of capcity [*sic*]." (emphasis added) (alteration in original)), 48 ("We normally have to give "NO" as the answer in cases like Madoff…. Such a NO is easy to comprehend for both business policy reasons and risk reasons."); *OSUS* ¶¶ 83, 88, 94, 95, 96.

For example, the Complaints describe emails, one in March 2004 and another in October 2007, in which UBS employees discuss their unease with Madoff's lack of transparency, not knowledge on the part of UBS of any fraud. *Hill* ¶¶ 40, 46; *OSUS* ¶¶ 88, 94. The March 2004 email raises previously noted red flags, such as "[i]f Madoff were to run [his] strategy totally independently from his [broker/dealer business], it would be impossible to generate the returns that he has produced since 1990." *Hill* ¶ 46; *OSUS* ¶ 94. Likewise, the October 2007 email identifies certain "things that are odd or different than the norm," but the writer also believed that "[e]verything is probably fine" with Madoff. *Hill* ¶ 40, *OSUS* ¶ 88. Neither of the emails shows awareness of the Ponzi scheme or even conjecture as to whether Madoff's "scheme" was lawful or unlawful. Moreover, these two emails illustrate that whatever questions UBS had in 2004 about Madoff remained unanswered in 2007. These emails, as with the rest of Plaintiffs' allegations, do not show actual knowledge.

Plaintiffs contend that the quoted emails are indicative of knowledge, but the Complaints themselves explain UBS's hesitation: UBS wanted "more transparency" than Madoff was willing to provide. *See Hill* ¶¶ 30, 37, 39-40; *OSUS* ¶¶ 79, 85, 87-88. As the Complaints note, not only did UBS "not have enough information on Madoff" to be "comfortable" with Madoff's purported strategy, but Madoff also "continuously thwarted" UBS's efforts to obtain information regarding Madoff's system, all of which led to UBS's decision not to offer Madoff feeder funds to UBS customers or to invest with BLMIS. *Hill* ¶¶ 36-37, 39, 41; *OSUS* ¶¶ 85, 87, 89. It is undeniable that Madoff was adept at concealing his Ponzi scheme. *See Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 641 (2d Cir. July 10, 2012) (summary order) ("[T]he more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC and other financial professionals.")

(internal quotation marks and citation omitted).  Yet Plaintiffs turn this fact on its head by alleging that UBS was able to learn of Madoff's fraud through Madoff's proficient efforts in preventing UBS from gaining information about his practices, an assertion that defies logic.

In the same way, the Complaints' allegations about insurance policies and indemnification agreements entered into by UBS fail to demonstrate actual knowledge.  *See Hill* ¶¶ 51, 67-75; *OSUS* ¶¶ 98, 115-23.  There is no indication that such policies or agreements, or even UBS's involvement as a "figure head," were outside the realm of normal business practices, and they are more than plausibly explained by generalized concerns about risk exposure.  *See, e.g.*, *Krys*, 749 F.3d at 132 (defendant's demand that some of its loans be guaranteed did not demonstrate conscious avoidance or knowledge that financial services firm was insolvent). Certainly, there is no particularized factual allegation indicating that UBS sought out risk protection because of actual knowledge of Madoff's fraud.

### c.  Plaintiffs Do Not Adequately Plead Conscious Avoidance

Under certain circumstances, some courts have found that allegations of conscious avoidance can meet the actual knowledge requirement in aiding and abetting claims, *see Krys*, 749 F.3d at 131 ("[I]t is unclear whether a claim of aiding and abetting under New York law is sustainable on a basis not of actual knowledge but of conscious avoidance of knowledge"), but, in any event, Plaintiffs have also failed to meet that standard.  The difference between "actual knowledge" and "conscious avoidance" is a "narrow one."  *Refco II*, 2012 WL 3126834, at *1. Conscious avoidance occurs when a "defendant was aware of a high probability of the [relevant] fact … and consciously avoided confirming that fact."  *Krys*, 749 F.3d at 132 (internal quotation marks and citation omitted).  This standard is not satisfied merely by alleging constructive knowledge; the knowledge of the fraud must be above and beyond being on notice to exercise reasonable care.  *Refco II*, 2012 WL 3126834, at *1.  "Conscious avoidance therefore involves a

35

culpable state of mind." *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 517 (S.D.N.Y. 2011)

(Rakoff, J.) (citation omitted).

None of Plaintiffs' factual allegations shows that UBS had any degree of certainty that

Madoff was running a Ponzi scheme—indeed, none even mentions the possibility of a Ponzi

scheme.[16]  Plaintiffs' own pleadings demonstrate UBS's lack of certainty and the opacity of

Madoff's activities.  In October 2007, when asked about Madoff, a UBS employee noted that "it

would be hard to do anything on them without more transparency."  *Hill* ¶ 40; *OSUS* ¶ 88.  The

Complaints allege that UBS "did not have enough information" on Madoff, *Hill* ¶ 41; *OSUS*

¶ 89, indicating a level of certainty that is well short of the "high probability" required for

conscious avoidance.  Moreover, as previously noted, UBS repeatedly sought to conduct due

diligence on BLMIS, including as late as September 2008.  *Hill* ¶¶ 39-40; *OSUS* ¶¶ 87-88.  Such

allegations show an active effort to obtain more information, not deliberate avoidance.

Accordingly, Plaintiffs have failed to adequately plead actual knowledge in accordance

with the heightened pleading standards of Rule 9(b), and Plaintiffs' aiding and abetting claims

must be dismissed.

## 2.   Plaintiffs Fail to Plead Substantial Assistance

The substantial assistance element "generally exists where: (1) a defendant 'affirmatively

assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to

proceed'; and (2) 'the actions of the aider/abettor proximately caused the harm on which the

---

[16]  One UBS employee allegedly reported that "[s]ome folks think [M]adoff could be one of the most successful schemes ever," *Hill* ¶ 40; *OSUS* ¶ 88, but it is clear from the context of that comment that "scheme" was used in a neutral and not pejorative sense, because the employee immediately contrasted what "some folks" think with his more negative view—*i.e.*, that "it would be hard to do anything on them without more transparency."  *Id.*

primary liability is predicated.'"  *Rosner I*, 2008 WL 5416380, at *5 (quoting *Cromer Fin. Ltd. v. Berger,* 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)).

Proximate causation exists only if the defendants' acts were a "substantial factor in the sequence of responsible causation, and plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence." *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 359 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); *see also Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 63 (2d Cir. 1985) ("[A]ider and abettor liability would not attach where the injury was not a direct or reasonably foreseeable result of the conduct.").  Pleading "'[b]ut-for' causation is insufficient." *Cromer*, 137 F. Supp. 2d at 470.

Proximate cause has not been adequately pled here.  The Complaints merely plead that the injuries to Plaintiffs were a "result" of UBS's conduct.  But neither *OSUS* nor *Hill* makes any particularized allegations showing that Plaintiffs' injuries were a "direct or reasonably foreseeable result" of UBS's conduct or that UBS's involvement with the feeder funds or its alleged provision of a "façade of legitimacy" was a "substantial factor in the sequence of causation" for Plaintiffs' investments with BLMIS.  Indeed, the injuries to Plaintiffs, *customers of BLMIS*, cannot be said to have been reasonably foreseeable by UBS.  "The purpose of the proximate cause requirement is to fix a legal limit on a person's responsibility." *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 215 (2d Cir. 2000)  Attaching liability to UBS from injuries to the Plaintiffs here would suggest that any provider of services to a Madoff feeder fund could be deemed to have proximately caused injuries to any investor in the Ponzi scheme—no matter how remote the injured parties' relationship was with the service provider and no matter whether the investor even knew of the service provider's involvement—merely because the

37

service provider did not discover and disclose the fraud.  This would impermissibly stretch the bounds of proximate causation.

Furthermore, apparently recognizing their inability to plead proximate causation of their injuries, Plaintiffs allege only that UBS's conduct was a proximate cause of Madoff's *tort*, and not the *harm* Plaintiffs allegedly suffered.  *Hill* ¶¶ 110 ("The UBS Defendants' assistance was a proximate cause of the fraud."), 142 ("The Defendants' assistance was a proximate cause of the Ponzi/embezzlement scheme."), 156 ("The UBS Defendants' assistance was a proximate cause of the breach."), 169 ("The UBS Defendants' assistance was a proximate cause of the conversion."); *accord OSUS* ¶¶ 230; 238, 243.  *Hill* concedes that the individual plaintiffs "were not customers of [UBS]," but contends that "[UBS's] conduct enabled the Madoff scheme to continue, thereby harming Plaintiffs and the class."  *See Hill* ¶¶ 15, 16.  Mirroring *Hill*, *OSUS* also contends that UBS "enabled and perpetuated the Madoff fraud."  *OSUS* ¶¶ 114, 144. Neither Complaint explains how Plaintiffs' losses would have been avoided if UBS had declined to service Luxalpha and Groupement Financier, or even if it had publicly disclosed Madoff's wrongdoing—presumably, Madoff's Ponzi scheme would have collapsed, and Plaintiffs would have lost their investments and been in exactly the same position.  As the Second Circuit has held, there must be a nexus between the aider and abettor and the alleged fraud, and an aiding and abetting claim "is not made out simply by allegations which would be sufficient to state a claim against the principal participants in the fraud."  *Krys*, 749 F.3d at 128 (internal quotation marks and citation omitted).

The pleadings here are insufficient, as "but for" causation does not establish substantial assistance under New York law.  In *Edwards & Hanly v. Wells Fargo Securities Clearance*, 602 F.2d 478 (2d Cir. 1979), for example, plaintiffs brought an aiding and abetting claim where a

bank employee gave interest-free loans to finance and conceal the defrauder's scheme in which

he falsified stock purchases to cover short sales.  The Second Circuit rejected the district court's

finding that the employee aided and abetted on a "but for" theory of causation—that "but for" the

employee's assistance in the concealment of the fraudulent transaction and advancement of funds

the fraudster would not have been able to conceal his scheme.  602 F.2d at 484.  Instead, the

Court of Appeals found that the proximate cause of the plaintiff's loss was the defrauder's

deception of the plaintiff and plaintiff's failure to exercise due diligence regarding the fraudulent

transactions at issue.  *Id.* at 485.  Similarly, in *Cromer*, allegations that the clearing broker, Bear

Stearns, violated margin rules, failed to enforce margin rules, continued to execute trades despite

rule violations, and overextended margin credit to a fund that orchestrated a Ponzi scheme were

insufficient to allege proximate cause.  137 F. Supp. 2d at 471-72.  The court noted that "[w]hile

the Ponzi scheme may only have been possible because of Bear Stearns' actions, or inaction,

Bear Stearns' conduct was not a proximate cause of the Ponzi scheme."  *Id.* at 472 (footnote

omitted).[17]

Here, similarly, Plaintiffs fail to connect UBS's conduct to their losses beyond the

general allegation that, by facilitating investments through BLMIS by Luxalpha and Groupement

Financier, UBS enabled Madoff to continue the Ponzi scheme.  The law is clear that such

pleadings are insufficient to establish liability.  *See, e.g.*, *Bloor*, 754 F.2d at 61-63 (allegations of

injury from firm's assistance in statements that omitted or misrepresented information was only

---

[17]   For similar reasons, even assuming that the UBS Defendants violated some unspecified
Luxembourg law, *see Hill* ¶ 83; *OSUS* ¶ 132, that would not constitute substantial assistance.
*See Rosner I*, 2008 WL 5416380, at *14 ("[Plaintiff] contends that [Defendant] failed to
comply with domestic and international bank[ing] … laws, decrees and regulations.  As this
Court already stated in its previous opinion on this matter, even if true, such violations of law
do not elevate [Defendant's] actions into the realm of 'substantial assistance.'"); *Mazzaro de
Abreu*, 525 F. Supp. 2d at 391 ("A violation of a federal regulation … does not of itself
constitute substantial assistance.").

"but for" causation and lacked any causal relationship); *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983) (no proximate cause in aiding and abetting churning claim where there were no allegations that defendant's approval of trades was a prerequisite to the purchase or sale of stock); *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) (conventional banking transactions that made it easier for defrauder to effectuate Ponzi scheme were not the proximate cause of injuries); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007); *Miller v. Schweickart*, 413 F. Supp. 1062, 1067-68 (S.D.N.Y. 1976) (no proximate cause where alleged conduct was not an "essential part in bringing about [plaintiff's] damage").

All aiding and abetting claims should be dismissed for failure to plead this essential part of Plaintiffs' claims.

### 3.    Plaintiffs Fail to Plead Individual Fraud Claims

The aiding and abetting claims also fail because—difficult as it is to imagine—Plaintiffs have failed to adequately plead their primary fraud claim against Madoff.  A fraud claim must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *King Cnty. v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 338 (S.D.N.Y. 2010).  Rule 9(b) requires plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI*, 493 F.3d at 99.

Plaintiffs have not satisfied the basic requirements of Rule 9(b) with respect to their individual fraud claims.  They do not allege when or how much they invested with BLMIS, what statements were made to them, what statements they relied upon, why such reliance was reasonable, or how much money (if any) they lost when the fraud was revealed.  While alleging

generally that Madoff made false representations about his investment strategy and issued falsified account statements, *see Hill* ¶¶ 22-26; *OSUS* ¶¶ 33-42, Plaintiffs fail to provide any specificity about what was said to them, when, and by whom.  As for reliance, all the named *Hill* Plaintiffs plead is that they "incurred losses and/or damages as a result of the activities alleged." *Hill* ¶¶ 15, 16.  OSUS does not plead even that—its Complaint is devoid of allegations of any reliance or losses by its assignor.[18]

The *Hill* Plaintiffs lump all of Madoff's customers together as if they were one unitary plaintiff.  But *Hill* is not a fraud-on-the-market case where plaintiffs need not plead individual reliance.  *SIPC v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000) ("[F]ederal courts repeatedly have refused to apply the fraud on the market theory to state common law cases despite its wide acceptance in the federal securities fraud context.").  General allegations of reliance, even in a class action context, are insufficient for 9(b) standards.  *See In re Pfizer Inc. Secs. Litig.*, 584 F. Supp. 2d 621, 644 (S.D.N.Y. 2008) (dismissing common law fraud claim pled in putative class action where the plaintiffs "only included general allegations of direct reliance"); *Redtail Leasing, Inc. v. Bellezza*, 95-cv-5191 (JFK), 1997 WL 603496, at *7 (S.D.N.Y. Sept. 30, 1997) (dismissing common law fraud claim from class action: "Common law fraud claims must be supported by factual allegations demonstrating the plaintiff's actual, direct reliance on the misrepresentation or omission.").  Similarly, OSUS "must allege with particularity that it actually relied upon the supposed misstatements."  *In re Bear Stearns Co., Inc. Secs., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014) (dismissing

---

[18]  Furthermore, if Plaintiffs' allegations about "red flags" are credited, it is doubtful that any reliance would be reasonable (even if it had been pled), given that most of the alleged red flags were known or knowable to Plaintiffs as well.  *See Hill* ¶¶ 5-6 (consistency of returns; volumes exceeding entire daily volume traded on exchanges; prices out of range; BLMIS as custodian; BLMIS's failure to charge industry standard fees; unknown auditor; use of paper confirmations).

common law fraud claims where plaintiff did not plead reliance or actual purchases of defendants' securities).  Both Complaints lack the required particularity, a failure that warrants dismissal under Rule 9(b).  *See, e.g.*, *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 411 (S.D.N.Y. 2009) (Rakoff, J.) (allegations fail Rule 9(b) where complaint "only broadly describes the alleged misrepresentations and omissions in question, … fails to specify in any concrete terms when plaintiffs learned of the alleged fraud …. [and] failed to allege any facts creating an inference of fraudulent intent").[19]

## C.    *Hill* Fails to Sufficiently Plead Unjust Enrichment

Count III of *Hill* is a cause of action for unjust enrichment, and seeks to recover fees received by UBS in its service of the feeder funds as well as the (alleged) receipt of stolen money from BLMIS.  *Hill* ¶¶ 127-28.  To plead unjust enrichment, plaintiffs must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110, 919 N.Y.S.2d 465, 471

---

[19]   Plaintiffs' failure to plead injury with particularity also dooms their claims for aiding and abetting breach of fiduciary duty and aiding and abetting conversion.  *See, e.g.*, *Sotheby's, Inc. v. Minor*, 08-cv-7694 (BSJ) (HBP), 2009 WL 3444887, at *7 (S.D.N.Y. Oct. 26, 2009) (breach of fiduciary duty claim failed because it did not plead injury with particularity as required by Rule 9(b)).

Aiding and abetting embezzlement, Count Four in *Hill*, does not exist as a civil claim under New York law.  Embezzlement is a criminal offense known as "larceny" and "criminal offenses … which are specifically defined in the Penal Law may not be pleaded as separate causes of action in a civil action."  *Montalvo v. J.P. Morgan Chase & Co.*, 25 Misc. 3d 1244(A), 906 N.Y.S.2d 781 (Table), 2009 WL 4893939, at *6 (Sup. Ct. Kings County Dec. 18, 2009); *see also* N.Y. Penal Law § 155.05 (defining larceny to include, *inter alia*, "conduct heretofore … known as common law … embezzlement").  Although older cases have occasionally examined civil embezzlement/larceny claims, courts in New York now dismiss civil claims for larceny and aiding and abetting larceny.  *See Montalvo*, 2009 WL 4893939, at *6; *Cohain D.D.S. v. Klimley*, 08-cv-5047 (PGG), 09-cv-4527 (PGG), 2011 WL 3896095, at *4 (S.D.N.Y. Aug. 31, 2011).

(2011) (internal quotation marks and citation omitted); *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 509 (2d Cir. 2009). Plaintiffs must also allege the existence, between the plaintiffs and defendant, of "some type of direct dealings or an actual, substantive relationship." *Carmona v. Spanish Broad. Sys., Inc.*, 08-cv-4475 (LAK), 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009); *accord, e.g.*, *Jet Star Enters., Ltd. v. Soros*, 05-cv-6585 (HB), 2006 WL 2270375, at *5 (S.D.N.Y. Aug. 9, 2006); *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16, 868 N.E.2d 1012, 1018, 831 N.Y.S.2d 760, 766 (2007) (affirming dismissal of unjust enrichment claim on the ground that the connection between plaintiff tire purchasers and defendant rubber chemical manufacturers was too attenuated).

*Hill* fails to plead unjust enrichment. It alleges no direct dealings or actual, substantive relationships between UBS and the *Hill* Plaintiffs—and in fact concedes that no such relationship existed. *See Hill* ¶¶ 15-16 (Plaintiffs "were not customers of the UBS Defendants"). "[A] nexus is required between a defendant's 'enrichment' and a plaintiff's 'expense.'" *DeBlasio v. Merrill Lynch & Co.*, 07-cv-318 (RJS), 2009 WL 2242605, at *40 (S.D.N.Y. July 27, 2009). Here, the absence of any nexus is fatal to Plaintiffs' claim. *See Czech Beer Imps., Inc. v. C. Haven Imps., LLC*, 04-cv-2270 (RCC), 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005) (dismissing unjust enrichment claim for failure to allege relationship between plaintiff and defendant); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) (same); *Georgia Malone & Co. v. Rieder*, 86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 497 (1st Dep't 2011) (unjust enrichment "will not be supported unless there is a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part").

Moreover, receiving fees for UBS's role in the feeder funds does not show unjust enrichment because "a party who provides consideration for [a] benefit is not enriched." *First*

43

*Union Nat'l Bank v. A.G. Edwards & Sons*, Index No. 601243/98, slip op. at 6-7 (Sup. Ct. N.Y. County Jan. 5, 1999), *aff'd*, 262 A.D.2d 106, 691 N.Y.S.2d 491 (1st Dep't 1999), Ex. 6; *see also Am. Int'l Life Assur. Co. of New York v. Kandros*, 254 A.D.2d 34, 34, 678 N.Y.S.2d 20, 21 (1st Dep't 1998) ("[R]eceipt of proceeds by [Defendant] did not constitute unjust enrichment since he had paid actual consideration for the [benefit].").

As a result of these failures in *Hill*, and the *Hill* Complaint's lack of particularized allegations necessary to satisfy the Rule 9(b) standards, dismissal is warranted. *See, e.g.*, *DeBlasio*, 2009 WL 2242605, at \*9 (applying Rule 9(b) to unjust enrichment claim).

## IV.
## ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY <br> THE APPLICABLE STATUTES OF LIMITATIONS

The Actions were brought on, or a day before, the six-year anniversary of Bernard Madoff's arrest on December 11, 2008.  Although New York has a generous six-year statute of limitations for claims based on fraud, all of Plaintiffs' claims accrued prior to Madoff's arrest because Plaintiffs fail to allege any acts in furtherance of their alleged claims after November 2008.  Certain of Plaintiffs' claims have a three-year statute of limitations, and are also time-barred.  Moreover, two of the *Hill* Plaintiffs reside in California and thus, under the New York borrowing statute, are subject to California's three-year statute of limitations for actions that sound in fraud.

Because all of their causes of action accrued more than six years prior to the filing of the Complaints, all of Plaintiffs' claims should be dismissed as time-barred.

### A.     The New York Limitations Period for All of Plaintiffs' Claims Expired Before the Complaints Were Filed

A tort accrues "when the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 612

N.E.2d 289, 292, 595 N.Y.S.2d 931, 934 (1993) (citation omitted).  Thus, aiding and abetting

claims accrue when all elements, including the underlying tort, can be alleged.

> 1. **The Six-Year Statutes of Limitations for Aiding and Abetting Fraud, Aiding and Abetting Breach of Fiduciary Duty, and Knowing Participation in a Breach of Trust Bar These Claims**

CPLR 213(8) sets the limitations period for an action based on fraud as "the greater of six

years from the date the cause of action accrued or two years from the time the plaintiff or the

person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence

have discovered it."  N.Y. C.P.L.R. 213(8).  New York courts apply the same statute of

limitations to claims for aiding and abetting fraud and aiding and abetting breach of fiduciary

duty where the claims, as here, are based on fraud.  *See Kottler v. Deutsche Bank AG*, 607 F.

Supp. 2d 447, 459 (S.D.N.Y. 2009) (applying six-year statute of limitations to aiding and

abetting fraud claim); *Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ireland) Ltd.*, 10-cv-8660

(PAC), 2011 WL 4916407, at *4 (S.D.N.Y. Oct. 17, 2011) (same); *IDT Corp. v. Morgan Stanley

Dean Witter & Co.*, 12 N.Y.3d 132, 139, 907 N.E.2d 268, 272, 879 N.Y.S.2d 355, 359 (2009)

("[W]here an allegation of fraud is essential to a breach of fiduciary duty claim, courts have

applied a six-year statute of limitations under CPLR 213(8).").[20]

Courts in this district generally adopt the date of the misrepresentation or omission by a

defrauder or reliance on such a misrepresentation or omission by a plaintiff as the date on which

fraud-based claims accrue.  *See, e.g.*, *In re Bear Stearns*, 995 F. Supp. 2d at 310 (common law

---

[20]  If the claims for aiding and abetting breach of fiduciary duty did not sound in fraud, they would be subject to a three-year statute of limitations.  *IDT Corp.*, 12 N.Y.3d at 139, 907 N.E.2d at 272, 879 N.Y.S.2d at 359 ("Where the remedy sought is purely monetary in nature [for a breach of fiduciary duty claim], courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214(4), which has a three-year limitations period.").  As discussed above, *see supra* note 12, knowing participation in a breach of trust is treated the same as aiding and abetting breach of fiduciary duty.

fraud claim against auditor for false statements in audit accrued on date audit was issued);

*Hoffenberg v. Hoffman & Pollok*, 288 F. Supp. 2d 527, 535 (S.D.N.Y. 2003) (finding that a

claim regarding fraudulent legal bills accrued on the date of the fraudulent charge).  Similarly,

"[a] cause of action for breach of fiduciary duty accrues when the breach occurs."  *Quinn v. Teti*,

234 F.3d 1262, 2000 WL 1616806, at *3 (2d Cir. Oct. 27, 2000) (summary order); *accord*

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 452 (S.D.N.Y.

1998) (statute of limitations began to run for intentional interference with fiduciary duties claim

when parties were bribed).[21]

As previously noted, Plaintiffs have neglected to make particularized pleadings as to

when Madoff made misrepresentations or omissions to Plaintiffs, when the individual Plaintiffs

relied on such statements, when Madoff breached his fiduciary duties, or when the injury to

Plaintiffs occurred.  The latest-in-date allegation that could be construed as relevant to an

element of aiding and abetting or an underlying tort is Luxalpha's confirmation of UBS AG as its

sponsor in its prospectuses—in November 2008.  *Hill* ¶ 53; *OSUS* ¶ 101.  The Complaints do not

allege any acts in furtherance of the alleged fraudulent scheme by Madoff or UBS after

---

[21]  In some circumstances, the statute of limitations on claims against a fiduciary for breach of
its duty is tolled until such time as the fiduciary openly repudiates the role.  *See, e.g., Access
Point Med., LLC v. Mandell*, 106 A.D.3d 40, 44-45, 963 N.Y.S.2d 44, 47 (1st Dep't 2013)
(citing *Matter of Barabash*, 31 N.Y.2d 76, 80, 286 N.E.2d 268, 270, 334 N.Y.S.2d 890, 893
(1972)); *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 518 (2d Cir. 2001).  This tolling rule
exists because "the beneficiary should be entitled to rely upon a fiduciary's skill without the
necessity of interrupting a continuous relationship of trust and confidence by instituting
suit."  *Golden Pac. Bancorp*, 273 F.3d at 519.  However, no fiduciary relationship exists here
between Plaintiffs and UBS, and tolling under the repudiation doctrine does not apply to such
aiding and abetting breach of fiduciary duty claims.  *See Rizer v. Breen*, No. 601676/05, 2007
WL 7598165 (Sup. Ct. N.Y. County Feb. 1, 2007) (repudiation doctrine does not apply to
aiding and abetting breach of fiduciary duty claim where no fiduciary relationship existed
between the parties); *cf. St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 172
(E.D.N.Y. 2010) (applying repudiation doctrine to aiding and abetting breach of fiduciary
duty claim where defendant graduate student had relationship with plaintiff university).

November 2008,[22] and therefore a six-year limitations period here would have ended no later than November 2014.

New York courts adhere strictly to legislatively-imposed limitations periods and routinely dismiss claims outside of the period as time-barred.  *See, e.g.*, *Davis v. Cornerstone Tel. Co.*, 61 A.D.3d 1315, 1316-17, 878 N.Y.S.2d 800, 802 (3d Dep't 2009).  Plaintiffs filed their claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and knowing participation in a breach of trust after the expiration of the limitations period.  Accordingly, these claims should be dismissed.

2.   **The Aiding and Abetting Conversion, Aiding and Abetting Embezzlement, and Unjust Enrichment Claims Are Subject to Three-Year Limitations Periods**

Since Plaintiffs seek monetary, and not equitable, relief, each of the remaining three claims—aiding and abetting conversion in both Complaints and aiding and abetting embezzlement and unjust enrichment in the *Hill* Action—is subject to a three-year statute of limitations.  N.Y. C.P.L.R. 214(3); *In re Rausman*, 50 A.D.3d 909, 910, 855 N.Y.S.2d 263, 264 (2d Dep't 2008) ("CPLR 214(3) provides a three-year statute of limitations for actions for conversion, which normally runs from the date the conversion allegedly took place." (internal quotation marks and citation omitted)); *Midwest Mem'l Grp., LLC*, 2011 WL 4916407, at *3 (applying three-year limitations period for aiding and abetting conversion claim based on fraud); *Chan v. Mui*, No. 92-cv-8258 (MBM), 1993 WL 427114, at *5 (S.D.N.Y. Oct. 20, 1993) (in a case decided before New York ceased recognition of civil embezzlement, applying three-year limitations period for embezzlement claim where plaintiff alleges that defendants fraudulently

---

[22]   *OSUS* does allege that "[i]n early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts."  *OSUS* ¶ 42.  However, OSUS does not allege that it received any such statements or that the statement is in any way relevant to its claims.

induced him to invest in defendants' corporation); *Prichard v. 164 Ludlow Corp.*, 14 Misc. 3d 1202(A), 831 N.Y.S.2d 362 (Table), 2006 WL 3626306, at *9-10 (Sup. Ct. N.Y. County 2006) (applying three-year statute of limitations for claim of embezzlement), *aff'd*, 49 A.D.3d 408, 854 N.Y.S.2d 53 (1st Dep't 2008); *Ingrami v. Rovner*, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132, 134 (2d Dep't 2007) ("[T]he three-year statute of limitations of CPLR 214(3) governs [the unjust enrichment claim], since the plaintiff is seeking monetary, as opposed to equitable, relief." (citations omitted)); *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, No. 13-cv-6062 (WHP), 2014 WL 4058070, at *12 (S.D.N.Y. Aug. 14, 2014) ("New York's statute of limitations for unjust enrichment claims is three years where a plaintiff seeks monetary relief ....").

As noted above, aiding and abetting claims accrue when all elements of the claim can be alleged, or "when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." *State of N.Y. v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 774 N.E.2d 702, 710, 46 N.Y.S.2d 637, 645 (2002) (discussing conversion claim) (internal quotation marks and citation omitted); *see also Chan*, 1993 WL 427114, at *4 (embezzlement claim accrued when alleged wrongdoing occurred). The statute of limitations for unjust enrichment claims "begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution." *Ingrami*, 45 A.D.3d at 808, 847 N.Y.S.2d at 134.

All of Madoff's alleged fraudulent acts and UBS's acts allegedly aiding and abetting his fraud occurred by no later than December 2008. Consequently, Plaintiffs' claims for aiding and abetting conversion, aiding and abetting embezzlement, and unjust enrichment had to have accrued by December 2008. If Plaintiffs ever had causes of action for these claims, they all expired in 2011, three years before the commencement of the Actions. These claims are therefore time-barred and should be dismissed.

**B.      New York's Borrowing Statute Bars Two Individual *Hill* Plaintiffs' Claims**

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998).  "When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528, 715 N.E.2d 482, 484, 693 N.Y.S.2d 479, 481 (1999).  A cause of action accrues in the place of the injury, and for purely economic injuries, the place of injury is "where the plaintiff resides and sustains the economic impact of the loss."  *Id.* at 529, 715 N.E.2d at 485, 693 N.Y.S.2d at 482; *accord Norex Petroleum Ltd. v. Blavatnik*, 23 N.Y.3d 665, 673, 16 N.E.3d 561, 567, 992 N.Y.S.2d 503, 509 (2014).

Two of the named *Hill* Plaintiffs, Stephen and Leyla Hill, reside in California.  *Hill* ¶ 15.  There are no allegations that any of the injuries to the Hills, all of which are purely economic, were sustained anywhere outside of California.  Accordingly, the Hills must satisfy both the New York and California statutes of limitations for their claims.

California law provides that "[t]he statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort."  *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 171 Cal. Rptr. 3d 548, 570 (Cal. Ct. App.), *modified by*, 2014 Cal. App. LEXIS 460 (Cal. Ct. App. May 27, 2014).  California sets a three-year limitations period for claims "on the ground of fraud or mistake."  Cal. Civ. Proc. Code § 338(d); *accord River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1220 (S.D. Cal. 2003) ("The statute of limitations for claims for fraud, … aiding and abetting fraud, and conversion is three years.").  This three-year period applies to claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and unjust enrichment claims

that sound in fraud.  *See id.*; *Fuller v. First Franklin Fin. Corp.*, 163 Cal. Rptr. 3d 44, 50 (Cal.

Ct. App. 2013) ("The limitations period is three years for a cause of action … for breach of

fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year

limitations period that would otherwise apply.") (citations omitted), *modified on denial of reh'g

by*, 2013 Cal. App. LEXIS 500 (Cal. Ct. App. June 24, 2013); *FDIC v. Dintino*, 84 Cal. Rptr. 3d

38, 50 (Cal. Ct. App. 2008) (Section 338 statute of limitations period applies to unjust

enrichment claims based on fraud or mistake).[23]

Under California law, the limitations periods for these claims accrue upon discovery of

the fraud by the aggrieved party.  Cal. Civ. Proc. Code § 338(d); *Sun 'n Sand, Inc. v. United Cal.

Bank*, 582 P.2d 920, 941 (Cal. 1978); *Daly v. Pearl Spirits, Inc.*, 438 F. App'x 644, 645 (9th Cir.

June 21, 2011) ("[W]here there has been fraudulent concealment of the conversion, the

limitations period begins to run when the aggrieved party discovers or ought to have discovered

the existence of the cause of action for conversion." (internal quotation marks and citation

omitted)).  Here, Madoff's crimes were revealed in December 2008, nearly a full six years before

the filing of the *Hill* Complaint.  Under the California statute of limitations, applicable through

the New York borrowing statute, the Hills' claims would have expired in November 2011—three

years before the *Hill* Complaint was filed.  Thus, the Court should dismiss the Hills' claims as

time-barred.

---

[23] California does not recognize causes of action for knowing participation of a breach of trust or civil embezzlement.  *See Mohebbi v. Khazen*, 13-cv-03044 (BLF), 2014 WL 2861146, at *16 (N.D. Cal. June 23, 2014) ("Under California law, embezzlement is a criminal act…. [T]here is no civil claim for embezzlement under California law." (internal citations omitted)).  As these claims are predicated on fraud, California's three-year statute of limitations would also apply to these claims.

**V.**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Complaint in each of the Actions should be dismissed with

prejudice.


Dated:   New York, New York
         February 27, 2015

                                             GIBSON, DUNN & CRUTCHER LLP


                                             By: /s/  *Marshall R. King*
                                                Marshall R. King
                                                mking@gibsondunn.com
                                                Gabriel Herrmann
                                                gherrmann@gibsondunn.com
                                                Zern-shun Chen
                                                achen@gibsondunn.com

                                             GIBSON, DUNN & CRUTCHER LLP
                                             200 Park Avenue
                                             New York, NY  10166-0193
                                             Telephone:  (212) 351-4000

                                             *Attorneys for Defendants UBS AG, UBS*
                                             *(Luxembourg) S.A., UBS Fund Services*
                                             *(Luxembourg) S.A., and UBS Third Party*
                                             *Management Company S.A.*