```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SPV OSUS LTD.,                      :
                                    :     15-cv-619 (JSR)
     Plaintiff,                     :
                                    :     MEMORANDUM
          -v-                       :
                                    :
UBS AG, UBS (LUXEMBOURG) S.A.,      :
UBS FUND SERVICES (LUXEMBOURG) S.A.,:
UBS THIRD PARTY MANAGEMENT          :
COMPANY S.A., AIA LLC, ACCESS       :
INTERNATIONAL ADVISORS EUROPE       :
LIMITED, ACCESS INTERNATIONAL       :
ADVISORS LTD., ACCESS PARTNERS      :
(SUISSE) S.A., ACCESS MANAGEMENT    :
LUXEMBOURG S.A., ACCESS PARTNERS    :
S.A. (LUXEMBOURG), PATRICK LITTAYE, :
CLAUDINE MAGON DE LA VILLEHUCHET    :
A/K/A CLAUDINE DE LA VILLEHUCHET,   :
EXECUTRIX, CLAUDINE MAGON DE LA     :
VILLEHUCHET A/K/A CLAUDINE DE LA    :
VILLEHUCHET,INDIVIDUALLY, PIERRE    :
DELANDMETER, AND THEODORE DUMBAULD, :
                                    :
     Defendants.                    :
------------------------------------X
```

JED S. RAKOFF, U.S.D.J.

Plaintiff SPV OSUS Ltd. ("SPV"), a Bahamian corporation, alleges that it is the assignee of Optimal Strategic US Equity Ltd., an investment fund that invested assets with Bernard L. Madoff Investment Securities, LLC ("BLMIS"), the now-bankrupt investment advisory firm through which its founder, Bernard Madoff, perpetrated the largest Ponzi scheme in history. SPV brings this action against defendants — UBS AG ("UBS") and affiliated entities (collectively, the "UBS Defendants"), and

1

AIA LLC and affiliated entities and individuals (the "Access Defendants") — asserting state law claims for aiding and abetting fraud, breach of fiduciary duty, conversion, and knowing participation in a breach of trust. Plaintiff alleges that defendants facilitated Madoff's fraud by funneling billions of dollars from European investors to BLMIS through the international feeder funds Luxalpha SICAV ("Luxalpha") and Groupement Financier Ltd. ("Groupement Financier").

SPV filed the present action in the Supreme Court of New York, County of New York on December 11, 2015. On January 28, 2015, the UBS Defendants removed to federal court pursuant to 28 U.S.C §§ 1334 and 1452. The Court accepted the action as related to Hill v. UBS AG, No. 14 Civ. 9744 (S.D.N.Y. filed Dec. 10, 2014) (the "Hill Action"), a putative class action alleging substantially similar facts and legal claims. On February 25, 2015, SPV moved to remand this action to state court, and, by "bottom line" Order dated March 27, 2015, the Court denied that motion. This Memorandum explains the reasons for that ruling.

The pertinent factual background is as follows. After an involuntary chapter 7 petition was filed against Madoff, see In re Bernard L. Madoff, No. 09-11893 (Bankr. S.D.N.Y. filed Apr. 13, 2009), the United States Bankruptcy Court for the Southern District of New York consolidated the Madoff estate with the previously established BLMIS bankruptcy estate, in which a

2

bankruptcy proceeding against BLMIS had been filed under the Securities Investor Protection Act (the "SIPA Action"). See Declaration of Marshall R. King ("King Decl.") dated Mar. 17, 2015, ECF Dkt. No. 35, Ex. 1. Madoff himself is not a party to this action and is protected from suit by the ongoing bankruptcy proceeding against the bankrupt estate.

SPV alleges that the UBS Defendants and Access Defendants helped to create, promote, and manage Luxalpha and Groupement Financier, which together fed over $2 billion into BLMIS. Compl. ¶¶ 49-57, 63-66. They did this, it alleges, despite being aware of numerous red flags involving Madoff and BLMIS. Id. ¶¶ 75-99, 181-223.

SPV further alleges that the UBS Defendants provided a façade of legitimacy to the two feeder funds but failed to exercise any genuine oversight, instead delegating their management and custodial duties to BLMIS. Id. ¶¶ 101-69. Similarly, SPV alleges that the Access Defendants falsely represented that they had in place extensive due diligence and oversight processes and that they knew of, but failed to disclose to investors, the clear signs of BLMIS's fraud, such as its implausible trading volume, suspiciously consistent returns, and lack of transparency. Id. ¶¶ 170-224.

On the basis of these allegations, SPV asserts eight causes of action: (1) aiding and abetting fraud (against the UBS

Defendants); (2) aiding and abetting breach of fiduciary duty (against the UBS Defendants); (3) aiding and abetting conversion (against the UBS Defendants); (4) knowing participation in a breach of trust (against the UBS Defendants); (5) aiding and abetting fraud (against the Access Defendants); (6) aiding and abetting breach of fiduciary duty (against the Access Defendants); (7) aiding and abetting conversion (against the Access Defendants); and (8) knowing participation in a breach of trust (against the Access Defendants).

Against this background, the Court turns to plaintiff SPV's motion to remand. The UBS Defendants removed this action[1] pursuant to 28 U.S.C § 1334, which confers on district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). SPV argues that the present action is not "related to" the ongoing Madoff and BLMIS bankruptcy proceeding.

"For the purposes of removal jurisdiction, a civil proceeding is 'related to' a title 11 case if the action's 'outcome might have any "conceivable effect" on the bankrupt estate.'" Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011) (quoting In re Cuyahoga Equip.

---

[1] At the time this action was removed to this Court, the Access Defendants had not yet been served.

4

Corp., 980 F.2d 110, 114 (2d Cir. 1992)). An action has a "conceivable effect" on the bankrupt estate "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 317-18 (S.D.N.Y. 2003) (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995)); In re Chateaugay Corp., 213 B.R. 633, 638 (S.D.N.Y. 1997) (citation omitted). In particular, where, as here, "related to" jurisdiction is premised on potential contribution claims by third party defendants against the debtor, courts generally find that jurisdiction exists "where there is a 'reasonable' legal basis for the claim." In re WorldCom, 293 B.R. at 318.

Defendants have a reasonable legal basis to assert a contribution claim against the bankrupt estate for any liability arising from this action. Under New York law, a contribution claim arises among "two or more persons who are subject to liability for damages for the same . . . injury to property." N.Y. C.P.L.R. § 1401; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 242 (2d Cir. 2002) ("[A] claim for contribution may arise where the defendant and a third party both caused the same injury — albeit nonconcurrently or under alternative theories of causation."). Here, SPV alleges that

5

defendants, as aiders and abettors of, or participants in, Madoff's and BLMIS's fraud, are joint tortfeasors with the bankrupt estate. Indeed, SPV must prove Madoff's and BLMIS' primary torts as elements of all its claims. See In re WorldCom, 293 B.R. at 321. Accordingly, defendants, should they be found liable, would have a reasonable legal basis to assert a contribution claim. Id. at 318 (holding that a reasonable basis for contribution claims existed when defendants' liability was "entirely dependent" on debtor's violation); Am. Int'l Grp., Inc. v. Bank of Am. Corp., No. 11 Civ. 6212, 2011 WL 6778473, at *3 (S.D.N.Y. Dec. 20, 2011) (holding that potential contribution claims against bankrupt estate supported "related to" jurisdiction).

In addition, courts frequently look to the degree of interconnectedness between a third party action and bankruptcy action in deciding whether the former is "related to" the latter. In re WorldCom, 293 B.R. at 321. For example, courts have found relevant that a debtor, but for the bankruptcy, would have been named as a defendant in the third party action, and that its conduct would "remain at the heart of" the litigation despite its absence as a party. Id. Here, as in WorldCom, Madoff and BLMIS would have been named as defendants but for the bankruptcy proceeding, and their conduct is "intertwined" with that of defendants. Id. Therefore, the interconnected nature of

6

this action and the bankruptcy proceeding further supports the exercise of "related to" jurisdiction.

SPV asserts that this action has no "conceivable effect" on the bankruptcy proceeding because (1) the UBS Defendants have no legal basis for their contribution claim given that the bar date for filing claims has passed; and (2) the value of any potential contribution claim is zero because the bankrupt estate has no funds to pay the claim. The Court disagrees.

First, although the bar date has passed, defendants could seek leave of the Bankruptcy Court to file a late proof of claim. Such leave is frequently granted for good cause. For example, a court may accept a late proof of claim "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). Excusable neglect has been found where the claimant was unaware of its claim until after the bar date passed. See, e.g., In re PT-1 Commc'ns, Inc., 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003). In this case, SPV did not commence this suit until over five years after the July 2, 2009 bar date,[2] and thus defendants were not on notice of their potential claim for contribution. Therefore, defendants have at least a reasonable

---

[2] The Court does not resolve the issue of whether this bar date, which was entered in the SIPA Action, applies to claims against the Madoff estate because it holds that this action has a "conceivable effect" on the bankruptcy proceeding even if the bar date has passed.

7

basis to seek leave to file a late proof claim on the ground of excusable neglect.

SPV relies on two cases in which the court found that defendant's failure to file a claim before the bar date rendered the claim without any "conceivable effect" on the bankrupt estate. See Sealink Funding Ltd. v. Bear Stearns & Co. Inc., No. 12 Civ. 1397, 2012 WL 4794450, at *3 (S.D.N.Y. Oct. 9, 2012); Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232, 2011 WL 4965150, at *4 (S.D.N.Y. Oct. 19, 2011). Both Sealink and Allstate, however, focused on claims for indemnification, not contribution. Critical to the court's holding in both cases was the fact that "[a]n indemnification right 'arises at the time the indemnification agreement is executed." Allstate, 2011 WL 4965150, at *5 (citation omitted); Sealink, 2012 WL 4794450, at *3 (quoting Allstate). As the indemnification claim arose well before the bar date, there could be no excuse for defendant's failure to file in timely fashion. By contrast, a contribution claim, such as that potentially at issue here, "does not accrue until payment of the underlying liability has been made by the suing party." Warwick Admin. Grp. v. Avon Prods., Inc., 820 F. Supp. 116, 124 (S.D.N.Y. 1993). Unlike defendants in Allstate and Sealink, therefore, the UBS Defendants had no reason to believe that they

8

had a potential contribution claim, nor could they have asserted such claim, prior to the bar date.

Second, SPV's assertion that the UBS Defendants' contribution claim would "never receive any payout" and therefore could have "no financial effect" on the BLMIS estate lacks merit. Although, at present, the bankrupt estate does not have sufficient funds to pay recognized customer claims, which take priority over claims for contribution, the estate continues to recover substantial assets, including almost $1 billion in 2014 alone. See King Decl., Ex. 7, 8. Moreover, the Trustee is aggressively pursuing numerous other recoveries. Therefore, it is within the realm of possibility that the UBS Defendants could receive a distribution. See Winstar Holdings, LLC v. Blackstone Grp. L.P., 07 Civ. 4634, 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007) ("'Certainty, or even likelihood, is not required. Bankruptcy jurisdiction will exist so long as it is possible' that the proceeding may affect the debtor's rights or the administration of the estate." (citing In re Dow Corning, 86 F.3d 482, 491 (6th Cir. 1996))).

Furthermore, even if the UBS Defendants are ultimately unable to recover, this action could still conceivably affect the administration of the bankrupt estate. The Trustee of the estate is under a duty to examine proofs of claims and object to those that are improper, 11 U.S.C. § 704(a)(5), and his fees and

9

expenses in doing so are recoverable from the general estate, 15 U.S.C. § 78fff(e). Hence, defendants' assertion of contribution claims against the estate would cause the Trustee to incur costs, thereby reducing the amount available to creditors.

Moreover, SPV is a creditor of the bankrupt estate. Therefore, if SPV recovers from defendants, then that recovery could potentially reduce the bankrupt estate's liabilities. Such an effect is sufficient to satisfy the "conceivability" standard. In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03 MDL 1529, 2005 WL 1404798, at *2 (S.D.N.Y. June 14, 2005) ("To the extent that plaintiffs are successful against the defendants, plaintiffs' recovery will in all probability (and certainly conceivably) reduce the total of Adelphia's liabilities"); see also WorldCom, 293 B.R. at 323 ("The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding."). But see Gen. Elec. Capital Corp. v. Pro-Fac Coop., No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) (finding that potential ramifications of third party litigation were insufficient to render claims "related to" bankruptcy proceeding).

Third, the Court is not persuaded by SPV's argument that, even if federal jurisdiction exists, this Court must exercise

10

mandatory abstention pursuant to 28 U.S.C. § 1334, which provides, in relevant part, that "the district court shall abstain from hearing [a proceeding based solely on 'related to' jurisdiction] if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). In this regard, the only issue in dispute is whether this action can be "timely adjudicated" in the State forum. In making this determination, courts consider four factors: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." Parmalat, 639 F.3d at 580.

This inquiry requires a court to consider "the particular factual and procedural circumstances" of the two courts being compared. Id. at 580. "Timeliness cannot be reasonably defined as a fixed period of time," but instead is "a case- and situation-specific inquiry that requires a comparison of the time in which the respective state and federal forums can reasonably be expected to adjudicate the matter." Id.

Here, SPV contends that the state court action would likely be assigned to the Commercial Division of the Supreme Court of

11

New York. Although cases before the Commercial Division are somewhat more likely to proceed expeditiously than cases on the Supreme Court's general docket, "even that court has come to experience the kinds of delays that federal dockets have been able, through their smaller dockets, to avoid." CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC, 396 B.R. 602, 607 (S.D.N.Y. 2008); see also Renaissance Cosmetics, Inc. v. Dev. Specialists Inc., 277 B.R. 5, 13 (S.D.N.Y. 2002) ("Although the Commercial Division is well-intentioned, the backlog and delay in that court is well-documented."). At the time SPV brought the instant motion, the state court had yet to assign this case to a judge, let alone commence motion practice. By contrast, this Court has now received full briefing and oral argument on defendants' motion to dismiss, and a decision is forthcoming.

Furthermore, this Court has significant experience with prior Madoff litigation, see, e.g., SIPC v. Bernard L. Madoff Inv. Sec. LLC, 516 B.R. 18 (S.D.N.Y. 2014) (Rakoff, J.), and has accepted this case as related to the Hill Action, which presents substantially similar facts and legal issues. The Court's expertise with the common legal issues and familiarity with the underlying facts weigh in favor of adjudicating this action in this forum. Parmalat, 639 F.3d at 580-81 (explaining that when the facts or legal issues of the case are complex, the forum with more expertise with relevant law and familiarity with the

12

record may be "expected to adjudicate the matter more quickly.").

By contrast, remand would require the issues presented in this case and the Hill Action to be adjudicated in parallel state and federal proceedings, creating the potential for duplicative discovery and motion practice and the risk of inconsistent rulings. See CCM Pathfinder, 396 B.R. at 607 ("Given the close connection between the instant actions and the [federal] Action, 'to remand here would simply complicate and slow down the resolution of [the federal action], as well as of the matters already pending before this Court.'" (citation omitted)); In re Global Crossing, Ltd. Sec. Litig., 311 B.R. 345, 349 (S.D.N.Y. 2003) (holding that mandatory abstention "has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court.").

Finally, although the bankruptcy proceeding has been pending for several years, the Trustee has been making partial distributions since 2011. As this case may impact the funds available for distribution, the delay attendant to remand to state court would unnecessarily prolong the bankruptcy proceeding. See, e.g., In re Gen. Growth Properties, Inc., 460 B.R. 592, 602 (Bankr. S.D.N.Y. 2011) (mandatory abstention not

13

required where action would affect funds available for distribution). Accordingly, this action cannot be "timely adjudicated" in state court, and mandatory abstention is not required.

For the foregoing reasons, the Court, by Order dated March 27, 2015, found that removal to federal court was appropriate and denied plaintiff's motion to remand.

SO ORDERED.

Dated:  New York, NY
        July 1, 2015

                                        _____
                                        JED S. RAKOFF, U.S.D.J.