```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
SPV OSUS LTD.,                           :
                                         :
      Plaintiff,                         :
                                         :
         -v-                             :
                                         :
UBS AG, UBS (LUXEMBOURG) S.A.,           :
UBS FUND SERVICES (LUXEMBOURG) S.A.,     :
UBS THIRD PARTY MANAGEMENT               :
COMPANY S.A., AIA LLC, ACCESS            :
INTERNATIONAL ADVISORS EUROPE            :
LIMITED, ACCESS INTERNATIONAL            :      15-cv-619 (JSR)
ADVISORS LTD., ACCESS PARTNERS           :
(SUISSE) S.A., ACCESS MANAGEMENT         :
LUXEMBOURG S.A.; ACCESS PARTNERS         :
S.A. (LUXEMBOURG), PATRICK LITTAYE,      :
CLAUDINE MAGON DE LA VILLEHUCHET         :
A/K/A CLAUDINE DE LA VILLEHUCHET,        :
EXECUTRIX, CLAUDINE MAGON DE LA          :
VILLEHUCHET A/K/A CLAUDINE DE LA         :
VILLEHUCHET,INDIVIDUALLY, PIERRE         :
DELANDMETER, AND THEODORE DUMBAULD,      :
                                         :
      Defendants.                        :
-----------------------------------------x
STEPHEN HILL, LEYLA HILL, and PAUL       :
SHAPIRO,                                 :
                                         :
      Plaintiffs,                        :
                                         :      14-cv-9744 (JSR)
         -v-                             :
                                         :      OPINION AND ORDER
UBS AG, UBS (LUXEMBOURG) S.A., UBS       :
FUND SERVICES (LUXEMBOURG) S.A., and     :
UBS THIRD PARTY MANAGEMENT COMPANY       :
S.A.,                                    :
                                         :
      Defendants.                        :
-----------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

1

Plaintiffs in these two actions allege that they were customers of the notorious Bernard L. Madoff Investment Securities ("BLMIS"). On December 10, 2014, plaintiffs Stephen Hill, Leyla Hill, and Paul Shapiro filed a putative class action (the "Hill Action") asserting on behalf of themselves and other BLMIS customers various state law claims against defendants UBS AG, UBS (Luxembourg) S.A. ("UBS SA"), UBS Fund Services (Luxembourg) S.A. ("UBS FSL"), and UBS Third Party Management Company, S.A. ("UBS TPM").[1] See Class Action Complaint dated December 10, 2014, No. 14-cv-9744, ECF No. 1 ("Hill Compl.") ¶¶ 102-70. They allege, broadly speaking, that the UBS Defendants acted as accomplices to BLMIS and its eponymous founder by sponsoring international "feeder funds" — in particular, Luxalpha SICAV ("Luxalpha") and Groupement Financier Ltd. ("Groupement Financier")[2] — that funneled billions of dollars' worth of new investments into BLMIS's Ponzi scheme. Id. ¶¶ 2-4.

On December 11, 2014, plaintiff SPV OSUS Ltd. ("SPV"), a Bahamian corporation that claims to be the assignee of BLMIS investor Optimal Strategic US Equity Ltd., filed a complaint in New York Supreme Court in Manhattan asserting substantially

---

[1] These entities are referred to collectively as the "UBS Defendants."

[2] Luxalpha and Groupement Financier are referred to collectively as the "Feeder Funds."

2

similar factual and legal claims against the UBS Defendants (the "SPV Action"). See Complaint dated December 11, 2014, No. 15-cv-619, ECF No. 1, Ex. A ("SPV Compl."). In addition, SPV named as co-defendants Access International Advisors Ltd. and affiliated entities that they allege played various roles with respect to the Feeder Funds, such as portfolio advisor, administrative agent, and investment manager, as well as various individuals whom they allege served, inter alia, as the Feeder Funds' partners, directors, and officers.[3] Id. ¶¶ 20-30. On February 1, 2015, the UBS Defendants removed the SPV Action to this Court, which accepted it as related to the Hill Action. See SPV Action, No. 15-cv-619, ECF No. 1. By Order dated March 27, 2015, the Court denied SPV's motion to remand to state court. See ECF Nos. 41-42. Currently pending before the Court is the UBS Defendants' motion to dismiss both actions.[4]

---

[3] Specifically, SPV named as co-defendants: AIA LLC, Access International Advisors Europe Limited, Access International Advisors Ltd., Access Partners (Suisse) S.A., Access Management Luxembourg S.A., Access Partners S.A. (Luxembourg), Patrick Littaye, Claudine Magon de la Villehuchet a/k/a Claudine de la Villehuchet, individually and as executrix of the will of Thierry Magon de la Villehuchet a/k/a René Thierry de la Villehuchet, Pierre Delandmeter, and Theodore Dumbauld. These entities and individuals are referred to collectively, as the "Access Defendants."

[4] At the time this motion was filed, the Access Defendants had not yet been served, and they are not parties to this motion.

The pertinent allegations of the two complaints are substantially similar, and may be summarized as follows. Plaintiffs allege that Madoff pretended to invest his customers' funds in a basket of common stocks within the S&P 100 Index pursuant to his so-called "split strike conversion" strategy, and to hedge his stock purchases with S&P 100 Index option contracts. Hill Compl. ¶ 22; SPV Compl. ¶¶ 33-34. BLMIS further issued fabricated statements showing that securities were held in or had been traded through customer accounts. Hill Compl. ¶ 23; SPV Compl. ¶¶ 35-37. In reality, BLMIS never purchased a single security and instead used the principal from later customers to pay earlier customers. Hill Compl. ¶¶ 25-26; SPV Compl. ¶¶ 39-42. Madoff was arrested on December 11, 2008 and subsequently pled guilty to an eleven-count criminal information. Hill Compl. ¶ 27; SPV Compl. ¶¶ 45-46.

Plaintiffs further allege that the UBS Defendants, through their due diligence efforts, discovered numerous indicia of Madoff's fraud, and consequently declined to assume any material exposure to BLMIS or to recommend BLMIS-related funds to their private clients. Hill Compl. ¶¶ 30-52; SPV Compl. ¶¶ 75-99, 181-223. Nonetheless, plaintiffs allege, the UBS Defendants enthusiastically helped to create, promote, and manage the Feeder Funds in exchange for over $80 million in fees. Hill Compl. ¶ 4; SPV Compl. ¶¶ 1-3.

Specifically, plaintiffs allege that the UBS Defendants undertook the following roles vis-à-vis the Feeder Funds:

UBS AG. Plaintiffs allege that UBS AG served as "promoter" of Luxalpha, which touted UBS AG's role in its prospectuses, leading the public to believe that one of the world's largest financial institutions stood behind the fund. Hill Compl. 53; SPV Compl. ¶¶ 102-03. Furthermore, UBS AG's role as promoter allowed Luxalpha to receive regulatory approval in Luxembourg. Hill ¶ 54.

UBS SA. Plaintiffs allege that UBS SA also helped Luxalpha to obtain regulatory approval in Luxembourg by serving as its outward sponsor. Hill Compl. ¶ 57; SPV Compl. ¶ 105. UBS SA also served as the fund's custodian, distributor, and portfolio manager, functions which it allegedly delegated entirely to BLMIS, while continuing to collect fees. Hill Compl. ¶ 58; SPV Compl. ¶¶ 17, 106-07. Plaintiffs allege that Luxalpha's funds were held in a BLMIS account in the name of UBS SA, and that the account opening papers and agreements were completed and executed by UBS SA employees and delivered to BLMIS in New York. Id. All redemption requests from UBS SA were processed through UBS AG's Stamford branch. Id.

UBS SA also allegedly served as Prime Bank for Groupement Financier and custodian of a related fund. Hill Compl. ¶ 61; SPV Compl. ¶¶ 17, 109. In that role, it received the fund's

5

subscription monies and transferred them to the Bank of Bermuda, BLMIS's beneficiary bank, through HSBC Bank USA in New York as a correspondent bank. Hill Compl. ¶ 61. UBS SA was also responsible for mirror book-keeping of all transactions reported by Groupement Financier so that UBS FSL could calculate that fund's net asset value ("NAV"). SPV Compl. ¶ 110.

UBS FSL. Plaintiffs allege that UBS FSL served as administrator for both Luxalpha and Groupement Financier, a role which required it to handle accounting, calculation of the funds' NAV, and preparation of financial statements. Hill Compl. ¶ 63; SPV Compl. ¶¶ 18, 111. UBS FSL allegedly calculated the funds' NAV based on information provided by BLMIS, without any independent verification. Id.

UBS TPM. Plaintiffs allege that UBS TPM served as manager of Luxalpha from August 2006 to November 2008, in which capacity it was responsible for management and administration of the fund and monitoring of investment policies. Hill Compl. ¶ 64; SPV Compl. ¶¶ 19, 112. In reality, plaintiffs allege, it delegated all these functions to BLMIS. Id.

Plaintiffs allege that the above-described conduct of the UBS Defendants provided the Feeder Funds with a public "façade of legitimacy," which in turn "enabled and perpetuated the Madoff fraud." Hill Compl. ¶¶ 55, 66; SPV Compl. ¶¶ 103, 114. Moreover, plaintiffs allege, the failure of the UBS Defendants

6

to exercise meaningful oversight of Luxalpha and Groupement Financier's operations enabled Madoff's fraud to go undetected. Hill Compl. ¶ 92; SPV Compl. ¶ 144.

On the basis of these allegations, the plaintiffs in both actions assert state law claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and knowing participation in a breach of trust. The Hill Plaintiffs additionally assert claims for unjust enrichment and aiding and abetting embezzlement.

The UBS Defendants have moved to dismiss on four grounds: that plaintiffs' claims are precluded by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1); that the Court lacks personal jurisdiction over the UBS Defendants; that plaintiffs fail to state a claim upon which relief may be granted; and that plaintiffs' claims are barred by the applicable statutes of limitations.

The Court first considers the UBS Defendants' challenge to personal jurisdiction.[5] On a pre-discovery motion to dismiss

---

[5] Where federal subject-matter jurisdiction is not based solely on SLUSA's removal provision, 15 U.S.C. §§ 77p(c), 78bb(f)(2), SLUSA is a "preemption defense and, as such, one of a number of preliminary grounds for dismissal, among which a judge has discretion to choose when deciding whether to dismiss a case." LaSala v. Bank of Cyprus Pub. Co., 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007). In this case, the Court has diversity jurisdiction over the Hill Action pursuant to 28 U.S.C. § 1332 and bankruptcy jurisdiction over the SPV Action pursuant to 28 U.S.C § 1334. Accordingly, the Court has discretion to decide

7

pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to make a prima facie showing that the Court has personal jurisdiction over a defendant. King Cnty., Wash. v. IKB Deutsche Industriebank, AG, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011). Although ambiguities in the pleadings should be resolved in the plaintiff's favor, "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction." Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Moreover, "resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004). However, in reviewing a Rule 12(b)(2) motion, "a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." Greatship (India) Ltd. v. Marine

---

the UBS Defendants' challenge to personal jurisdiction before reaching the issue of SLUSA preemption. In addition, even if SLUSA preemption were a question of subject-matter jurisdiction, the Court has discretion to address a "straightforward personal jurisdiction issue presenting no complex question of state law" before reaching an "alleged defect in subject-matter jurisdiction" that, as here, "raises a difficult and novel question." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999).

Logistics Solutions (Marsol) LLC, No. 11-cv-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012).

"Since International Shoe Co. v. Washington, the touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization … that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134 (2d Cir. 2014) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In assessing whether a defendant has the requisite "minimum contacts" with the forum, courts distinguish between "general" and "specific" personal jurisdiction. See In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013). General jurisdiction "permits a court to hear 'any and all claims' against an entity." Gucci, 768 F.3d at 134 (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 755 (2014)). Specific jurisdiction, by contrast, permits the court to exercise jurisdiction "only over issues that 'arise out of or relate to the entity's contacts with the forum.'" Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)) (alterations omitted).

Turning first to general jurisdiction, general jurisdiction over foreign corporations exists when those corporations'

9

"affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." In re Roman Catholic Diocese of Albany, New York, Inc., 745 F.3d 30, 38 (2d Cir. 2014) (per curiam) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (U.S. 2011)). In the recent case of Daimler AG v. Bauman, 134 S. Ct. 746 (2014), the Supreme Court announced a more stringent standard for finding a corporation to be "essentially at home" in a foreign jurisdiction. In that case, the defendant was DaimlerChrysler Aktiengesellschaft ("Daimler"), the German company that manufactures Mercedes-Benz vehicles in Germany. Id. at 750-51. Daimler's indirect subsidiary, MBUSA, operated multiple facilities in California, was the largest supplier of luxury vehicles to the California market, and accounted for 2.4% of Daimler's worldwide sales. Id. at 752. These contacts, the Court held, were insufficient to establish general jurisdiction over Daimler. Id.

The Court rejected plaintiffs' proposed test for general jurisdiction -- whether the corporation "engages in a substantial, continuous, and systematic course of business" -- as "unacceptably grasping." Id. at 761. The Court explained that, as a matter of course, a corporation is subject to general jurisdiction only in its formal place of incorporation or principal place of business. Id. Only in the "exceptional case"

10

would a corporation's operations in another forum be "so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19.

Subsequently, the Second Circuit noted that Daimler "expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014). It held that the district court could not properly exercise general jurisdiction over defendant, Bank of China, which had branch offices in New York but was "incorporated and headquartered elsewhere" and conducted only a small portion of its worldwide business within the forum. Id. at 135.

Turning to the instant case, UBS AG is incorporated and has its principal place of business in Switzerland. See Declaration of John Connors dated February 25, 2015, ECF No. 17, ¶ 2. Plaintiffs argue that UBS AG has offices in New York, conducts substantial business here, has a registered agent here, and has been the subject of many suits in New York courts.[6] However, at

---

[6] Plaintiffs' allegations that UBS has a "headquarters" in New York and has twenty-one locations here impermissibly conflates UBS AG's contacts with the forum with those of other, non-party UBS entities. See Declaration of Gabriel Herrmann dated March 27, 2015, ECF No. 25, Exs. 1 & 2; Rush v. Savchuck, 444 U.S. 320, 331-32 (1980) (rejecting "attempt[] to attribute [one

11

most, the contacts alleged by plaintiffs amount to "a substantial, continuous, and systematic course of business," which the Supreme Court expressly held to be insufficient in Daimler. See 134 S. Ct. at 760. Plaintiffs fail to establish that this is the "exceptional case" in which a corporation is "essentially at home" in a foreign forum such that the Court may exercise general jurisdiction over it. Id. at 761 n.19. Accordingly, this Court lacks general jurisdiction over UBS AG.[7]

The remaining UBS Defendants, UBS SA, UBS FSL, and UBS TPM, have no presence in New York at all. They are all incorporated in Luxembourg and have their principal places of business there. See Declaration of Martin Baumert dated February 26, 2015, ECF No. 15 ("Baumert Decl.") ¶ 2; Declaration of Pierre-Antonie Boulat dated February 25, 2015, ECF No. 16 ("Boulat Decl.") ¶ 2; Declaration of Mark Porter dated February 25, 2015, ECF No. 18 ("Porter Decl.") ¶ 2. None has any physical presence or employees in the United States, nor does any of them directly or

---

defendant's] contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts").

[7] This conclusion is also consistent with the recent holding of the District Court for the Northern District of California that "UBS AG is not subject to general jurisdiction in this District (or anywhere in the United States) because it is incorporated in Switzerland and its principal place of business is in Switzerland." AM Trust v. UBS AG, No. 14-cv-4125, 2015 WL 395465, at *6 (N.D. Cal. Jan. 29, 2015).

12

purposefully solicit, market, or otherwise seek out business from potential customers located in the United States. Baumert Decl. ¶¶ 2-3; Boulat Decl. ¶¶ 2-3; Porter Decl. ¶¶ 2-3.

Plaintiffs do not dispute these facts, arguing instead that the Court has general jurisdiction over UBS SA, UBS FSL, and UBS TPM because they are "mere departments" of UBS AG. However, the "mere department" analysis applies only if the parent company is subject to general jurisdiction in the forum. See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). As the Court has determined that UBS AG is not subject to general jurisdiction in New York, this issue is irrelevant and none of the UBS Defendants is subject to general jurisdiction in New York.[8]

Turning to specific jurisdiction, the existence of specific jurisdiction depends on the relationship "among the defendant,

---

[8] Even if UBS AG were subject to general jurisdiction, however, plaintiffs fall far short of establishing that the remaining UBS Defendants are "mere departments" of it. This determination depends on four factors: (1) common ownership; (2) financial interdependence; (3) interference with personnel and disregard for corporate formalities; and (4) control over operational and marketing policies. See id. at 120. Plaintiffs argue that UBS AG directly owns 100% of UBS SA and UBS FSL, and took over ownership of UBS TPM from another UBS entity in 2009. After that, a single Group Executive Board was created to supervise and govern UBS AG and its subsidiaries. See Declaration of Andrew J. Entwistle dated March 20, 2015, ECF No. 23, Ex. 27. However, mere ownership satisfies only the first factor, and the fact that management personnel report up to the same Group Executive Board does not demonstrate that any of the remaining three factors are present.

13

the forum, and the litigation." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (internal quotation marks and citation omitted). The plaintiff must demonstrate that his "claim arises out of or relates to [defendant's] contacts with [the forum state]" and that the defendant "purposefully availed" himself of "the privilege of doing business in" the forum state such that he "could foresee being 'haled into court' there." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 243 (2d Cir. 1999) (citations omitted).

In the Second Circuit, the strength of the causal connection between defendant's forum-related contacts and plaintiffs' claims that is required to establish specific jurisdiction varies depending on the substantiality of such contacts. If the defendant "has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." Chew v. Dietrich, 143 F.3d 24, 29 (2d Cir. 1998). On the other hand, if the defendant has substantial contacts with the forum, the Court may find it reasonable to exercise personal jurisdiction "even though the acts within the state are not the proximate cause of the plaintiff's injury." Id. In any event, "the relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular

14

case does or does not offend traditional notions of fair play and substantial justice." Id.

Plaintiffs allege a variety of contacts between the UBS Defendants and the United States. The defendant with the most extensive contacts with the United States is UBS SA. Plaintiffs allege that UBS SA formed Luxalpha in February 2004 and immediately executed a board resolution to open an account with New York-based BLMIS, then delivered the account opening documents to BLMIS on Luxalpha's behalf, including a customer agreement, an option agreement, a trading authorization, and a sub-custodian agreement, each signed by a UBS SA representative. See Entwistle Decl. Ex. 4. In addition, UBS SA allegedly contracted with BLMIS to serve as Luxalpha's sub-custodian, processed investor redemptions, and engaged in regular communication with BLMIS concerning Luxalpha. Id. Exs. 6-9, 11-12.

The alleged New York contacts of the other UBS Defendants are far more attenuated. UBS FSL is alleged to have served as administrator to the Feeder Funds, which in turn invested in BLMIS, and to have provided services to them such as processing subscriptions and redemptions, calculating NAV, and preparing financial statements. Id. Exs. 14, 18. Similarly, plaintiffs allege that UBS TPM served as management company for Luxalpha from 2006 to 2008, and had contractual authority to make

15

investments on its behalf. SPV Compl. ¶ 112. Finally, plaintiffs allege that UBS AG created and promoted Luxalpha, which in turn invested in BLMIS, that it processed Luxalpha redemptions through its Stamford, Connecticut branch, and that it performed due diligence on Madoff. Id. ¶¶ 80-85, 101, 108. Plaintiffs also argue that the Court has jurisdiction over the UBS Defendants via an agency theory, based on the Feeder Funds' activities in New York.

All this is beside the point, however, because plaintiffs' claims do not "arise[] out of or relate[] to" the UBS Defendants' alleged contacts with New York, or any other conduct in which they allegedly engaged. Kernan, 175 F.3d at 243. As discussed above, the Second Circuit has recognized that, where a defendant's contacts with the forum are limited, it is appropriate to require the plaintiff to establish that his "injury was proximately caused by those contacts." Chew, 143 F.3d at 29. That proposition certainly applies here, where the defendants are foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States.

Indeed, plaintiffs' claims fail even to meet the minimal requirement of "but for" causation. Specifically, plaintiffs fail to allege any meaningful connection whatsoever between defendants' conduct (much less their forum-directed conduct) and

16

plaintiffs' injuries. Plaintiffs were not investors in the Feeder Funds, nor were they customers of the UBS Defendants. They were investors in BLMIS, and their injuries were caused by BLMIS's Ponzi scheme. Plaintiffs do not allege that they relied on the UBS Defendants' involvement with the Feeder Funds in making their decision to invest in BLMIS, or even that they were aware of such involvement. Nor do plaintiffs allege that the creation of the Feeder Funds, or the Feeder Funds' investment in BLMIS, somehow harmed them.[9]

The Hill Plaintiffs suggested at oral argument that, had the UBS Defendants declined to sponsor the Feeder Funds, the Ponzi scheme would have collapsed before the Hill Plaintiffs made their investments. See Transcript dated May 5, 2015, ECF No. 26 ("Tr.") at 23. Putting aside the fact that the have pled no factual support for that highly speculative proposition, it would at most establish an attenuated form of "but for" causation, which is insufficient given the sparse nature of the UBS Defendants' contacts with the United States. See, e.g., Absolute Activist Master Value Fund, Ltd. v. Ficeto, No. 09-cv-8862, 2013 WL 1286170, at *12 (S.D.N.Y. Mar. 28, 2013) (finding

---

[9] This jurisdictional defect is closely related to one aspect of the UBS Defendants' challenge to the sufficiency of the complaints, namely, failure to plausibly allege proximate causation. However, the Court does not reach that argument here, as it finds that it lacks personal jurisdiction over the UBS Defendants.

no personal jurisdiction where defendants' forum-related conduct were "at best, attenuated, 'but for' causes of the injury" to the plaintiffs).

The SPV Plaintiff argued, by contrast, that if the UBS Defendants had disclosed their knowledge of the fraud before Madoff's arrest in December 2008, then SPV could have redeemed its investments in BLMIS before the Ponzi scheme collapsed. See Tr. 31. This, however, is a dubious proposition. The very nature of a Ponzi scheme is that there is insufficient capital to redeem all investors' investments. Had the UBS Defendants announced to the world that Madoff was a fraud, it is highly unlikely that SPV would have been able to recover the full value of its investment. And even if it had, any funds in excess of the principal it invested would be subject to clawback by the trustee of Madoff's bankrupt estate. See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 476 B.R. 715, 729 (S.D.N.Y. 2012). Thus, even the fanciful hypotheticals posited by plaintiffs at oral argument, and nowhere pled in their respective complaints, fail to cure the deficiencies in plaintiffs' jurisdictional allegations.

In sum, given the scant contacts between the UBS Defendants and the forum, combined with the utter lack of nexus between the UBS Defendants' alleged conduct and plaintiffs' claims, the Court finds that haling the UBS Defendants into court would

"offend traditional notions of fair play and substantial justice." Chew, 143 F.3d at 29 (internal quotation marks and citation omitted). Accordingly, plaintiffs' claims against the UBS Defendants must be dismissed.[10]

For the foregoing reasons, the Court hereby grants the UBS Defendants' motion to dismiss for lack of personal jurisdiction. With respect to the Hill Action, No. 14-cv-9744, the Clerk of the Court is directed to enter final judgment dismissing the complaint with prejudice and to close the case in its entirety. With respect to the SPV Action, No. 15-cv-619, the Clerk of the Court is directed to close document number 18 and to terminate defendants UBS AG, UBS (Luxembourg) S.A., UBS Fund Services (Luxembourg) S.A., and UBS Third Party Management Company, S.A. Counsel for the remaining parties in the SPV OSUS action are directed to call the Court within three business days of the date of this Opinion and Order to schedule further proceedings.

SO ORDERED.

Dated: New York, NY
       July 20, 2015

JED S. RAKOFF, U.S.D.J.

---

[10] Because the Court finds that it lacks jurisdiction, it does not reach the remaining arguments raised by the UBS Defendants.