

**Katten**
Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
www.kattenlaw.com

ANTHONY L. PACCIONE
anthony.paccione@kattenlaw.com
212.940.8502 direct
212.894.5502 fax

October 20, 2015

<u>Via ECF</u>

The Honorable Jed S. Rakoff
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   SPV OSUS Ltd. v. UBS AG *et al.*, No. 15-cv-00619 (JSR)

Dear Judge Rakoff:

This letter is submitted on behalf of the Access Defendants[1] in furtherance of their motion to dismiss this action and in response to plaintiff SPV OSUS Ltd.'s letter dated October 13, 2015 (the "SPV Letter") purportedly proposing allegations that, if added to the present 87 page Complaint, would somehow cure its deficient allegations of proximate cause.

As detailed below, Plaintiff's new proposed allegations are either a rehash of the same deficient causation allegations set forth in the Complaint or just plainly irrelevant to the issue of proximate cause. At most, the SPV Letter confirms that its assignor had no contact whatsoever with the Access Defendants or the two related feeder funds, that those funds are only accused of affirmatively bringing money into BLMIS and that Plaintiff's injuries were caused by Madoff's fraud. Plaintiff also continues to ignore the distinction between "but for" and "loss" causation and, frankly, fails to satisfy either element.

**<u>Plaintiff Acknowledges That Its Injuries (Loss Causation) Were Caused by Madoff</u>**

In its letter, SPV confirms that OSUS (its assignor) was one of thousands of customers of BLMIS and that it was induced to utilize BLMIS's financial advisory services based on representations by *Madoff*, not any of the defendants. *See* SPV Letter at 5-7. In fact, neither Plaintiff nor OSUS were customers of any of the Access Defendants or investors in the associated feeder funds, or had any alleged contact with any Access entity whatsoever. Plaintiff admits "Madoff and/or BLMIS made false statements misrepresenting what BLMIS would do with money OSUS invested in BLMIS." *Id.* at 5. Plaintiff further confirms that "[o]n a monthly basis . . . BLMIS issued customer statements to OSUS that constituted misrepresentations." *Id.*

---

[1]   Unless otherwise defined, capitalized terms have the meaning attributed to them in the Access Defendants' moving and reply papers submitted in support of their motion to dismiss.

The Honorable Jed S. Rakoff
October 20, 2015
Page 2

Critically, Plaintiff concedes that "OSUS was induced to increase and retain its investment in BLMIS over a number of years" based on "misrepresentations such as those contained in the monthly customer statements [issued by Madoff]." *Id.* Similarly, Plaintiff's proffered allegations further confirm that its alleged injuries were the direct and proximate result of Madoff and his Ponzi scheme. *Id.* at 4 ("[N]o stocks were purchased with OSUS's deposited money because BLMIS was merely a Ponzi scheme."), 5 ("BLMIS was a Ponzi scheme in which customers' [including OSUS's] money was not actually invested and customers who redeemed all or part of their investments were paid with new money flowing into the scheme.").

This Court has already determined, based on nearly identical facts alleged against the UBS defendants in this action, that Plaintiff's injuries were not a proximate result of any actions by the defendants because "Plaintiffs were not investors in the Feeder Funds, nor were they customers of the . . . Defendants. They were investors in BLMIS, and their injuries were caused by BLMIS's Ponzi scheme." *SPV/Hill* Op. at *6. Here too, OSUS's investment and the resulting losses stem from Madoff's misrepresentations and fraudulent actions. They were not caused by – and could not as a matter of simple logic be a result of – the fact that the Access Defendants brought more money into BLMIS. The losses were caused because Madoff lied, cheated, and stole OSUS's money. Plaintiff's proposed allegations do nothing to alter this fact and, accordingly, fail to establish the element of "loss causation" discussed in the authorities cited in the Access Defendants' moving papers. Mov. Br. at 17-22.[2]

---

[2] Plaintiff cites three cases in support of the proposition that "losses can be proximately caused by conduct that induces investors to retain their investments in fraudulent schemes," the most recent of which was issued in 1937. SPV Letter at 1-2. These outdated cases are inapplicable for a number of reasons. <u>First</u>, in each of those cases, the defendant was alleged to have made misrepresentations directly to the plaintiff. *See Hotaling v. A.B. Leach & Co.*, 247 NY 84, 93 [1928]; *Stern Bros, v. New York Edison Co.*, 251 App. Div. 379, 381 [1st Dept. 1937]; *Continental Ins. Co. v. Mercadante*, 222 App. Div. 181 [1st Dept. 1927]). In contrast, Plaintiff's allegations here make clear that OSUS was unaware of any statement the Access Defendants actually made. <u>Second</u>, in each of the cases cited by Plaintiff, the Defendants were alleged to have been direct pecuniary beneficiaries of the misrepresentations. *Id.* The Access Defendants here were not, and are not alleged to have been, benefited in any way by OSUS's investment in *BLMIS*.

In contrast, federal court cases from this circuit make clear that allegations akin to those in the SPV Letter do not establish proximate cause or loss causation under New York law. By way of example, in *Edwards & Hanly v. Wells Fargo Securities Clearance*, 602 F.2d 478 (2d Cir. 1979), plaintiffs brought an aiding and abetting claim where a bank employee gave interest-free loans to finance and conceal the defrauder's scheme in which he falsified stock purchases to cover short

The Honorable Jed S. Rakoff
October 20, 2015
Page 3

**Plaintiff's Proffered Allegations Do Not Demonstrate Proximate Cause**

Despite its second chance, Plaintiff still fails to articulate a coherent argument setting forth the basis for its claims that its (or OSUS's) injuries were proximately caused by the Access Defendants. As best as the Access Defendants can interpret, Plaintiff's proximate cause argument is based on the following conduct: (i) Access "promulgat[ed] misleading marketing material that affirmatively misrepresented BLMIS's true nature;" (ii) Access made the BLMIS investment available to OSUS because it kept "the Ponzi scheme afloat by attracting European investment;" and (iii) Access "conceal[ed] what they knew of the fraud from both the world at large and international investors in particular." SPV Letter at 1,10. None of these arguments are new, and none of the proffered allegations creates a legally cognizable nexus between Plaintiff's injuries and the Access Defendants' conduct.

Plaintiff's Marketing Allegations do not Demonstrate Proximate Cause

Plaintiff attempts to create a connection between OSUS's investment and the Access Defendants by focusing on the Access Defendants' purported marketing efforts. Plaintiff claims that the "Access Defendants were conducting marketing activities relating to investment in BLMIS and directed to the European marketplace." *Id.* at 8. Plaintiff then contends that through such marketing material the Access Defendants misrepresented their due diligence efforts, and that "[s]uch misrepresentations were calculated to give anyone in the marketplace exposed to them the false impression that Access subject BLMIS to such scrutiny and found it to be legitimate." *Id.* Finally, Plaintiff states that "OSUS's parent and its investment manager OIS were headquartered and operated in Europe, and many OSUS shareholders were also part of the European market to which Access's marketing activities were directed." *Id.*

But despite making the meaningless point that Access and OSUS were both located on the European continent, Plaintiff never alleges that OSUS ever read or was even remotely aware of

---

sales. The Second Circuit rejected the district court's finding that the employee aided and abetted on a "but for" theory of causation—that "but for" the employee's assistance in the concealment of the fraudulent transaction and advancement of funds the fraudster would not have been able to conceal his scheme, and instead found that the proximate cause of the plaintiff's loss was the defrauder's deception of the plaintiff and plaintiff's failure to exercise due diligence regarding the fraudulent transactions at issue. Here too, Plaintiff's injuries are the direct result of Madoff and his decades long fraud, not any conduct associated with the Access Defendants.

The Honorable Jed S. Rakoff
October 20, 2015
Page 4

Access's purported marketing efforts. Critically, Plaintiff has never alleged that OSUS relied on Access or its marketing efforts in making its BLMIS investment decisions and, if they did, when they did and how they relied on it. Without any connection between the alleged false statement and the investment, causation cannot be plead. *See American Financial Intern. Group-Asia, L.L.C. v. Bennett*, No. 05 Civ. 8988(GEL), 2007 WL 1732427, at *9 (S.D.N.Y. 2007) ("[P]laintiffs have not alleged that they read any of the financial statements at issue, much less relied on them … [a] plaintiff cannot claim reliance on alleged misrepresentations of which it was unaware of even by implication.") (internal citation omitted); *Drake v. Laboratory Corp. of America Holdings*, No. 02-CV-1924 (FB)(RML), 2007 WL 776818, at *4 (E.D.N.Y. 2007) ("Nonetheless, a plaintiff cannot claim reliance on alleged misrepresentations of which he was unaware.") (internal citation omitted).

In the *SPV/Hill* Opinion, this Court held that Plaintiff failed to allege proximate cause because "Plaintiffs do not allege that they relied on the UBS Defendants' involvement with the Feeder Funds in making their decision to invest in BLMIS, or even that they were aware of such involvement." *SPV/Hill* Op. at *6. The same is true here.[3]

Moreover, the marketing presentation referenced in the SPV Letter makes no mention of Madoff or BLMIS at all.[4] *See* SPV Letter at 9. As such, even assuming for the sake of argument that OSUS was aware of Access's marketing material, Plaintiff has not demonstrated that such material legitimized BLMIS generally, or caused OSUS to invest with BLMIS specifically. Even those allegations only go to (but do not come close to satisfying) the "but for" element of causation. Plaintiff has simply failed to allege any connection between OSUS's injuries and the Access Defendants' alleged marketing efforts.

<u>Plaintiff's "Propping Up" Allegations Do Not Demonstrate Proximate Cause</u>

Next, Plaintiff argues the Access Defendants "affirmatively assist[ed] Madoff with his strategy to keep the Ponzi scheme afloat by attracting European investment." SPV Letter at 10. To manufacture a connection between OSUS's investments and the Feeder Funds' investments,

---

[3] Putting aside the fact that OSUS has not alleged it actually knew about Access or its marketing materials, it is absurd that OSUS can ever claim in good faith that it reasonably relied on anything the Access Defendants did or did not do. OSUS was created by, and an affiliate of, one of the largest Banks in the world, Banco Santander S.A., and was managed by a Santander subsidiary. SPV Letter at 4. Santander had close ties to BLMIS and also is reported to have led its customers to invest in BLMIS in the billions.

[4] Indeed, Plaintiff has previously complaint that Access kept Madoff and BLMIS's names out of published material. *See, e.g.*, Compl., ¶¶ 214-217.

The Honorable Jed S. Rakoff
October 20, 2015
Page 5

Plaintiff presents a "timeline" of investments. *Id.* at 7-8. However, these allegations do not demonstrate proximate cause. Plaintiff has still never set forth sufficient allegations to demonstrate that without financial assistance from the Access Defendants, OSUS would not have suffered a loss. More specifically, given the enormous amount of investments in BLMIS by other investors,[5] nothing in any of Plaintiff's pleadings shows that without the investments from the Feeder Funds specifically, BLMIS would have collapsed and OSUS would not have been damaged. Without these key allegations, there is *no* causal connection.

This Court has already properly noted the fatal deficiencies in this logic. In the *SPV/Hill* Opinion, this Court, in addressing Plaintiff's insufficient jurisdictional pleadings, held that nearly identical allegations were not only insufficient to establish "proximate cause," but "fail even to meet the minimal requirement of 'but for' causation." *SPV/Hill Op.* at *6. The allegations as to the Access Defendants are equally weak, and the Court should reject Plaintiff's insufficient pleadings as to the Access Defendants. *See Edwards & Hanly v. Wells Fargo Sec. Clearance*, 602 F.2d 478, 484 (2d Cir. 1979) (rejecting aiding and abetting claim premised on a "but for" theory of causation); *accord* Mov. Br. at 20-22 (collecting cases).

<u>Plaintiff's Concealment Allegations do not Demonstrate Proximate Cause</u>

Finally, Plaintiff argues that its injuries were caused because the Access Defendants "conceal[ed] what they knew of the fraud from both the world at large and international investors in particular." SPV Letter at 1. Such allegations again fail to establish proximate cause. <u>First</u>, Plaintiff's argument that the Access Defendants "fail[ed] to act when required to do so" fails because Plaintiff has not, and cannot, allege a duty to act. *See* SPV Letter at 2 and 10. Plaintiff's concealment allegations do not support a claim for aiding and abetting because the Access Defendants owed no duties to Plaintiff, and proximate cause cannot be inferred through inaction where defendants did not have a duty to act. *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25-27 (S.D.N.Y. 2009) (finding no fiduciary relationship between bank and plaintiff and rejecting aiding and abetting claim arising from bank's failure to inform plaintiff of customer's fraud), *aff'd*, 382 F. App'x 107 (2d Cir. Mar. 31, 2010); *see also Kaufman v. Cohen*, 307 A.D.2d 113, 126 (1st Dept. 2003) ("[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.").

<u>Second</u>, SPV's hypothesis that the Access Defendants' disclosure of their purported knowledge would have allowed OSUS to decide "to withdraw its money from BLMIS," have, once again,

---

[5]   Indeed, Plaintiff concedes that OSUS itself invested approximately $1.6 billion dollars in Madoff. SPV Letter at 8. SPV/OSUS "propped up" Madoff as least as much as any other investor.

The Honorable Jed S. Rakoff
October 20, 2015
Page 6

already been directly rejected by this Court. SPV Letter at 10. In rejecting this "dubious proposition," this Court recognized that "[t]he very nature of a Ponzi scheme is that there is insufficient capital to redeem all investors' investments. Had the UBS Defendants announced to the world that Madoff was a fraud, it is highly unlikely that SPV would have been able to recover the full value of its investment. And even if it had, any funds in excess of the principal invested would be subject to clawback by the trustee of Madoff's bankrupt estate." *SPV/Hill* Op. at *7 (internal citations omitted). None of Plaintiff's proposed allegations change this analysis. Plaintiff has not demonstrated that they would have been able to recover their investment and avoid any injury had the Access Defendants disclosed what they purportedly knew regarding Madoff's fraud. Plaintiff has entirely failed to create any nexus between OSUS's injuries and the Access Defendants' conduct.

**Plaintiff's Proffered Allegations Demonstrate That Its Claims Do Not Arise Out of the Access Defendants' Contacts with New York**

Plaintiff attempts to manufacture a connection between the Access Defendants' actions and OSUS's injuries by emphasizing that both operated in the "European market." *See, e.g.*, SPV Letter at 8-9. The unintended consequence, however, is Plaintiff's concession that the Access Defendants' conduct took place in, and was directed at, Europe, not New York or the United States. Plaintiff alleges that the "Access Defendants conduct[ed] marketing activities . . . directed to the European marketplace." *Id.* at 8. Similarly, Plaintiff alleges that the Access Defendants provided services to the foreign investment funds. *See id.* at 9. Such admissions entirely undercut Plaintiff's previous unsupported allegations that "Access" was centered out of its "New York office," and are fatal to Plaintiff's attempts to show that its claims "arise out of or relate to" the Access Defendants' contact with New York or the United States. As this Court has previously held, such "sporadic or indirect contacts with the United States" require that Plaintiff demonstrate that its "injury was proximately caused by those contacts." *SPV/Hill* Op. at *6. As demonstrated *supra*, Plaintiff has failed to make such a showing.

For the foregoing reasons, the Access Defendants respectfully request that that the Court deny Plaintiff's request to amend its Complaint, and grant the Access Defendants' motion to dismiss the Complaint with prejudice.

Respectfully submitted,

*Anthony Paccione /BLM*

Anthony L. Paccione