UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SPV OSUS LTD.,                       :
                                     :
          Plaintiff,                 :          15-cv-619 (JSR)
                                     :
          -v-                        :
                                     :          OPINION AND ORDER
AIA LLC, ACCESS INTERNATIONAL        :
ADVISORS EUROPE LIMITED, ACCESS      :
INTERNATIONAL ADVISORS LTD., ACCESS  :
PARTNERS (SUISSE) S.A., ACCESS       :
MANAGEMENT LUXEMBOURG S.A., ACCESS   :
PARTNERS S.A. (LUXEMBOURG), PATRICK  :
LITTAYE, AND THEODORE DUMBAULD,      :
                                     :
          Defendants.                :
------------------------------------x



JED S. RAKOFF, U.S.D.J.

          Plaintiff SPV OSUS Ltd. ("SPV") is the alleged assignee of

Optimal Strategic US Equity Ltd. ("OSUS"), a customer of Bernard

L. Madoff Investment Securities LLC ("BLMIS") and a victim of

Bernard Madoff's colossal Ponzi scheme. On December 11, 2014,

SPV filed a complaint in New York Supreme Court asserting four

common law claims against defendant AIA LLC and affiliated

entities and individuals (the "Access Defendants") and four

common law claims against UBS AG and affiliated entities (the

"UBS Defendants"). In particular, plaintiff alleged that both

sets of defendants knowingly aided and abetted Madoff's fraud by

supporting a network of international "feeder funds," including

Luxalpha SICAV ("Luxalpha") and Groupement Financier Ltd.

1

("Groupement Financier"), that funneled billions of dollars into Madoff's Ponzi scheme. See Compl. ¶¶ 49-50, 63-65, ECF No. 1-1.

The UBS Defendants removed the action to this Court and the Court denied plaintiff's motion to remand. See Order dated March 27, 2015, ECF No. 41. On July 21, 2015, the Court granted the UBS Defendants' motion to dismiss -- which was filed before any of the Access Defendants had been served -- on the basis that the Court lacked personal jurisdiction over those defendants.[1] See SPV OSUS Ltd. v. UBS AG, 114 F. Supp. 3d 161, 171 (S.D.N.Y. 2015). SPV later voluntarily dismissed certain defendants from the action. See Notice of Voluntary Dismissal, ECF No. 66. Only the Access Defendants remain, and, with the exception of two defendants who do not join the motion, they now move to dismiss plaintiff's Complaint in its entirety.[2] For the reasons discussed

---

[1] The Court's July 21, 2015 Opinion and Order also dismissed a related action bringing substantially similar claims against the UBS Defendants on behalf of a putative class of BLMIS customers. See Hill et al. v. UBS AG et al., 14-cv-9744 (S.D.N.Y.). The plaintiffs in the Hill action did not sue the Access Defendants and the Court's July 21, 2015 Opinion and Order thus directed the closure of that action in its entirety. See SPV OSUS Ltd. v. UBS AG, 114 F. Supp. 3d 161, 164-65, 171 (S.D.N.Y. 2015).

[2] The moving defendants are AIA LLC; Access International Advisors Ltd.; Access Partners (Suisse) S.A.; Access Management Luxembourg S.A.; Access Partners S.A. (Luxembourg); and Patrick Littaye. Although the moving defendants claim that one of the non-moving defendants, Access International Advisors Europe Limited, was voluntarily dismissed from this action by plaintiff without prejudice -- and plaintiff does not contest that assertion -- there is no evidence on the docket of such dismissal. As for defendant Theodore Dumbauld, an alleged partner at AIA LLC who was served some two weeks before the

below, the Court grants the motion and dismisses this action with prejudice against all remaining defendants.

The details of Madoff's fraud are well-documented and widely known. See In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 231-33 (2d Cir. 2011) (detailing the fraud). To briefly summarize, Madoff purported to invest funds in a basket of common stocks within the S&P 100 Index pursuant to a so-called "split strike conversion strategy," and to hedge his stock purchases with S&P 100 option contracts. Compl. ¶¶ 33-34. In reality, the trades never occurred and the profits Madoff reported were bogus. See id. ¶¶ 36-37. Instead, Madoff used investor funds to fulfill requests for redemptions. See id. ¶¶ 39-41. Madoff was arrested on December 11, 2008 and subsequently pled guilty to an eleven-count criminal information. See id. ¶¶ 45-46.

SPV alleges that the Access Defendants knew about or were willfully blind to Madoff's fraud and facilitated it by funneling billions of dollars from primarily European investors into BLMIS via Luxalpha and Groupement Financier. See id. ¶¶ 57,

---

instant motion was filed, no attorney has appeared on his behalf. For the sake of simplicity, and because the Court ultimately dismisses the claims against Access International Advisors Europe Limited and Dumbauld for the same reasons as it dismisses the claims against the moving defendants, the Court generally refers to the "Access Defendants" collectively in this Opinion and Order.

60, 267-69. Specifically, the Access Defendants allegedly provided a host of services to Luxalpha and Groupement Financier, including marketing the funds to European investors and "serving as promoter, portfolio advisor, administrative agent, investment manager, investment advisor, and portfolio manager for [the funds], thereby providing the infrastructure for more than a billion dollars in investments into BLMIS." Id. ¶ 269; see also id. ¶¶ 20-30. On the basis of these allegations, even though its assignor was not a customer of the Access Defendants or an investor in Groupement Financier or Luxalpha, SPV asserts state law claims against the Access Defendants for aiding and abetting fraud (Count Five), aiding and abetting breach of fiduciary duty (Count Six), aiding and abetting conversion (Count Seven), and knowing participation in a breach of trust (Count Eight).

The Access Defendants move to dismiss the action on two grounds: first, they argue that the Court lacks personal jurisdiction over each moving defendant with the exception of AIA LLC (a Delaware corporation with its principal place of business in New York). Second, the Access Defendants submit that the Complaint fails to state a claim.

In order to survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." Thomas v. Ashcroft, 470

4

F.3d 491, 495 (2d Cir. 2006). While defendants are permitted to submit affidavits and documents outside the pleadings in bringing a Rule 12(b)(2) motion, district courts have "considerable procedural leeway" in resolving such motions: courts "may determine the motion on the basis of affidavits alone; or [they] may permit discovery in aid of the motion; or [they] may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).

Where the Court "chooses not to conduct a full-blown evidentiary hearing" however, "plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008) (internal quotation marks omitted); Marine Midland Bank, 664 F.2d at 904 ("Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."). A plaintiff can make this showing through its "own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)

(internal quotation marks omitted). And "[i]n evaluating whether
the requisite showing has been made, [courts] construe the
pleadings and any supporting materials in the light most
favorable to the plaintiffs." Licci ex rel. Licci v. Lebanese
Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013).

Under International Shoe Co. v. Washington, 326 U.S. 310
(1945), and its progeny, "the touchstone due process principle
has been that, before a court may exercise jurisdiction over a
person or an organization . . . that person or entity must have
sufficient 'minimum contacts' with the forum 'such that the
maintenance of the suit does not offend traditional notions of
fair play and substantial justice.'" Gucci Am., Inc. v. Weixing
Li, 768 F.3d 122, 134 (2d Cir. 2014) (quoting Int'l Shoe, 326
U.S. at 316) (internal quotation marks omitted).[3] In assessing

---

[3] As the Court found in its July 1, 2015 Memorandum explaining
its denial of plaintiff's motion to remand, the Court has
"related to" jurisdiction over this action under 28 U.S.C.
§ 1334(b). SPV OSUS Ltd. v. UBS AG, 2015 WL 4079079, at *2-4
(S.D.N.Y. July 1, 2015). As a result, in accordance with Rule
7004(f) of the Federal Rules of Bankruptcy Procedure, this Court
has personal jurisdiction over each of the Access Defendants to
the extent allowed under the Constitution of the United States,
and reference to New York's long-arm statute is not required.
See, e.g., In re Celotex Corp., 124 F.3d 619, 630 (4th Cir.
1997) ("[W]hen an action is in federal court on 'related to'
jurisdiction . . . [w]e need only ask whether [defendant] has
minimum contacts with the United States such that subjecting it
to personal jurisdiction does not offend the Due Process Clause
of the Fifth Amendment to the United States Constitution. Given
that [defendant] is a Delaware corporation with its principal
place of business in New York, we have no doubt that this is the
case." (citation omitted)).

whether a defendant has the requisite "minimum contacts" with the forum, courts distinguish between "general" jurisdiction and "specific" jurisdiction. While the existence of general jurisdiction "permits a court to hear 'any and all claims' against an entity," Gucci Am., 768 F.3d at 134 (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)), specific jurisdiction is limited to claims that "arise out of or relate to the entity's contacts with the forum," id. (internal quotation marks and alterations omitted).

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe, 326 U.S. at 317). As such, a corporation's "place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler AG, 134 S. Ct. at 760 (internal quotation marks and alterations omitted). In addition, where a Court has general jurisdiction over an entity, foreign subsidiaries or affiliates that are "mere departments" of that entity are subject to the Court's jurisdiction as well. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). Common ownership is "essential to the assertion of jurisdiction"

7

on a mere-department theory, id., and courts also look to (1)
the financial interdependence of the entities, (2) interference
in personnel selection and assignment, (3) the extent to which
corporate formalities are observed, and (4) the degree of
control over marketing and operational policies, see id. at
120-22.[4]

Turning to the merits, the Court finds that plaintiff has
met its burden of making a prima facie showing of jurisdiction
over the Access Defendants by adequately pleading that the
foreign entity defendants that join this motion (the "Foreign
Defendants") are "mere departments" of New York-based AIA LLC
and by adequately pleading that the Court has specific
jurisdiction over Patrick Littaye.

As a threshold matter, the Access Defendants do not argue
that the Court lacks general jurisdiction over AIA LLC, which,
according to the Complaint, is a Delaware corporation with its
principal place of business in New York City. See Compl. ¶ 20.
While AIA LLC was evidently not the parent company of the
Foreign Defendants,[5] SPV pleads that the firm's founders operated

---

[4] Though technically a product of New York state law, the fact
that New York courts have long recognized the mere-department
theory of jurisdiction indicates that the exercise of
jurisdiction on this basis comports with the Constitution.

[5] Contrary to the Access Defendants' assertion that the mere-
department theory is only viable where a foreign subsidiary is
alleged to be a mere department of a domestic parent company,
"jurisdiction has been found in cases other than a classic

the Access Defendants as "a single business enterprise" which

they "coordinated, dominated and controlled." Id. ¶ 49. SPV

further pleads that the Foreign Defendants "appear to have been

created merely to facilitate, among other things, money

transfers and fund formation, as well as ostensibly to perform

management and administration for the funds in the Bahamas,

Luxembourg and Switzerland," although no employees were located

in those countries. Id. ¶ 51. Rather, "[m]anagement, marketing,

and operational decisions were coordinated through Access's New

York office" -- which directly implicates one of the factors in

the mere-department analysis -- "while back-office and

administrative functions were carried out by AIA Ltd. in

London." Id.[6] Moreover, SPV points to documents indicating that

---

parent-subsidiary relationship," such as in the case of a
dominated affiliate. Volkswagenwerk Aktiengesellschaft, 751 F.2d
at 120; see also Erick Van Egeraat Associated Architects B.V. v.
NBBJ LLC, 2009 WL 1209020, at *2 (S.D.N.Y. Apr. 29, 2009) ("A
foreign corporation may be subject to personal jurisdiction in
New York based on the presence and activities here of an
affiliated entity when . . . the New York entity is so fully
controlled by the foreign one as to be a 'mere department' of
it.").

[6] The Access Defendants complain that SPV's references to
"Access's New York office" are intentionally vague. On the
contrary, SPV identifies AIA LLC and AIA Inc. as the "entities
that comprised Access's New York office." Pl. SPV OSUS Ltd.'s
Mem. of Law in Opp. to Access Defs.' Mot to Dismiss at 10, ECF
No. 67. Moreover, defendants' objection is undercut by their own
references to "the New York office" in their papers. See, e.g.,
The Access Defs.' Mem. of Law in Support of Their Mot. to
Dismiss the Compl. Pursuant to Federal Rules of Civil Procedure
8, 9(b), (12)(b)(2) and 12(b)(6) at 8, ECF No. 60.

the Access Defendants held themselves out as a single integrated firm based in New York City, with employees divided not by office but by function. See Decl. of Collin J. Cox dated Sept. 18, 2015 ("Cox Decl."), Exs. 8, 10-12, ECF Nos. 68-8, 68-10, 68-11, 68-12; see Erick Van Egeraat Associated Architects B.V. v. NBBJ LLC, 2009 WL 1209020, at *2 (S.D.N.Y. Apr. 29, 2009) ("The conclusion that the various [defendant] entities function together as a single firm is reinforced by numerous documents that show that it both understands itself and holds itself out to the public as one firm.").

Turning to the specific allegations against each defendant, defendant Access International Advisors Ltd. ("AIA Ltd.") is a Bahamas corporation and was the alleged investment manager, operator, sponsor, and investment advisor of Groupement Financier. See Compl. ¶ 22. With respect to this defendant, the requirement of nearly identical ownership is satisfied because, at all relevant times, the entity appears to have been at least 93% ultimately owned by defendant Patrick Littaye and Thierry Magon de la Villehuchet (whom defendants do not dispute co-owned AIA LLC). See Pl. SPV OSUS Ltd.'s Mem. of Law in Opp. to Access Defs.' Mot. to Dismiss ("Pl.'s Opp.") at 10 n.3, ECF No. 67; see also ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 52 (S.D.N.Y. 1999) (finding 90% common ownership to be sufficient). According to an internal email, this entity's "prime purpose [was] the

receipt of fees on behalf of the group," it "[did] not actually act as an investment manager," and it was nothing more than a "money box." Cox Decl., Ex. 17. Moreover, plaintiff points to evidence that AIA Ltd. had no employees and that its work was performed by personnel in New York. For example, various "Monthly Manager Reports" for Groupement Financier and Luxalpha explicitly state that they were "*[p]repared by ACCESS INTERNATIONAL ADVISORS, INC. for ACCESS INTERNATIONAL ADVISORS LIMITED.*" Cox Decl., Ex. 18 at 2, Ex. 19 at 2, Ex. 20 at 2.

With respect to Access Partners (Suisse) S.A. ("AP (Suisse)"), a Swiss corporation, the requirement of nearly identical ownership is also satisfied, as the parties appear to agree that Littaye and/or Villehuchet ultimately owned at least 98% of the company outright at all times. See Decl. of Patrick Littaye dated Sept. 4, 2015 ("Littaye Decl."), Ex. 3., ECF No. 51-3.[7] Allegedly created as a result of French regulatory pressure, AP (Suisse) was designated to become the investment manager for Groupement Financier in mid-2007, but "never received the necessary license to perform such services, and indeed, never acted as investment manager or advisor to Groupement." Littaye Decl. ¶ 10. In addition, as with AIA Ltd.,

---

[7] By July 2008, Access Participations SA owned 100% of AP (Suisse), but SPV claims -- and defendants do not rebut -- that Littaye owned 99% of Access Participations SA. See Pl.'s Opp. at 14 n.7.

SPV points to evidence that AP (Suisse) had no employees. According to Littaye, AP (Suisse) was managed by Villehuchet and himself. See id. ¶ 15.

With respect to Access Management Luxembourg S.A. ("AML"), a Luxembourg corporation that allegedly served as portfolio manager for Luxalpha from November 17, 2008 until its liquidation, see Compl. ¶ 24, the requirement of nearly identical ownership is (narrowly) satisfied, as Littaye and Villehuchet appear to have ultimately owned 80% of the company. See Pl.'s Opp. at 11 n.5; compare Tsegaye v. Impol Aluminum Corp., 2003 WL 221743, at *5 (S.D.N.Y. Jan. 30, 2003) (holding that the common ownership requirement is "clearly met" by 90% ownership), with In re Levant Line, S.A., 166 B.R. 221, 232 (Bankr. S.D.N.Y. 1994)(finding that a 52% "ownership interest is not sufficient to establish the nearly identical ownership interests required for personal jurisdiction under a mere department theory"). As with the other Foreign Defendants, SPV points to evidence that AML had no employees, including an internal report stating that "Luxembourg is only a legal entity." Cox Decl., Ex. 12 at 13.

Finally, Access Partners S.A. (Luxembourg) ("AP (Lux)"), a Luxembourg company that allegedly served as Luxalpha's investment advisor and which was also designated as Groupement Financier's investment advisor, is similarly situated to AML.

12

See Compl. ¶ 25. As with AML, Littaye and Villehuchet ultimately owned at least 80% of the shares of AP (Lux). And, as with AML, plaintiff proffers evidence that AP (Lux) was merely a legal entity, operated from New York, without any employees.

Given plaintiff's allegations and supporting documentation thereof, and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has made a prima facie showing (and only a prima facie showing) that the Foreign Defendants are all "mere departments" of AIA LLC -- that is, affiliated, commonly owned, and financially interdependent shell entities that were effectively operated by a New York-based affiliate that held itself out as the functional headquarters of the Access Defendants' operations. SPV has likewise made a prima facie showing that the Court has specific jurisdiction over Littaye who allegedly met with Madoff in New York on a quarterly basis and who allegedly shut down discussion of irregularities at BLMIS at a 2006 meeting in New York. See Compl. ¶¶ 61, 186-97; Cox Decl., Ex. 7 at 23. These allegations are more than sufficient to make out a prima facie case that SPV's claims against Littaye "arise[] out of or relate[] to [Littaye's] contacts with the forum." Gucci Am., 768 F.3d at 141.

To be sure, the Access Defendants vigorously contest SPV's version of the jurisdictional facts. Littaye avers that the New York office did not and could not "control or bind the various

13

Access entities . . . or make substantive decisions on their behalf" and that "[e]ach of the Foreign Defendants was independent of AIA LLC, having a separate corporate personality and a distinct function." Littaye Decl. ¶ 7. Indeed, according to Littaye, the New York office was responsible for the Access Defendants' involvement with non-BLMIS funds, see id. ¶ 8, while a London-based affiliate handled BLMIS-related activity, see Reply Decl. of Patrick Littaye dated Sept. 25, 2015 ("Littaye Reply Decl.") ¶¶ 4-9, ECF No. 69. Littaye, who claims that he "worked almost exclusively in Europe," Littaye Decl. ¶ 6, further avers that each of the Foreign Defendants was independently managed and administered outside the United States and that none was financially dependent on any other entity, see id. ¶¶ 14-16, 20, 27-28, 32, 41, 43, 47, 53, 57.

If plaintiff's Complaint were not fatally deficient on an independent ground, jurisdictional discovery and an evidentiary hearing would be warranted in order to determine whether SPV could establish jurisdiction -- as opposed to simply make a prima facie showing thereof -- when defendants' evidence was weighed against plaintiff's and when the Court was not required to credit plaintiff's non-conclusory allegations and to construe plaintiff's supporting materials in the light most favorable to it. However, given that plaintiff's claims do fail on an independent ground, further inquiry into personal jurisdiction

14

would be a pointless exercise. It is enough to say that SPV has made a prima facie showing of personal jurisdiction such that the Complaint can survive a motion to dismiss on that ground.[8]

Turning to the more persuasive prong of defendants' motion, the Access Defendants argue that each of SPV's state law claims must be dismissed because, among other reasons, SPV fails to plead proximate causation. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding such a motion, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. See Duffey v. Twentieth Century Fox Film Corp., 14 F. Supp. 3d 120, 126 (S.D.N.Y. 2014). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action," Iqbal, 556 U.S. at 678, and "legal conclusions masquerading as factual conclusions will not suffice," Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006). In other words, plaintiffs are not

---

[8] While SPV also asserts that the Court has jurisdiction over the Access Defendants on other bases, the Court need not address these arguments given its conclusion.

entitled to proceed beyond the pleadings stage merely because they recite the elements of a cause of action and claim that their allegations somehow satisfy them.

As noted, SPV brings claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and knowing participation in a breach of trust (which is essentially an aiding and abetting claim). Under New York law, which the parties agree applies, "the elements of aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and aiding and abetting a fraud are substantially similar." Kirschner v. Bennett, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009); Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law."). "The claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." Kirschner, 648 F. Supp. 2d at 533. Plaintiff's claim for knowing participation in a breach of trust shares the same elements. See In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (equating claim for knowing participation in a breach of trust under New York law with claim for aiding and abetting breach of fiduciary duty); In re Schantz, 221 B.R. 653, 658 (N.D.N.Y. 1998) (same); Zamora v. JPMorgan Chase Bank, N.A., 2015 WL

4653234, at *3 (S.D.N.Y. July 31, 2015) (describing claim of knowing participation in a breach of trust as a "variation[] on a theme of aiding and abetting liability").

The substantial assistance element of an aiding and abetting claim is satisfied "when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006). "Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). Merely pleading "but-for" causation is not enough: "aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct." Id.; see also Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 249 (S.D.N.Y. 1996) ("'But-for' causation does not suffice; the breach must proximately cause the loss.")[9]. And where a defendant owes no direct fiduciary duty to the plaintiff, mere inaction cannot constitute substantial assistance. See Lerner, 459 F.3d at 295.

---

[9] The Second Circuit in Lerner identified Judge Mukasey's decision in Kolbeck as the "leading opinion interpreting New York law" with respect to aiding and abetting liability. Lerner, 459 F.3d at 292.

Critically, SPV does not plead that its assignor OSUS had
any dealings whatsoever with the Access Defendants, Groupement
Financier Ltd., or Luxalpha, let alone invested in Madoff
through them. Instead, OSUS appears to have been a direct
investor in BLMIS with its own customer account. See Notice of
Letter ("Pl.'s Suppl. Letter") at 4-8, ECF No. 71. Nonetheless,
SPV pleads that the Access Defendants' alleged assistance to
Madoff proximately caused its assignor's injury because
"[w]ithout the Access Defendants' assistance, Madoff and/or
BLMIS would not have been able to continue to operate the Ponzi
scheme." Compl. ¶¶ 270, 277; see also id. ¶ 288. This is a
textbook example of a "but-for" theory of causation masquerading
as a theory of proximate causation. As such, SPV's theory of
proximate causation, as pled, is woefully deficient. See Cromer
Fin. Ltd., 137 F. Supp. 2d at 472 (granting motion to dismiss
aiding and abetting claims on substantial assistance grounds
because "[w]hile the Ponzi scheme may only have been possible
because of Bear Stearns' actions, or inaction, Bear Stearns'
conduct was not a proximate cause of the Ponzi scheme"). Indeed,
if any entity that injected massive sums into BLMIS could be
said to have aided and abetted Madoff's Ponzi scheme, OSUS,
which plaintiff claims invested $1.6 billion in BLMIS, would
presumably be subject to liability on the same theory. See Pl.'s
Suppl. Letter at 8.

It is not surprising, then, that SPV pivots in its briefing to two alternative theories of proximate causation, neither of which can salvage its claims.

First, SPV argues that the Access Defendants' "misleading marketing activities helped foster the illusion of legitimacy surrounding BLMIS by misrepresenting that their endorsement of BLMIS reflected 'extensive due diligence' and meaningful 'controls, oversight and protections.'" Pl.'s Opp. at 30. Yet SPV does not claim, except in the vaguest and most conclusory of terms, that OSUS relied on or was even aware of these alleged misrepresentations.[10] The causal nexus between the Access Defendants' supposed misrepresentations and OSUS's injury is thus entirely absent. That the Access Defendants allegedly focused on the European market (where OSUS's investment manager was headquartered) makes no difference if the Access Defendants played no role in OSUS's decision to invest in BLMIS.

Second, SPV contends that the Access Defendants' alleged concealment of what they allegedly knew about Madoff's fraud proximately caused OSUS's injury "because it caused the BLMIS investment opportunity to be available." Pl.'s Opp. at 30. As an

---

[10] Indeed, plaintiff's sole assertion of causality in this regard is that the "loss to SPV-assignor OSUS resulted from OSUS's being induced to make and retain its investment in BLMIS by conduct including the substantial assistance by the Access Defendants described [in plaintiff's supplemental letter]." See Pl.'s Suppl. Letter at 10.

initial matter, this theory of causation is far too attenuated

to support a finding of proximate causation; it is simply a

repackaging of plaintiff's insufficient argument that but for

defendants' conduct, plaintiff's assignor would not have been

harmed. Significantly, "[t]he purpose of the proximate cause

requirement is to fix a legal limit on a person's

responsibility, even for wrongful acts." First Nationwide Bank

v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). Indeed,

"[c]entral to the notion of proximate cause is the idea that a

person is not liable to all those who may have been injured by

his conduct, but only to those with respect to whom his acts

were 'a substantial factor in the sequence of responsible

causation.'" Id. (quoting Hecht v. Commerce Clearing House,

Inc., 897 F.2d 21, 23-24 (2d Cir. 1990)).[11] Holding the Access

Defendants liable to investors in BLMIS regardless of whether

those investors had any relationship (even indirectly) with the

Access Defendants, and regardless of whether those investors

were even aware of the Access Defendants and the feeder funds

---

[11] The Second Circuit in First Nationwide Bank was discussing the
proximate cause requirement in the context of the Racketeer
Influenced and Corrupt Organizations Act, but the principles set
forth therein are broadly applicable. The Second Circuit has
reiterated these principles, for example, in discussing loss
causation in the securities fraud context, see AUSA Life Ins.
Co. v. Ernst & Young, 206 F.3d 202, 215 (2d Cir. 2000), and in
comparing the proximate cause standard to the traceability
requirement for Article III standing, see Rothstein v. UBS AG,
708 F.3d 82, 91 (2d Cir. 2013).

they supported (or vice versa), would fly in the face of these principles and eviscerate the purpose of the proximate cause requirement.

This theory of liability also fails for the independent reason that the Access Defendants' alleged failure to reveal the fraud cannot support a claim for aiding and abetting where, as here, the Access Defendants owed no fiduciary duty directly to plaintiff or its assignor. See Lerner, 459 F.3d at 295 ("[M]ere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." (internal quotation mark omitted)); Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 25 (S.D.N.Y. 2009) ("[T]o the extent that [plaintiff] bases its aiding and abetting claim on JPMorgan's failure to prevent the diversion [of plaintiff's investment funds] by failing to shut down the account or to inform [plaintiff] of the account withdrawals, these omissions . . . do not rise to the level of substantial assistance because there was no fiduciary relationship between the bank and [plaintiff].").

Because plaintiff's Complaint fails on proximate causation grounds, the Court need not reach the Access Defendants' several alternative grounds for dismissal.[12]

---

[12] However, the Court notes that plaintiff failed to respond to the Access Defendants' argument that plaintiff's claim for

While plaintiff seeks leave to amend, any amendment would be futile. See Goodrich v. Long Island Rail Rd. Co., 654 F.3d 190, 200 (2d Cir. 2011) ("[R]equest to replead should be denied in the event that repleading would be futile."). At the hearing on the Access Defendants' motion to dismiss, the Court granted plaintiff leave to file a letter identifying the supplemental allegations it would make in support of proximate causation if it were granted leave to replead. Plaintiff's resulting submission -- which the Court has considered in evaluating defendants' motion -- added little new beyond a chronology of OSUS's investments in BLMIS and did nothing to tie those investments to the Access Defendants. See Pl.'s Suppl. Letter.

Accordingly, for the foregoing reasons, the Court hereby grants the Access Defendants' motion to dismiss and dismisses plaintiff's claims with prejudice. In addition, the Court dismisses plaintiff's claims against the non-moving defendants -- Access International Advisors Europe Limited and Theodore Dumbauld -- for the same reasons it dismisses those claims against the moving defendants. See Almeciga v. Ctr. for Investigative Reporting, Inc., 2016 WL 2621131, at *6 (S.D.N.Y. May 6, 2016) (exercising the Court's "ample authority" to

---

aiding and abetting conversion, which is subject to a three-year statute of limitations, is time-barred. See Savino v. Lloyds TSB Bank, PLC, 499 F. Supp. 2d 306, 312 (W.D.N.Y. 2007).

dismiss claims against non-moving defendants <u>sua sponte</u> in such circumstances). There is nothing in the Complaint to distinguish either of these defendants from the moving defendants for purposes of pleading proximate causation. The Clerk of the Court is thus directed to enter final judgment dismissing the Complaint with prejudice and to close the case in its entirety.

    SO ORDERED.

Dated:    New York, NY
          May 24, 2016

                                      JED S. RAKOFF, U.S.D.J.